# EXHIBIT 9



February 21, 2025

Danielle Rysedorph
Deputy Director, Bureau of Litigation
Division of Legal Affairs
New York State Department of Health
Empire State Plaza
Corning Tower, Room 2438
Albany NY 12237-0026

*Sent via email*

Dear Danielle,

We write to express the New York Legal Assistance Group's grave concern regarding the upcoming transition of all Consumer Directed Personal Assistance Program (CDPAP) participants to a single Fiscal Intermediary (FI) – Public Partnerships, LLC (PPL). Most importantly, we remind you that CDPAP recipients **must** receive adequate notice and an opportunity to be heard prior to any loss or suspension of services. We are very concerned because we have not heard of any plan to provide any such notice and hearing opportunity prior to April 1, 2025 for CDPAP recipients who fail to enroll with PPL by the deadline of March 28, 2025.

We currently take no position on the wisdom or legality of the legislation that required this change to the structure of the CDPAP program. We are not asking to forever halt implementation of this change or otherwise make any large-scale changes.
**Instead, we ask that the Department:**

- **Provide more targeted communication to CDPAP recipients and their designated representatives informing them that they must transition and explaining the consequences for not doing so by March 28, 2025;**

- **Extend the deadline for CDPAP recipients to enroll with PPL;**

- **Ensure that CDPAP recipients who fail to register by the deadline receive timely and adequate notice with an opportunity to be heard prior to any termination or suspension of services, which likely will require that current FIs continue to provide services for some time past April 1, 2025; and**

- **Meet with us as soon as possible to discuss our concerns and provide us with additional information about how the Department plans to ensure that the rights of vulnerable consumers are protected.**

As you know, the New York Legal Assistance Group is a not-for-profit legal services organization; we provide free legal advice and representation to New Yorkers experiencing poverty or in crisis. We have a well-developed practice in assisting clients with accessing and maintaining Medicaid community-based long term care services, including CDPAP services.

Our main concern at this time is how CDPAP recipients will be accorded due process if they do not enroll with PPL by April 1, 2025. The transition from hundreds of FIs to a single FI has happened too quickly for the hundreds of thousands of Medicaid recipients who receive CDPAP services to (a) understand their obligation to enroll with PPL, and (b) have a meaningful opportunity to enroll themselves, and have their aides enroll, before the deadline. We are unaware of any plan addressing how CDPAP recipients will receive care starting on April 1 if they have not yet enrolled with PPL.

**1. Inadequate Communications to CDPAP Consumers and their Representatives of the Requirement to Transition to PPL**.

CDPAP consumers and their designated representatives may be able to fulfill their responsibilities of self-direction but still need assistance communicating. For example, CDPAP recipients may be unable to understand written communications in English, may not own or be unable to use computers or smartphones, and may not feel comfortable or safe engaging in an online process or calling an unfamiliar company. This population has (rightfully) been taught to be skeptical of providing personal information over the phone or to a website. Convincing hundreds of thousands of individuals to engage with PPL now will take a massive public information campaign and specific, targeted letters sent to CDPAP beneficiaries and their representatives.

It is our understanding that CDPAP recipients are supposed to receive two notices from their MCOs and one notice from their current FI. DOH purportedly sent templates for the notices from the MCOs to the plans on November 25, 2024 with targeted mailing dates by county.[1] These notice templates and the targeted mailing dates are not posted online. We are not aware of anyone in New York City receiving the notices from the MCOs. Please provide us with the notice templates and schedule under which these notices were sent.

We have looked at the publicly available information about the notices from both the MCOs and the FIs and have the following concerns:

- We have not seen any requirement that the Local Departments of Social Services (LDSS) send notice to CDPAP recipients who receive services directly through their LDSS rather than a Managed Care Organization (MCO). Does this mean that those individuals, including all CDPAP recipients with waiver or immediate needs services, will only receive mailed notice from their FI?

- To date, we have only seen notices regarding this transition in English and Spanish, and the Department's webpage on the transition is only in English. We have not seen any direction to the FIs to send notice in the recipient's (or representative's) preferred language. English is the primary language for only 38.3% of all MLTC

members. CDPAP recipients need to receive written communications in a language they can understand.  PPL has reportedly placed advertisements on television and radio programs and in newspapers in a variety of languages.  While we applaud this effort, public service announcements should only supplement a robust mailed notice regime – not take its place.

