# Exhibit D

Case 1:25-cv-01689-FB-LKE     Document 13-4     Filed 03/27/25     Page 1 of 10 PageID #: 341



**KATHY HOCHUL**
Governor

**JAMES V. McDONALD, MD, MPH**
Commissioner

**JOHANNE E. MORNE, MS**
Executive Deputy Commissioner

**Consumer Directed Personal Assistance Program Statewide Fiscal Intermediary Policy for Medicaid Managed Care Plans**

Date of Issuance: February 26, 2025

---

The purpose of this policy is to provide guidance for mainstream and managed long term care plans regarding the on-going interaction with the single Statewide Fiscal Intermediary (SFI) for the Consumer Directed Personal Assistance Program (CDPAP). Medicaid Managed Care Plans (MMCPs) are required to adhere to the following guidance to support consumers in working with Public Partnerships, LLC (PPL) as the SFI.

### Background

Social Services Law Section 365-f authorizes the provision of CDPAP, and the regulatory authority is located at 18 NYCRR § 505.28. These regulations include a description of the program; eligibility requirements; the assessment/reassessment process; and guidelines for the local social services districts to determine an applicant's eligibility and appropriateness for participation in the program. The regulation also delineates roles and responsibilities of program participants, MMCPs, and the fiscal intermediary that acts as the joint employer of the personal assistant(s) serving the consumer.

The State Fiscal Year 2024-25 Enacted Budget authorized the Commissioner of Health to contract with a single SFI to provide fiscal intermediary services to CDPAP consumers.

Public Partnerships LLC. (PPL) was selected as the SFI vendor and effective April 1, 2025, is the only entity authorized to provide fiscal intermediary services for CDPAP.

### Introduction

This policy provides guidance to Medicaid Managed Care Plans (MMCPs) for managing CDPAP service facilitation in coordination with the SFI.

### Definitions

The definitions in 18 NYCRR 505.28(b) are incorporated into this policy and will retain their respective meanings as articulated there. Any conflicting interpretations or alternative definitions will be clearly delineated within this policy.

### MMCP Role

*Care Manager Role*

MMCPs will confirm each consumer using CDPAP receives outreach from their Care Manager/customer support staff to educate the member about the program. The Care

Manager/customer support staff will work to assist CDPAP consumers to confirm the smooth continuation of services and care. Care Managers/customer support staff are to intake questions, concerns, and feedback for the SFI, and work with the consumer on appropriate outstanding issues.

The SFI will provide MMCPs with resources to educate their call centers and Care Managers/customer support staff; including contact information for the SFI, frequently asked questions, and talking points to use when meeting with consumers. The SFI will also provide training on using their system (i.e. PPL@Home) to access and monitor consumer and PA information for Care Managers/customer support staff.

*Facilitator Role*

The CDPAP community is complex and diverse. The SFI has subcontracted with a range of different facilitators who meet the specific cultural, language, ethnic, and geographical needs of the consumers. This network of facilitators will allow consumers the ability to choose an entity they feel meets their personal requirements.

Facilitators are responsible for assisting with the enrollment process, including the completion of forms, and helping with Electronic Visitor Verification (EVV) compliance and training. Facilitators will provide information on PA coverage and capacity, and review utilization and EVV compliance; PPL will share this information with the MMCPs as needed. Facilitators are not responsible for billing, payroll, and benefits; that is managed exclusively by the SFI.

*Updates to the CDPAP Consumer Agreement*

Individuals participating in CDPAP are required to sign the "Consumer Directed Personal Assistance Program Agreement Between the Consumer/Designated Representative and the Health Plan." This agreement outlines the responsibilities of the consumer, designated representative, and MMCP. By signing this agreement, all parties acknowledge and agree to their responsibilities under CDPAP.

Consistent with implementation of the SFI, the Department has updated the agreement template that must be used between consumers, designated representatives (if applicable), and the MMCP. This updated agreement is effective immediately and it replaces, in whole, the agreement template the Department issued previously. The updated version of the CDPAP Consumer Agreement has been included in Attachment 1 and is also posted on the Department's website here. It includes the following updates:
- Adds or revises MMCP responsibility to include:
  - Only authorizing CDPAP services provided through the SFI.
  - Clarification that the investigation of reports that the consumer is not meeting their responsibilities shall now come from the SFI
- Adds or revises consumer responsibilities to include:
  - Working with the SFI as their FI, regardless of whether they are working with a facilitator.

