

**Office of the New York State Attorney General**

**Letitia James**
**Attorney General**

April 2, 2025

**By ECF**
Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

    Re:    *Engesser v. McDonald*
             E.D.N.Y., Court No. 25-cv-01689 (FB) (LKE)

Dear Judge Block:

The Office of the New York State Attorney General represents defendant James V. McDonald ("Defendant"), sued in his official capacity as the Commissioner of the New York State Department of Health ("DOH") in the above-captioned matter. Defendant writes in response to Plaintiffs' April 1, 2025 letter, ECF Doc. 38 (the "4/1/2025 Letter"), regarding the Temporary Restraining Order issued by Your Honor on March 31, 2025, ECF Doc. 37 (the "TRO" or the "Order").

DOH is of course sensitive to issues consumers may be encountering, and in fact has been working diligently to ensure a smooth transition for all consumers and their personal assistants that achieves the cost savings necessary for the State. The current circumstance is a byproduct of a lawsuit filed immediately before the transition when necessary preparatory actions by Managed Care Organizations (MCOs) and local districts of social services (LDSS) had already been taken—including the cancellation of existing contracts between MCOs/LDSSs and fiscal intermediaries, and the step of moving legally-required authorizations to provide fiscal intermediary services to PPL as the sole Statewide Fiscal Intermediary. Indeed, the law requiring the April 1, 2025 transition has been well known and publicized since the Legislature passed the State budget nearly a year ago. So, when Plaintiffs filed this lawsuit a handful of days before the transition date, the status was that the transition steps described above had already been taken. In this situation, the Court's TRO to maintain that status quo restrains certain statutory actions on a forward-looking basis, but DOH is not compelled to (nor could it) force non-party MCOs or LDSSs to sign new contracts where old ones are no longer in effect. In fact, the Court on the record rejected Plaintiffs' counsel's attempt to insert such language into the TRO.

As set forth in further detail below, DOH has been working diligently to comply with the terms of the TRO since its issuance pursuant to DOH's reasonable interpretation of the TRO. Plaintiffs fail to identify how any of the purported issues raised in the 4/1/2025 Letter violate the language of

Hon. Frederic Block  Page 2 of 6
April 2, 2025

the TRO, which is prohibitory in two distinct respects but, again, does not require DOH to wind back the clock months or compel third parties not before the Court to do so. Instead, Plaintiffs paraphrase and unreasonably interpret the TRO to create new obligations that they claim DOH fails to meet. Plainly, Plaintiffs seek to relitigate the TRO—the language of which they approved, see Tr. of Civil Cause for Oral Argument Before the Honorable Frederic Block, United States Senior Judge, attached as Exhibit 1 ("TRO Hearing Tr."), at 25:3.

### A. DOH's Reasonable Interpretation of the TRO

As Your Honor is aware, the pertinent language in the TRO orders that Defendant:

> be immediately and temporarily restrained from implementing those sections of Part HH of Chapter 57 of the New York Session Laws of 2024 (the "CDPAP" Amendment) that amend subdivision 4-a(ii-a) (see section 1 of Part HH) and 4-a-1(a) (see section 3 of Part HH) of section 365-f of the social services law.
>
> Importantly, this Order does not prevent the Statewide Fiscal Intermediary ("PPL") from operating, processing applications, servicing and paying CDPAP participants who have already registered with PPL. Rather, this Order restrains Defendant from disallowing other Fiscal Intermediaries from servicing those CDPAP participants who have not yet registered with PPL.

TRO at 2 (paragraph separation inserted). The two cited, specific provisions of the statute pertain to (1) a requirement that DOH require LDSSs/MCOs contract with the Statewide FI, see SSL § 365-f(4-a)(ii-a), and (2) the prohibition that there be no other FI after April 1, 2025, see SSL 365-f(4-a-1)(a)).

DOH understands the TRO to do two things: allow PPL to continue to operate and bar DOH from taking any action that would prohibit fiscal intermediaries ("FIs") from continuing to serve the consumers that have not yet registered with PPL.

First, the TRO explicitly carves out the operations of PPL as the Statewide FI to ensure it can still operate, process applications, service and pay CDPAP participants who have already registered with PPL. DOH has taken no action that would prevent PPL from operating under the terms of the TRO, or in violation of those terms. Because the TRO plainly says that it does not prevent PPL from processing applications, DOH has informed MCOs and LDSSs that consumers and personal assistants ("PAs") have not been restricted from starting the registration process.

Second, the TRO restrains DOH from disallowing other FIs from servicing CDPAP participants who have not yet registered with PPL. DOH has taken no steps to prohibit FIs from continuing to pay the PAs that that work with the roughly 20,000 consumers that have not yet registered with PPL. DOH has also not prohibited MCOs from paying FIs for those services either under existent contracts or under any other terms that MCOs and FIs negotiate for FI reimbursement.

