UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. AND C.P., individually and on behalf of all persons similarly situated, BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING,<br><br>    Plaintiffs,<br>  v.<br><br>JAMES V. MCDONALD, as Commissioner of the New York State Department of Health,<br><br>    Defendant. | Dkt. No.: 25-CV-1689<br><br>**DECLARATION OF ILANA BERGER** |

Ilana Berger hereby declares, under penalty of perjury, pursuant to 28 U.S.C. 1746, that:

1. My name is Ilana Berger, and I make this declaration in support of plaintiffs' motion for a preliminary injunction.

2. I am the New York Political Director of Caring Majority Rising, an organization of home care workers, older and disabled New Yorkers and family caregivers, organizing to ensure all New Yorkers have the support they need to live and age with dignity in their own homes and communities, and that home care workers earn a living wage so that they can support their own families and meet our state's growing need for care. I have been working in New York on this issue since 2014 and have been doing community organizing work for nearly 30 years.

3. Caring Majority Rising also convenes the New York Caring Majority Coalition, which seeks to create a world in which we all people have the healthcare and home care they need. The Caring Majority Coalition supports the Health Care for All and the Fair Pay for Home Care campaigns.

4. Neither Caring Majority Rising nor New York Caring Majority Coalition has a financial stake in New York's Medicaid Managed Care Program.

5.  As Political Director of Caring Majority Rising, I am in constant contact with consumers of home care services in the CDPAP program and with personal assistants ("PAs") who provide services and are paid through the CDPAP program.

6.  Since the enactment of the statewide fiscal intermediary law, we have been advocating for a seamless transition that does not harm CDPAP consumers or Personal Assistants. Over the last few months, the State Department of Health and PPL, the new statewide fiscal intermediary, have turned the CDPAP program into a disaster.

7.  Our team has been deluged with complaints from terrified consumers that they have been unable to enroll with PPL, and that their PAs have been unable to register with PPL, despite repeated efforts. About half of consumers and likely 10% of PAs were fully registered with PPL on March 31st, though PPL and the Department of Health misleadingly claim that large numbers of consumers or PAs have "started or completed enrollment."

8.  I have personally spoken with and read written complaints from hundreds of consumers and PAs. I have monitored the vast number of complaints in multiple Facebook groups set up by CDPAP consumers and PAs to share their difficulties in enrolling with PPL, and have heard additional issues from people in other organizations who have been trying to assist both consumers and PAs with their efforts to enroll or register with PPL. We have hosted a "Water Cooler Hour" on Zoom two nights a week since January 26th where consumers, PAs, and family members support each other in navigating the enrollment process and report what is happening with PPL's systems.

9.  I have been in close contact with a representative of some facilitator organizations, who consistently reported that while the facilitators have done everything within their power to enroll consumers and PAs, PPL has only been able to register a small percentage of PAs. As of March 27th, I had spoken with representatives of managed care plans and 11 facilitators, and found, on average, they had been able to get PPL to fully register less than 10% of PAs in their systems.

10. Even consumers who have successfully begun to enroll with PPL and who have identified their personal assistants to PPL have found that their personal assistants still encounter multiple difficulties registering with PPL.

11. I understand that the Department of Health represented to the court this week that without the TRO, no consumer's benefits would be terminated or suspended. This is untrue.

12. On April 1st, we heard from at least a hundred PAs and consumers who believed they were fully transitioned to PPL's system, only to find that PAs could not clock in. We saw hundreds of similar posts in Facebook groups. There were myriad reasons for this, from PPL failing to upload consumer benefit authorizations, to incomplete I-9 verifications, to technical malfunctions with PPL's web systems and more. PPL told PAs they could call in their work hours, a common industry practice, but hundreds could not access PPL's Telephony system. Because the Department of Health ended the authorization of consumers' previous FI's to

provide CDPAP services, on April 1 there was no entity for tens of thousands of PAs to clock into. Because PPL's infrastructure is incapable of supporting the CDPAP program at this time, I believe the only way for the CDPAP program to avoid collapse is to enable pre-existing FI's to restart provision of services as soon as possible.

13. Many PAs are unlikely to continue providing home care services in the absence of a firm guarantee from PPL or another fiscal intermediary to pay them promptly and to provide workers' compensation coverage and other basic employment protections. Many PAs who have submitted the forms and documents required to register have not been able to complete the process because PPL has not taken the necessary steps to confirm their registration or failed to finalize their consumers' authorization. They do not know if PPL will do so by the April 30th deadline. PPL's communications to PAs have only caused more confusion and uncertainty. PPL and the Department of Health have announced that PAs who are unable to register by April 1st but continue to work will be paid weeks late, and only if they are able to register by April 30th. When these PAs log onto PPL's timekeeping app, they receive a confusing pop-up message saying they are not employees, even though they are working for a consumer who is fully enrolled with PPL. This message, on top of the myriad challenges faced by consumers and PAs in enrolling, caused many PAs to reconsider if they could continue working in this field. Additionally, many PAs have noted that it incentivizes PPL to wait to fully enroll them until May 1, saving themselves 30 days of pay. It is my belief that as a private-equity backed company, PPL's main mission is to create profit, not support workers or consumers.

14. A screenshot of the pop-up message many PAs have received is attached as Exhibit A to this declaration.

16. In my extensive experience with the CDPAP program, PAs, who are paid just above the State's regular minimum wage under the Wage Parity Act, live paycheck to paycheck, relying on weekly payments to cover their basic necessities, including food, utilities, health care costs, and rent, among other things. They cannot afford to go without being paid on time. They have no float.

17. The work of PAs is physically demanding and often leads to injuries, sometimes disabling injuries. It is dangerous for them to work without the guarantee of workers' compensation coverage.

18. I understand that the Department of Health attempted to create the impression in court that most consumers have transitioned to PPL. That is untrue. In fact, a vast number of consumers who have begun the process of enrolling with PPL have been unable to complete the process due to errors by PPL or due to confusion caused by PPL. It is my understanding that in addition to the tens of thousands of consumers who have not yet begun the process of transitioning, many tens of thousands more consumers and their PAs remain in limbo created by PPL's system failures. Either way, their benefits are not continuing, because they do not have a

personal assistant whom PPL has promised to pay and to provide workers' compensation coverage.

19. PPL's payroll and time keeping systems have not been adequately tested to prepare for the volume of PA's attempting to register. PPL reported paying only 17 PAs in March, despite the fact that likely thousands of new CDPAP consumers (rather than those already using a fiscal intermediary) began enrolling with PPL starting March 1. PAs are reasonably worried that they will not be paid until well after the April 30th date announced by PPL and the Department of Health. A promise that you might get paid in the future if PPL does not continue to prevent you from registering does not offer the necessary assurance for personal assistants to continue working.

20. PPL does not provide a method for reporting hours of work until the PA is fully registered, leaving them no assurance that they will ultimately be paid under any circumstances.

21. CDPAP consumers are likely to be left without services because PAs are unable to take the risks associated with working at physically demanding – and sometimes hazardous – jobs without clear employment relationships and the resulting pay, workers compensation and protection against liability if their consumer was harmed or injured while under their care. The Department of Health's insistence on rushing this haphazard and deeply flawed transition will result in discontinued consumers benefits without court intervention.

22. I swear or affirm, under penalty of perjury, that the above is true and correct to the best of my knowledge and belief.

Dated: April 2, 2025

Ulster County, New York

Signed by: Ilana Berger
E05B72C58B0E455...

Ilana Berger