- The Department has not clearly directed FIs to send the requisite notices to designated representatives – they say to send to "consumer or the consumer's representatives," which appears to suggest – incorrectly – that the FI could choose to send the notices only to the consumer or the representative.[2]  As a result, for example, a consumer with dementia could receive and throw out the notice.

- Our clients often have difficulty assessing whether communications are legitimate or part of a scam. For instance, the text messages we understand PPL is sending to consumers with a link to register and enter confidential information are likely to be ignored by many CDPAP beneficiaries because they will believe the messages are a scam.  Other clients prefer to make a social work appointment and not engage with the process until a social worker has verified that it is safe to do so.  As a result, some of our most cautious clients and their designated representatives will require weeks or months to fully engage in a process like this, which requires them to enroll with an unfamiliar company and provide personal information.  These clients would be more likely to trust communications that more clearly come from the Department of Health, and are sent via traditional methods of communication regarding the Medicaid program.

- The text of the notice templates provided to the FIs do not clearly state what will happen after March 28, 2025 if clients and aides do not complete their registrations.  Without this information, CDPAP recipients will not understand the urgency.

- The notices appear on their face to suggest that registration can be completed with a mere phone call to PPL.  In fact, many steps are necessary to complete registration for both the CDPAP recipient and their aides.  Because this is unclear, some people may wait until the last minute to register and be unable to complete their registrations before March 28.

- FIs were directed to send a notice letting their enrollees know that they would no longer be providing services on April 1.   We have heard that some FIs do not plan to send this required notice to the recipients they serve. How will the Department ensure that those Medicaid recipients are not harmed by their FI's failure to comply?

**2. Insufficient Time and Systems needed to Complete the Transition.**

The timeline between the start of this transition process (January 6, 2025) and the deadline to complete it (March 28, 2025) is simply too compressed.  At the legislative hearing on the NYS Budget held on February 11, 2025, the Commissioner testified that so far, 40,000

consumers have started the process of registering with PPL, and 22,000 have completed it. At this rate, well over 200,000 CDPAP recipients will not be registered by March 28th.

Sister states have undertaken similar transitions for far fewer beneficiaries and with far longer timeframes. Pennsylvania transitioned from 36 FIs down to one in 2013. There, only 22,000 consumers were supposed to be transitioned — less than ten percent of the number in New York State. Yet, even with that small population, about one-third of consumers failed to transition and lost services. Thousands of PAs were not paid, in some cases for months and quit.[3] In January 2024, Massachusetts set a timeline of 19 months to transition just 70,000 caregivers in its program to a new single FI. In stark contrast, New York plans to transition over 250,000 consumers and some 400,000 caregivers in only three to four months. This timeline is both unrealistic and extremely risky for the disabled people the program is designed to support.

New York State has structured previous large-scale Medicaid changes to allow enough time to prevent harm to recipients. When Medicaid required enrollment with a Managed Long Term Care plan for most home care recipients starting in 2011, the roll-out took several years – and, importantly, ensured continuity of care by auto-enrolling individuals into MLTC plans if they did not select their own. Similarly, New York State conducted extensive outreach using myriad methods over the course of more than a year to urge recipients to return renewals in the "unwinding" of the COVID Public Health Emergency. Finally, when we worked with you to contact the members of the certified class in *Cassidy v. Zucker*, we experienced a real spectrum of communication needs; some class members responded to a single letter, while others required repeated letters and multiple phone calls. From start to finish, it took many months for the Department of Health and Plaintiffs' counsel to reach all members of the class, which was tiny in comparison to the monumental scale of the statewide CDPAP population.

We also have serious concerns about PPL's capacity and readiness to handle this massive undertaking. When a NYLAG staff member called the hotline designated on PPL's site for Spanish-speaking callers recently, an English speaker answered the phone and stated that she would transfer the caller to the interpreter line. On the interpreter line, an automated message instructed callers to press 1 for Urdu, 2 for Hebrew, and 9 for all other languages. The NYLAG caller pressed 9 and reached an English speaker who stated that the caller would have to call back later. We have heard of many other problems with the call center and PPL website.