The revised agreement will be used for new consumers beginning March 1, 2025. Plans will transition consumers with an existing signed agreement to the new agreement no later than April 1, 2026. The MMCP will provide the consumer and/or designated representative a copy of the signed agreement as well as retaining a copy in the consumer's file.

***PPL Registration and Communication***

MMCPs will have a designated point of contact with the SFI for all communications, including communications regarding consumer holds, hospitalizations, and discharges. Inquiries regarding billing or authorization will also be sent to the SFI through these contacts or through other processes established between the MMCP and the SFI; billing and authorization questions will not be sent to facilitators.

The SFI established an HHAX integration for the authorization process and the SFI will provide additional information regarding this process during ongoing operational discussions with the MMCP.

The SFI will provide reports to the MMCP as established in the contract between the SFI and the MMCP. MMCPs are able to request access for staff to the SFI's system (i.e. PPL@Home) where they can view information needed for care management.

The SFI monitors the Call Center for outages. If there is an outage, and depending on the extent of the outage, updates will be communicated to MMCP promptly until the issue is resolved. If a consumer needs to contact the SFI during the outage, an inquiry can be submitted via an alternative option (i.e. email, web portal).

*Transition Registration & Communication*

Consumers receiving CDPAP need to complete the registration process with PPL as the SFI. PPL will coordinate with the MMCP to verify the authorization is in place.

Starting March 1, 2025, the MMCP shall refer all new CDPAP consumers to PPL to act as their SFI. An MMCP may also refer a new CDPAP consumer to any facilitator, if the consumer so chooses.

Consumers transitioning to PPL by April 1, 2025, will need to complete registration with PPL no later than March 28, 2025.

Some consumers and PAs have expressed concerns with transitioning to PPL as the SFI for CDPAP for a variety of reasons. These concerns may be relayed to the MMCP by the SFI, a current FI, a facilitator or the consumer or PA directly. If the consumer informs PPL directly, PPL will inform the MMCP by generating a report that contains the consumer information and details of the specific concern. In these cases, the MMCP may need to provide additional support and engagement to the consumer and/or the PA to ensure the consumer completes the transition to PPL on time.

For consumers who have expressed concerns and/or require additional support with transitioning to PPL, the MMCP will take the following actions:

1. Within 3 business days of being notified the consumer has concerns and/or needs support, the MMCP staff will call the consumer to confirm that they understand that if they do not transition to PPL, they are opting out of receiving CDPAP services.
2. If the consumer *does* want to continue with CDPAP, the MMCP staff will help connect the consumer with PPL or a facilitator of the consumer's choice to complete the registration process. This can be done with a warm-transfer call, where the MMCP staff calls PPL/the facilitator with the consumer on the phone, or the MMCP staff can provide PPL's/the facilitator's contact information to the consumer. If the MMCP staff

does not do a warm-transfer, they should follow-up with the consumer within 2 business days to confirm the consumer has contacted PPL and/or a facilitator.

3. If the consumer *does not* want to continue with CDPAP, the MMCP staff should (1) inform PPL within 1 business day (via their specifically identified PPL contact or by sending a notification to NYCDPAP@pplfirst.com) and (2) work with the consumer to change their plan of care and select a different long-term care service that meets their needs.

If a PA expresses concerns with transitioning to PPL, it is imperative that the consumer be made aware so they understand the impact on their services. Consumers may become aware of their PA's concerns directly from the PA, from the SFI, or through their current FI. If a PA contacts the MMCP, the MMCP should explain that a PA cannot continue to work as a PA in CDPAP if they do not register with the SFI. If the PA does not proceed with registration, the MMCP should immediately reach out to the consumer to discuss plans for identifying and registering a new PA.

If the PA contacts PPL, PPL will try to address the PA's concerns and will explain that a PA cannot continue to serve a consumer if the PA does not register with PPL. If the PA does not proceed with registration, the next steps are:

- For Consumers Who Have Completed Registration with PPL: PPL will notify the consumer via an outbound call and the consumer's MMCP will be sent a report within 2 business days. The MMCP should reach out to the consumer within 2 business days to discuss options for identifying and hiring a new PA.
- For Consumers Who Have Not Completed Registration with PPL: PPL will generate a report to notify the consumer's MMCP within 2 business days; the MMCP will notify the consumer within 2 business days and discuss options with them.

*Final Consumer Notification of CDPAP SFI Transition*

There may be consumers who have not completed registration with PPL by 3/18/2025. In these cases, the MMCP is required to send a final communication to consumers.