### B. DOH's Compliance with the TRO

On the morning of April 1, 2025, DOH distributed information regarding the TRO to MCOs and

Hon. Frederic Block Page 3 of 6
April 2, 2025

LDSSs, the entities that authorize CDPAP services and held contracts with the FIs. DOH communicated, <u>inter alia</u>, that the TRO "does not apply to the consumers who have already started or completed their registration with PPL, or their associated PAs," and that "[i]t also does not prevent consumers and PAs from starting their registration with PPL." DOH further communicated that the "TRO does not prevent [MCOs and LDSSs] from reinstituting contracts [with the former Fiscal Intermediaries], nor require you to do so." <u>See</u> Statewide Fiscal Intermediary Transition MCO Meeting PowerPoint, attached as Exhibit 2, at 3; April 1, 2025 email to LDSSs, attached as Exhibit 3 (communication from DOH's Bureau of Managed Long Term Care Policy).

DOH has reasonably interpreted the TRO based on the facts available, which were established and discussed at the TRO hearing. DOH reasonably interpreted the TRO and its application to the three different groups of consumers. The first group are consumers who have completed their registration with PPL, meaning the consumer took all steps necessary to finalize registration with PPL (*e.g.*, obtaining a PPL identification number, providing demographic information to PPL and signing the MOU with PPL). DOH interpreted the TRO to mean this group was able to continue with PPL as their FI. The second group are consumers who have started registration with PPL but not completed it. DOH interpreted the TRO to mean these consumers had started registration and had therefore "registered" with PPL. This second group could continue to be served by PPL. The third and final group were consumers who had not started registration with PPL. This group would be subject to the TRO and could choose to continue with an existing FI.

DOH has taken the steps available to it to facilitate the continuation of payment of PAs while the transition to PPL continues, in line with the letter and intent of the TRO. <u>See</u> <u>id.</u> at 25:17-19 ("I mean, [DOH has] the discretion to do what they think is appropriate to protect people. I think we can leave it open ended."), 26:4 ("You have a lot of discretion here. I'm not going to tell the Government what to do."). However, it is important to note that DOH cannot and has not ever paid FIs directly. All payments to FIs are effectuated through contracts between the FIs and MCOs or LDSSs. To the extent MCOs and LDSSs have cancelled these contracts consistent with applicable notice provision and other contract terms, DOH does not have the authority to compel MCOs or LDSS to contract with third parties.

The Court ordered DOH to allow entities other than PPL to provide FI services. To the extent that there are operational FIs still contracted with MCOs or LDSSs to provide authorized homecare services to the consumers that have not yet registered with PPL, DOH has done nothing to interfere with those relationships or prohibit FIs from servicing the needs of those CDPAP consumers. DOH has taken no action to prohibit existing FIs from paying for CDPAP services rendered by PAs who work with a consumer that has not yet registered with PPL.

### C. Plaintiffs Cite to No Evidence that DOH has Failed to Comply with the TRO

Plaintiffs do not allege that Defendant has implemented the relevant sections of the CDPAP Amendment in violation of the TRO. Nor do they allege that Defendant has disallowed any FI from servicing CDPAP participants who have not registered with PPL. Certainly, Plaintiffs point to no specific actions taken by DOH in violation of the TRO. Rather, Plaintiffs infer from the actions of third parties that DOH has not done enough to comply with Plaintiffs' own interpretation of the TRO. Taking each of Plaintiffs' specific allegations in turn:

Hon. Frederic Block  Page 4 of 6
April 2, 2025

*With respect to the first alleged issue:* the 4/1/2025 Letter first alleges that "Plaintiffs' counsel believes that DOH has not ordered [MCOs] or [LDSSs] to take the steps necessary to actually provide CDPAP services to . . . individuals" "who have not yet begun enrollment with PPL" because the PAs of those consumers cannot clock in with their Fiscal Intermediary. 4/1/2025 Letter at 2. Setting aside that Plaintiffs' counsel's belief is not evidence of any violation of the TRO, nowhere in the TRO is there a requirement that DOH order MCOs or LDSSs "to take the steps necessary to actually provide CDPAP services" to those consumers who have not registered with PPL.

Notably, this language is similar to what DOH proposed for the TRO—and that Plaintiffs rejected. See TRO Hearing Tr. at 21:16-22 ("[DOH's] proposal is that the [C]ourt[] order DOH to direct the managed care organization[s] and local districts of Social Services to pay PPL . . . and that DOH is further ordered to direct PPL to pay all the personal assistants on a weekly basis regardless of their registration status.").

Plaintiffs further specify that "DOH has not ordered MCOs or LDSS to reinstate their contracts with the FIs." 4/1/2025 Letter at 2. Not only is this language not in the TRO, but similar language was explicitly rejected by the Court.[1] TRO Hearing Tr. at 15:24-25 – 16:1-3 ("MS. ROSS: Your Honor, the State can amend its contract with PPL to allow them to pay PPL as well as the existing fiscal intermediaries and - - THE COURT: I don't think the State has such flexibility and powers here."), 25:12-19 ("MS. ROSS: . . . you could potentially add language to this saying that the State could contract with FIs to implement this order if that would be needed. THE COURT: I do not think it's necessary. I mean, they have the discretion to do what they think is appropriate to protect people.").