### 3. Lack of Notice and Procedures to Ensure Continuity of Care April 1st for Those who Do Not Complete Transition

We have seen no provisions outlining what will happen to individuals who have not completed the process by the deadline. These individuals' plans of care will not have changed, and they will remain entitled to the CDPAP services they have been receiving. As advocates, we have numerous questions on behalf of this population. Will they receive a notice of suspension or discontinuance from their MCO or LDSS? At what point will their aides realize that they are not being paid? Will back pay be available for aides if the recipient enrolls with PPL after April 1? What will happen if recipients request Fair

Hearings? How can recipients receive aid to continue if their prior FI has been forced to close down and they are not yet enrolled with PPL?

We understand that, during the Budget legislative hearing on February 11, 2025, Mr. Bassiri stated that plans will be responsible for ensuring their members continue to have CDPAP services after April 1st. This is fine in theory, but we do not understand how it will work practically. How can MCOs or the LDSS provide coverage if DOH requires all current FIs to cease coverage on April 1st?

While these policy questions are in the sole purview of the Department, it is absolutely essential that any plan adopted must include timely and adequate notice, and an opportunity to be heard, prior to any termination or suspension of CDPAP services. The Eastern District of New York clearly reinforced this requirement in *Cassidy v. Zucker* in the context of individuals losing services when their MCO stopped operations; the requirement is just as clear for individuals whose FI will soon close. In the current context, timely and adequate notice requires that all CDPAP recipients must first be informed that they must enroll with PPL and that failure to do so will result in loss or suspension of services. At least two weeks before March 28th, those consumers who started but have not yet completed the registration should receive notice of the status of their registrations, and told exactly what they need to do to complete the transition. This notice should identify which of their PAs have not completed the transition paperwork and specify which elements are missing. At the same time, consumers who have not begun the process should be notified again that they must transition to PPL by March 28, and the consequences of failing to do so.

If services will in fact not be available to CDPAP recipients who have not enrolled with PPL by the deadline, those recipients must receive a notice of intent stating that the recipient has failed to transition to PPL, with findings specifying in what way the registration was incomplete, including whether and in what way any of the PAs did not complete their transition.

All notices of intent to suspend CDPAP services described above must include information regarding the recipients' right to a hearing and aid continuing. However, the MCOs and LDSS will not know who has failed to enroll until March 29, 2025, only 48 hours before the change to a single FI goes into effect. This simply isn't enough time to provide timely and adequate notice prior to any suspension of services on April 1, 2025. There would need to be at least ten days, plus time for mailing, between the deadline and the effective date for such notice to be timely.

**Conclusion**

In summary, we are extremely concerned that CDPAP recipients will lose care without notice or an opportunity to be heard. We believe that you share our interest in ensuring that no one loses care during this transition, and we know that the intent of this legislation was not to harm the consumers. Nonetheless, Medicaid recipients will suffer if they do not have meaningful communication, an adequate amount of time to manage the transition, and a clear plan that comports with due process.

The only feasible solution we see is for the State to extend the April 1st deadline for current FIs to stop services to allow enough time for this transition to take its course and to allow the current FIs to provide aid continuing to those who failed to enroll by the deadline. The State has disregarded or extended statutory deadlines many times when necessary. For example, the State failed to meet a statutory deadline of Jan. 1, 2023 to expand Medicaid to cover undocumented immigrants age 65 and over.[4]  Five months after the statutory deadline, the SFY 2023-24 Budget retroactively delayed the effective date until Jan. 1, 2024.  L. 2023, ch. 57, pt. H § 1. Similarly, New York repeatedly delayed implementation of congestion pricing in New York City. Here, the statutory deadline cannot be used as an excuse to disregard the rights of vulnerable consumers, especially where rushed implementation will seriously jeopardize vulnerable consumers' health and safety.

We ask that you meet with us as soon as possible to discuss our concerns and provide us with additional information about how the Department plans to ensure that the rights of vulnerable consumers are protected. Please respond on or before February 27 to let us know when you are available to meet before March 7.

Thank you,

/s/

Elizabeth Jois
Julia Russell
Special Litigation Unit
New York Legal Assistance Group
ejois@nylag.org
jrussell@nylag.org