Consumers who have not completed registration with PPL as of 3/18/2025 will receive a final communication to take action. The letter template will inform the consumer that they and/or their PA need to take immediate action to register with PPL so their PA can continue to be paid for providing services under CDPAP.

PPL will provide the MMCP with a list of consumers who meet the above criteria by 3/14/2025.

The Department will provide a template of these notifications to MMCP. If the MMCP uses the template without modifications, except to put on the MMCP letterhead, no additional Department review and approval is required. If the MMCP makes any modifications to the content of the template, the MMCP will provide their version of the member notification to statewidefi@health.ny.gov for Department approval no later than 3/5/2025. MMCPs should prepare to mail the approved member notification to impacted consumers by 3/18/2025.

Starting 3/18/2025, the MMCP should conduct daily outreach to all consumers who have not transitioned to PPL. MMCP staff will work with consumers to complete the transition to PPL or to transition to a different long-term care service that meets their needs. Outreach should continue until all consumers have either completed registration with PPL or have transitioned to a service

other than CDPAP. The MMCP will receive updated lists of consumers who have or have not transitioned from PPL on a daily basis until the transition is completed.

### *Complaints*

If a consumer has a complaint regarding the SFI or a facilitator, they may contact their MMCP and the MMCP will follow the complaint process as per contract requirements for Grievances and Appeals. If there is a compliant about a facilitator, the MMCP should contact the SFI in this process.

Consumers may also escalate these issues or complaints through facilitator partners, the SFI, and the Department.

### *Electronic Visit Verification*

Electronic Visit Verification (EVV) is a federal mandate. The SFI and MMCs will follow and adhere to the federal and state requirements and to guidance issued by the Department.

Time4Care is the time verification system used by the SFI. The system will also be used for EVV Compliance as it allows for tracking of hours worked, by whom, with sign off of hours from the consumer.  Time4Care will be made available for all consumers and their PAs. It will be monitored to confirm the 90% EVV compliance goal.

Time4Care allows workers to log into the app, clock in, and indicate the consumer they are delivering care to. The support worker then provides the care and clocks out to indicate the service is complete. During the clock-in and clock-out process, the location is recorded. The clock-out function submits the personal assistants' timesheet, and it is immediately validated against the program's timesheet rules. Consumers and their PAs have real-time visibility and can easily see any issues with timesheets and schedules. The consumer will approve the timesheet on their mobile device.

In the instance the SFI platform, Time4Care, has an outage, the offline mode can be used by PA's and consumers. Users can make updates in real time in the offline mode. When the system is back to full functionality, the system will sync any updates.

---

Questions regarding SFI transition should be directed to the Department at StatewideFI@health.ny.gov

_____

Posted: February 2025

# CONSUMER DIRECTED PERSONAL ASSISTANCE PROGRAM AGREEMENT BETWEEN THE CONSUMER/DESIGNATED REPRESENTATIVE AND THE HEALTH PLAN

Consumer Name: _____

Designated Representative Name (if applicable): _____

Health Plan Name: _____

## I. CONSUMER DIRECTED PERSONAL ASSISTANCE PROGRAM (CDPAP) AGREEMENT

The Consumer Directed Personal Assistance Program (the "Program") is a program for Medicaid recipients ("Consumers") who need home care services, including help with personal care and certain home health and skilled nursing services. The Program gives Consumers more flexibility and freedom of choice by letting them direct their own care, including choosing their own personal assistants in accordance with their Health Plan's authorization.

To participate in the Program, Consumers must be able to direct their own care and understand and fulfill the Consumer's responsibilities within the Program or have a Designated Representative that will do this for them. The Consumer or Designated Representative must also understand the roles and responsibilities of the Health Plan and the Statewide Fiscal Intermediary under the Program.

As used throughout this agreement the term "Consumer" also includes the Consumer's Designated Representative when applicable, unless otherwise specified. As used throughout this agreement the terms "I" and "my" will refer to the Consumer or alternatively to the Consumer's Designated Representative when applicable and depending on context.

This agreement outlines the roles and responsibilities of the Consumer and the Health Plan under the Program. The Consumer must enter into this agreement to acknowledge that they understand the roles and responsibilities and to participate in the Program. The Consumer must also enter into a separate agreement with the Statewide Fiscal

Intermediary (SFI), which will outline the roles and responsibilities of the Consumer and the SFI.

## II. RESPONSIBILITIES OF THE CONSUMER/DESIGNATED REPRESENTATIVE:

As a Consumer participating in the Program, I will:

1. Read and understand this agreement and the roles and responsibilities of the Health Plan, SFI, and Consumer under the Program.