Moreover, Plaintiffs' attempt to read into the TRO obligations for DOH to take various steps, such as "order[ing] MCOs or LDSS to reinstate their contracts with the FIs, to enable the FIs to continue paying CDPAP Personal Assistants" and "order[ing] the MCOs or LDSS to send authorizations to the FIs to allow them to provide services," demonstrates that their reading of the TRO is unreasonable. If such steps were necessary to comply with a TRO, the TRO would by implication not be preserving the status quo—the very purpose of a TRO. Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 107 (2d Cir. 2009). A TRO should not be interpreted in a way to require the enjoined party to undertake manifold additional actions.

*As to the second alleged issue*: Plaintiffs allege that "according to MCOs' communications with FIs, DOH believes the TRO's preservation of the status quo only extends to CDPAP consumers who have not started the enrollment process," and does not apply to consumers who have already started or completed their registration with PPL. 4/1/2025 Letter at 2.[2] This interpretation of the

---

[1] Similarly, Plaintiffs' request that the Court "restor[e] the contractual arrangements between MCOs or LDSS and still-existing FIs," 4/1/2025 Letter at 3, reads into the TRO language that is not there and cannot be the subject of the TRO given that the MCOs and LDSSs are not parties to this litigation.

[2] Plaintiffs similarly have no evidence supporting their claim that "[p]ursuant to explicit instructions from DOH, as of midnight tonight, MCOs are directing FIs to stop processing payments for anyone who has taken any action to initiate enrollment with PPL." Id. Despite a

Hon. Frederic Block | Page 5 of 6
April 2, 2025

TRO actually adheres to the plain language of the TRO. The TRO states that "[i]mportantly, this Order does not prevent [PPL] from operating, <u>processing applications</u>, servicing and paying CDPAP participants who have already registered with PPL." TRO at 2 (emphasis added). The only reasonable interpretation of "processing applications" is that this exemption from the TRO applies to consumers who have started the process with PPL, who must continue with that process while their applications are pending, and whose applications are not affected by the TRO. Contrary to Plaintiffs' contention, the TRO clearly defines consumers who have "registered" with PPL to include those who "have already started . . . their registration with PPL," *i.e.*, those consumers whose applications were being processed. As such, the TRO does not affect those individuals for which PPL was "processing applications," as well as those individuals who have fully completed their registration with PPL.

Plaintiffs' contention that DOH has simply determined that certain consumers are "out of luck" is not only incendiary but also belied by the myriad steps taken by DOH to facilitate the transition pursuant to the CDPAP Amendment. Further, it was DOH that proposed TRO language in an attempt to allow for a path for payment of all CDPAP consumers' PAs, regardless of registration status. See TRO Hearing Tr. at 21:16-22. Plaintiffs rejected that language and cannot now seek to revise the TRO in hindsight.

*As to the third alleged issue*: Plaintiffs state that "upon information and belief, DOH is not taking the necessary steps to protect even the CDPAP consumers who are fully registered with PPL." 4/1/2025 Letter at 3. This argument has no relation to the TRO. The issues described relating to these consumers is not one addressed by the TRO in any way, and in fact relates to the actions of PPL, not DOH. Because PPL is not a party to this litigation, the TRO does not and cannot address alleged issues between consumers and PPL.

Respectfully, Plaintiffs are trying to obtain a new TRO, even though they agreed with the language at the TRO hearing. The TRO as phrased restrains DOH from taking certain actions (which DOH has not taken), but it does not affirmatively require DOH to wind back the clock by months.[3] We thank the Court for its attention to this matter.

Sincerely,

/s/ Samantha L. Buchalter
Samantha L. Buchalter

---

claim of "explicit instructions," Plaintiffs cannot evidence any such instructions. Rather, Plaintiffs cite only to the actions of the MCOs and PPL, who are not parties to this litigation. See id.; id. at 2 n.1; Exhibit B to the 4/1/2025 Letter. And as set forth above, DOH , acknowledging that contracts with existing FIs had been cancelled and all authorizations had been switched to PPL, advised MCOs and LDSSs on April 1 that they are not prevented from reinstituting contracts with FIs nor are they required to do so.

[3] Defendant respectfully requests that if the Court orders a hearing on this matter, that hearing be held telephonically because first, DOH personnel in Albany can then participate and second, Defendant's counsel is in the process of drafting response papers regarding the proposed preliminary injunction to be filed by the 5 p.m. deadline.

Hon. Frederic Block  
April 2, 2025

Page 6 of 6

Rachel Summer  
Assistant Attorneys General  
212-416-6582  
Samantha.Buchalter@ag.ny.gov