2. Work with the SFI as my fiscal intermediary. I understand that I can choose to work with one of the CDPAP facilitators contracted with the SFI, but that the SFI will be the only fiscal intermediary I can work with.

3. Manage my plan of care.

4. Be responsible for recruiting, hiring, training, supervising, and scheduling a sufficient number of qualified individuals of my choosing to serve as my personal assistant(s) in accordance with my Health Plan's authorization.

5. Maintain a back-up plan for substitute coverage when a personal assistant is temporarily unavailable for any reason.

6. Maintain an appropriate home environment.

7. Review the plan of care with each personal assistant outlining their responsibilities.

8. Ensure my personal assistant(s) safely and competently performs only the tasks identified in the plan of care during authorized hours.

9. Comply with labor laws, providing equal employment opportunities as specified in the Consumer's agreement with the CDPAP SFI.

10. Inform the Health Plan and SFI within 5 business days of any change in status or condition, including but not limited to hospitalizations, address and telephone number changes, and vacations.

11. Terminate a personal assistant's employment, if necessary.

12. Notify the SFI of any changes in the employment status of a personal assistant.

13. Ensure my personal assistant's required documents are submitted to the CDPAP SFI including annual worker health assessments and required employment documents.

14. Ensure my personal assistant(s) adhere to EVV requirements, including those outlined by the EVV Program Guidelines and Requirements.

15. Attest to the accuracy of the hours my personal assistant(s) worked either through the SFI EVV data system, the SFI's Time4Care application, or by signing the personal assistant's time sheet.

16. Distribute physical paychecks to each personal assistant, if applicable.

17. Comply with Program eligibility requirements including participating, as needed, in the required assessment and reassessment processes.

18. Report to the health plan, and take any action necessary to facilitate the return of, any overpayment or inappropriate payments from the Medicaid program made to my personal assistant(s).

## III. ADDITIONAL RESPONSIBILITIES OF THE DESIGNATED REPRESENTATIVE ONLY:

In addition to responsibilities listed above that I, as Designated Representative, must perform on behalf of the Consumer, I will:

1. Make myself available to ensure the consumer responsibilities are carried out without delay.

2. Be available and present for any scheduled assessment or visit by the independent assessor, examining medical professional, or health plan when the member is not self-directing.

## IV. RESPONSIBILITIES OF THE HEALTH PLAN:

The health plan must provide the Consumer with written educational materials outlining the roles and responsibilities of the Consumer to ensure they are making an educated, informed choice to receive Program services and will:

1. Determine if the Consumer (not including the Designated Representative) is eligible for the Program and whether home care or personal care services should be authorized upon each assessment or reassessment.

2. Determine if the Consumer is able and willing to assume all responsibilities associated with participating in the CDPAP or has a Designated Representative able and willing to act on the Consumer's behalf.

3. Upon each assessment or reassessment, discuss and document that the Consumer's or Designated Representative's plan to assure adequate supports are available to meet the Consumer's needs.

4. Develop, upon each assessment or reassessment, a person-centered service plan/plan of care with the Consumer or Designated Representative, outlining the tasks to be completed by the personal assistant.

5. Maintain a copy of the plan of care in the Consumer's file and give a copy to the Consumer and/or the Designated Representative.

6. Authorize the type/amount of services and number of eligible hours.

7. Only authorize Program services provided through the SFI.

8. Investigate reports from the SFI that the consumer is not meeting their responsibilities.

9. Evaluate on an ongoing basis whether the Consumer requires personal care, home health care, or some other level of service.

10. Notify the Consumer and Designated Representative that Program services are being decreased or discontinued if the health plan determines such services are no longer appropriate and, if applicable, refer the Consumer to other appropriate programs.

11. Provide the Consumer and Designated Representative with the appropriate fair hearing notice.

ALL PARTIES ACCEPT THE ROLES AND RESPONSIBILITIES TO PARTICIPATE IN THE CDPAP AS EXPLAINED ABOVE. FULFILLING THE CONSUMER'S ROLES AND RESPONSIBILITIES IS A REQUIREMENT OF PARTICIPATION IN THE PROGRAM. FAILURE TO FULFILL THE CONSUMER'S ROLES AND RESPONSIBILITIES MAY RESULT IN DISCONTINUANCE OF PROGRAM SERVICES.

**Signatures**

_____          _____

Consumer                                                                          Date

_____          _____

Designated Representative (If applicable)                        Date

_____          _____

Health Plan Representative                                              Date