UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. and C.P., individually and on behalf of all persons similarly situation; BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING,<br><br>                    Plaintiffs,<br><br>          - against -<br><br>JAMES V. MCDONALD, as Commissioner of the New York State Department of Health,<br><br>                    Defendant. | No. 25-cv-01689 (FB) (LKE) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
28 Liberty Street
New York, New York 10005

Rachel Summer
Assistant Attorney General
        *of Counsel*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

STATUTORY AND REGULATORY FRAMEWORK ...................................................6

    A.    THE MEDICAID PROGRAM ..................................................................6

    B.    CDPAP..........................................................................................6

    C.    THE CDPAP AMENDMENT'S MODIFICATION OF NEW YORK SOCIAL SERVICES LAW § 365-f....................................................................7

    D.    RATIONALE FOR THE CDPAP AMENDMENT .................................8

    E.    THE TRANSITION TO THE STATEWIDE FI .....................................9

STANDARD OF REVIEW .......................................................................................11

ARGUMENT ........................................................................................................11

I.      PLAINTIFFS HAVE NOT SHOWN IRREPARABLE HARM .....................................12

II.     THE BALANCING OF THE EQUITIES FAVORS DEFENDANT.............................14

    A.    STAYING THE CDPAP AMENDMENT PREVENTS THE STATEWIDE FI FROM PAYING PAS WHO HAVE REGISTERED.............................................14

    B.    THE CONTRACTS FOR THE OUTGOING FIS HAVE BEEN CANCELED...15

    C.    THE CDPAP AMENDMENT WILL SAVE THE STATE HUNDREDS OF MILLIONS OF DOLLARS...............................................................16

III.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS .............................17

    A.    PLAINTIFFS HAVE NOT ALLEGED A DUE PROCESS VIOLATION BECAUSE THE CDPAP AMENDMENT DOES NOT REDUCE OR ALTER THEIR MEDICAID BENEFITS .........................................................17

    B.    PLAINTIFFS ARE NOT ENTITLED TO A FAIR HEARING NOTICE, BUT NEVERTHELESS HAVE RECEIVED AMPLE NOTIFICATION TO TRANSITION TO THE STATEWIDE FI ............................................19

    C.    PLAINTIFFS LACK ARTICLE II STANDING BECAUSE THERE IS NO INJURY-IN-FACT ......................................................................20

    D.    TO THE EXTENT PLAINTIFFS SEEK RELIEF FOR THEIR PAS, THEY LACK STANDING TO DO SO ....................................................22

    E.    NAMED PLAINTIFFS HAVE TRANSITIONED TO PPL, MAKING THEIR CLAIMS MOOT ......................................................................23

IV.    OTHER FEDERAL AND STATE COURTS HAVE DENIED SIMILAR MOTIONS TO ENJOIN THE CDPAP AMENDMENT'S IMPLEMENTATION....................................24

i

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

CASES                                                                   PAGE(S)

Barrows v. Burwell,
    777 F.3d 106 (2d Cir. 2015)..................................................................17

Bellin v. Zucker,
    6 F.4th 463 (2d Cir. 2021) ...................................................................17

Carver v. City of N.Y.,
    621 F.3d 221 (2d Cir. 2010)..................................................................21

Clapper v. Amnesty Int'l USA,
    568 U.S. 398 (2013)...............................................................................21

Cmty. Health Ctr. v. Wilson-Coker,
    311 F.3d 132 (2d Cir. 2002)....................................................................6

Cortlandt St. Recovery Corp. v. Hellas Telecomms.,
    790 F.3d 411 (2d Cir. 2015)..................................................................23

Costello v. McEnery,
    767 F. Supp 72 (S.D.N.Y. 1991)....................................................13, 14

Deakins v. Monaghan,
    484 U.S. 193  (1988)..............................................................................23

Delaware Riverkeeper Network v. N.Y. State Dep't of Environmental
Conservation,
    788 Fed. Appx. 65 (2d Cir. 2019)..........................................................23

Do No Harm v. Pfizer, Inc.,
    126 F.4th 109, 119 (2d Cir. 2025) ........................................................22

Faculty v. N.Y. Univ.,
    11 F.4th 68 (2d Cir. 2021) ..............................................................21, 22

Friends of E. Hampton Airport, Inc. v. Town of E. Hampton,
    841 F.3d 133 (2d Cir. 2016).................................................................11

Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,
    528 U.S. 167 (2000)..............................................................................21

Gill v. Whitford,
    585 U.S. 48, 65 (2018)..........................................................................20

Glidedown, LLC v. N.Y. State Dep't of Health,
   No. 24-CV-06731, 2025 WL 669510 (W.D.N.Y. Mar. 3, 2025) ..........................................24

Hirschfeld v. Bd. of Elections in City of N.Y.,
   984 F.2d 35 (2d Cir. 1993)...........................................................................................................14

Jeannot v. N.Y. State,
   No. 24-CV-05896, 2025 WL 80689 (E.D.N.Y. Jan. 13, 2025) ......................................24

Kapps v. Wing,
   404 F.3d 105 (2d Cir. 2005)........................................................................................................17

Keepers, Inc. v. City of Milford,
   807 F.3d 24 (2d Cir. 2015)....................................................................................................22, 23

Lacewell v. Off. of the Comptroller of the Currency,
   999 F.3d 130 (2d Cir. 2021)........................................................................................................21

Mahon v. Ticor Title Ins. Co.,
   683 F.3d 59 (2d Cir. 2012)..........................................................................................................20

Matter of Eckert v. McDonald,
   Index No. 94315 (Sup. Ct. Cattaraugus Cnty. Mar. 17, 2025) ..............................23

Moore v. Consol. Edison Co. of N.Y.,
   409 F.3d 506 (2d Cir. 2005)........................................................................................................11

Nicholas v. Trump,
   433 F. Supp. 3d 581 (S.D.N.Y. 2020)....................................................................................21

Principle Homecare, LLC v. McDonald,
   No. 24A921, 2025 WL 964774 (Mar. 31, 2025) .............................................................5, 24

Principle Homecare, LLC v. McDonald,
   No. 25-466, 2025 WL 946292 (2d Cir. Mar. 25, 2025)..............................................24

Principle Homecare, LLC v. McDonald,
   No. 24-CV-07071, 2025 WL 622876 (S.D.N.Y. Feb. 26, 2025)..........................24

Shady v. Tyson,
   5 F. Supp. 2d 102 (E.D.N.Y. 1998) ......................................................................................13

Sierra Club v. Morton,
   405 U.S. 727 (1972)........................................................................................................................21

Summers v. Earth Island Inst.,
    555 U.S. 488 (2009)................................................................22

Tom Doherty Assocs., Inc. v. Saben Entm't, Inc.,
    60 F.3d 27 (2d Cir. 1995)........................................................12

Tough Traveler, Ltd. v. Outbound Products,
    60 F.3d 964 (2d Cir. 1995)......................................................14

Warth v. Seldin,
    422 U.S. 490 (1975)................................................................20

Wreal, LLC v. Amazon.com, Inc.,
    840 F.3d 1244 (11th Cir. 2016)...............................................13

W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,
    549 F.3d 100 (2d Cir. 2008)................................................20, 21

UNITED STATES CONSTITUTION

Article III ..................................................................................20

FEDERAL STATUTES

42 U.S.C. § 1396 ..........................................................................6

42 U.S.C. § 1396a(a)(30)(A) ........................................................6

STATE STATUTES

New York Social Services Law

    § 363 ......................................................................................6
    § 363-a ...................................................................................6
    § 363-a(2) ...............................................................................6
    § 365-f ..................................................................................12
    § 365-f(1) ................................................................................6
    § 365-f(2) ................................................................................6
    § 365-f(3) ................................................................................7
    § 365-f(4-a)(a)(i) ....................................................................14
    § 365-f(4-a)(a)(ii) ............................................................8, 9, 15
    § 365-f(4-a)(a)(ii-a) .................................................................7
    § 365-f(4-a)(a)(ii-b) ...............................................................15
    § 365-f(4-a)(a)(iii) ...................................................................8
    § 365-f(4-a-1)(a) ......................................................................8
    § 365-f(4-d) ..........................................................15, 18, 21, 23

§ 366-a(12) ................................................................................................................13
§ 364-j(31) ................................................................................................................13
§ 365-a(2)(e)(iii) ........................................................................................................13

**FEDERAL REGULATIONS**

42 C.F.R. § 431.200(b) ...............................................................................................18

42 C.F.R. § 431.201 ...................................................................................................18

42 C.F.R. § 431.206 ...................................................................................................18

42 C.F.R. § 431.210 ...................................................................................................19

42 C.F.R. § 431.220 ...................................................................................................18

42 C.F.R. § 431.241 ...................................................................................................18

**STATE REGULATIONS**

18 NYCRR § 358-3.1(b)(3) ........................................................................................18

18 NYCRR § 358-5.1 .................................................................................................19

18 NYCRR § 358-5.9(a) .............................................................................................18

18 NYCRR § 505.14 ..................................................................................................10

18 NYCRR § 505.14(a)(5) ...........................................................................................7

18 NYCRR § 505.28(a) ................................................................................................6

18 NYCRR § 505.28(b) ............................................................................................6, 7

18 NYCRR § 505.28(c) ............................................................................................6, 9

18 NYCRR § 505.28(j) .................................................................................................7

18 NYCRR § 505.28(l) ...............................................................................................13

Defendant James V. McDonald ("Defendant"), as Commissioner of the New York State Department of Health ("DOH"), respectfully submits this memorandum of law in opposition to Plaintiffs' Motion for a preliminary injunction, ECF No. 5 ("PI Motion").[1]

## PRELIMINARY STATEMENT

This lawsuit and preliminary injunction motion are a last-minute request to delay the implementation of a law enacted a year ago to reform one of New York's large-scale Medicaid programs, the Consumer Directed Personal Assistance Program ("CDPAP"), to improve efficiency and facilitate services to Medicaid beneficiaries. The transition to the new CDPAP model has largely been completed, consistent with April 1, 2025, the deadline to do so. Plaintiffs' attempt to halt the final implementation of this transition and resurrect the old model—much of which has disappeared—would thwart the State's extensive transition efforts, introduce widespread confusion, and harm beneficiaries. Facilitating an orderly transition, rather than unwinding it, is the only way to best ensure continuity of care.

The preliminary injunction should be denied because this suit lacks merit, particularly given the ample notice DOH provided over the course of months. The equities tilt sharply toward enabling the State to finalize the implementation of a program demonstrably in the public interest. Further, DOH recently provided for a late-registration window to enable continued payment so long as registration occurs by April 30, 2025, the purported harm is by definition reparable—by late registration—and thus not irreparable harm warranting an injunction.

Plaintiffs are six individuals who receive services through CDPAP, referred to as

---

[1] In opposition to the PI Motion, Defendant submits the accompanying Declaration of Amir Bassiri dated April 2, 2025 ("Bassiri Decl.") and its corresponding exhibits, the Declaration of Maria Perri dated April 1, 2025 ("PPL Decl"), and the Declaration of Rachel Summer dated April 2, 2025 ("Summer Decl.") and its corresponding exhibits.

1

"consumers," Liza Engesser, Marisol Getchius, Geetanjali Seepersaud, Maria Jaime, Y.P.S. and C.P. (the "Individual Plaintiffs"), and two organizations—Brooklyn Center for Independence of the Disabled ("BCID") and Regional Center for Independent Living ("RCIL"), that are made up of consumers. Under CDPAP, consumers may hire personal assistants ("PAs"), including relatives, to provide them with at-home personal care or nursing services. Meanwhile, fiscal intermediaries ("FIs") provide administrative services, such as processing PAs' wages and benefits. FIs do not provide at-home services, authorize services, or have any role in an individual's plan of care.

While most States have one or only a few FIs, New York had approximately 600 fiscal intermediaries recently operating in the State, driving up Medicaid costs to unsustainable levels. The large, unlicensed, and decentralized FI industry diverts hundreds of millions of dollars a year in State Medicaid funds away from the provision of actual healthcare to consumers, to instead pay FIs' overhead costs. Accordingly, in April 2024, New York passed Part HH of Chapter 57 of the New York Session Laws of 2024 ("CDPAP Amendment"), which modifies CDPAP by authorizing one statewide fiscal intermediary ("Statewide FI") to provide these administrative services beginning April 1, 2025.

Shortly thereafter, DOH began a mandated procurement process to select an appropriate statewide FI, which DOH did in September 2024. And since then, DOH has contracted with the statewide FI—Public Partnerships LLC ("PPL")—and made extensive efforts to notify consumers and PAs of the transition and to assist them to register with PPL. Over the past several months, and currently, DOH and PPL are helping consumers and PAs to register with PPL and ensure prompt payment of PAs. The vast majority of consumers—approximately 260,000 out of approximately 280,000—have already registered with PPL or have opted to

2

switch to another Medicaid home care program. All remaining consumers can register on their own via PPL's website or with assistance available from PPL or other facilitators. PPL has a registration staff of 2,500 individuals, with more than 1,900 working at PPL's call center and more than 600 processing CDPAP paperwork.

Plaintiffs now, at the eleventh hour, claim that they received insufficient notice of the transition and insufficient due process under the Medicaid Act and the United States Constitution. They seek to halt further implementation of the CDPAP Amendment through the end of September 2025, and to revive aspects of the old CDPAP model with 600 FIs. The requested relief is not available as a practical matter and would not help consumers in any event; instead, it would introduce widespread confusion about what consumers and PAs need to do to ensure prompt payment for CDPAP services, namely, register with PPL. As a practical matter, the 600 FIs—none of which are parties to this case and none of which are subject to DOH's control—have long anticipated their exit from the industry, as required by the CDPAP Amendment. These FIs no longer have contracts with Medicaid managed care organizations ("MCO") or local districts of social services ("LDSS")—contracts that are necessary for these FIs to receive Medicaid funds and pay PAs. Moreover, it is not clear that the relevant FIs (those that previously served consumers who are not yet registered with PPL) are still active. And it is unknown whether these nonparty FIs would be willing and able to enter into new contracts with MCOs and LDSSs, could do so in a timely manner, or could obtain all necessary authorizations from consumers—all of which are prerequisites for Plaintiffs to obtain their ultimate goal of resurrecting the old system to pay these PAs. Plaintiffs' requested remedy is therefore speculative as a practical matter and, in any event, would take time to implement, further delaying the transition and payments to PAs. The State, meanwhile, has encouraged and

3

continues to encourage consumers and PAs to promptly complete the transition to PPL to facilitate prompt payment for continuing services.

Plaintiffs' PI Motion should therefore be denied because they do not satisfy any of the requirements for this extraordinary and drastic remedy. First, Plaintiffs' speculative and conclusory allegations do not suffice to show irreparable harm. DOH and PPL, meanwhile, continue to make significant efforts to facilitate the transition to PPL, and has announced a "late registration window" that allows consumers and PAs to be paid for all time worked in April 2025 so long as they complete registration with PPL on or before April 30, 2025.[2] Specifically, if consumers and PAs complete registration by April 30, 2025, PAs will receive retroactive payment and workers' compensation for the month of April.

Second, the public interest tilts heavily against granting the preliminary injunction. Consumers and the public have an interest in the orderly transition to the Statewide FI to facilitate continuing payments and services for consumers and overall CDPAP efficiency. Plaintiffs' eleventh-hour preliminary injunction would cause maximum chaos given the status of the extensive transition efforts. The CDPAP Amendment creates a Statewide FI. DOH therefore contracted with PPL as the Statewide FI. Staying the CDPAP Amendment stays DOH's contract with PPL and prevents PPL from being paid and, in turn, paying PAs to provide services to consumers. Moreover, plaintiffs seek to revive aspects of the old CDPAP model that have already disappeared and that would require the participation of nonparties that would not be bound by this Court's order. The contracts that outgoing FIs originally signed with MCOs and

---

[2] CDPAP Update: State Department of Health Announces Plan to Protect Cdpap Consumers & Workers Who Register After April 1 Transition Deadline, Department of Health (March 24, 2025), https://www.health.ny.gov/press/releases/2025/2025-03-24_cdpap_update.htm ("Mar. 24, 2025 Press Release").

LDSSs were long expected to be, and have been, canceled. Thus, Plaintiffs' requested relief would impede PPL's contract as the Statewide FI and would, at the same time, not renew or continue the expired or canceled contracts for the outgoing FIs. Additionally, the requested relief impedes the State's effort to save approximately $500 million per year of unnecessary administrative costs to fund over 600 FIs, which could then be redirected to provide other Medicaid services.

Third, Plaintiffs are unlikely to succeed on the merits. Plaintiffs incorrectly claim that the CDPAP Amendment violates the procedural due process provisions of the Medicaid program, 42 U.S.C. § 1396 *et seq.* (the "Medicaid Act"), and the Fourteenth Amendment of the United States Constitution. ECF No. 32 ¶ 185 ("Compl."). But Plaintiffs are not denied a property interest in Medicaid benefits because the CDPAP Amendment does not affect consumer eligibility or the level of care provided to consumers, as FIs are simply administrative middlemen. Nor does the CDPAP Amendment alter, reduce, or eliminate consumers' CDPAP services. As a result, there is no right to or need for an administrative fair hearing under the Medicaid Act, or for a hearing to challenge the transition under the Due Process Clause. Moreover, Plaintiffs received notice of the transition for months through numerous channels, and even now, they do not seek an opportunity to challenge the switch from their original FI to the Statewide FI. Additionally, Plaintiffs lack Article III standing as they cannot show an injury-in-fact because no benefit is being taken away from them. Moreover, the Individual Plaintiffs have completed their enrollment with PPL, making their claims moot.

Finally, it must be noted that despite the numerous lawsuits brought by outgoing FIs, consumers, and PAs challenging the CDPAP Amendment, no federal or state court has granted a preliminary injunction staying the CDPAP Amendment's effective date. Importantly, on March

31, 2025, the U.S. Supreme Court denied a writ of injunction of the CDPAP Amendment.
<u>Principle Homecare, LLC v. McDonald</u>, No. 24A921, 2025 WL 964774 (Mar. 31, 2025)
(Sotomayor, J.).

<b><u>STATUTORY AND REGULATORY FRAMEWORK</u></b>

**A. The Medicaid Program**

Medicaid is a joint state and federal program that provides medical care to low-income
individuals. <u>See</u> Bassiri Decl. ¶ 4. States and the federal Center for Medicare and Medicaid
Services ("CMS") share responsibility for operating Medicaid programs and ensuring overall
fiscal integrity. Federal law requires that a State's Medicaid "payments are consistent with the
efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A). States, however, retain
discretion in choosing how to structure their Medicaid programs and expend Medicaid funds. <u>See</u>
<u>Cmty. Health Ctr. v. Wilson-Coker</u>, 311 F.3d 132, 134 (2d Cir. 2002).

DOH is the single State agency responsible for administration of the New York Medicaid
Program ("NYS Medicaid Program"). <u>See</u> Bassiri Decl. ¶ 5; New York Social Services Law
("SSL") § 363-a. The primary purpose of the NYS Medicaid Program is to make medically
necessary covered health and medical services available to eligible individuals. <u>See</u> SSL § 363;
42 U.S.C. § 1396. DOH may promulgate all necessary regulations and guidelines for
administration of the NYS Medicaid Program. <u>See</u> SSL § 363-a(2).

**B. CDPAP**

Under CDPAP, Medicaid beneficiaries eligible to receive home care services can select
and hire caregivers of their choice and be reimbursed by Medicaid. SSL § 365-f(1); <u>accord</u> Title
18 New York Code Rules and Regulations ("NYCRR") §§ 505.28(a); 505.28(b)(2)-(3); <u>see</u> SSL
§ 365-f(2); 18 NYCRR § 505.28(c). Tasks include bathing, toileting, administering medication,

6

performing medical tests to monitor the consumer's medical condition, changing beds, and preparing meals. See generally 18 NYCRR § 505.28(b); see id. § 505.14(a)(5).

Because CDPAP is a "consumer directed" program, the consumer—or a designated representative—chooses and employs the PA. See id. § 505.28(b)(4). The consumer is responsible for recruiting, hiring, instructing, scheduling, and supervising the "consumer directed personal assistant." Id.; SSL § 365-f(3). Approximately 280,000 consumers employ more than 300,000 personal assistants under CDPAP. See Bassiri Decl. ¶ 12.

While consumers employ their PAs, certain administrative tasks related to this employment are performed by an FI. See id. ¶ 13; see also 18 NYCRR § 505.28(b)(8), (j)(1)(vii). FIs contracted with an MCO or LDSS directly, not DOH. Bassiri Decl. ¶ 14. The FI provides administrative services only; it does not provide personal care services, nor does it recruit, hire, schedule, or supervise PAs. 18 NYCRR § 505.28(j). Instead, the FI works with consumers to process wages and benefits for PAs, maintain employment records for these PAs, and maintain records of consumers' authorization to receive CDPAP services. Id. § 505.28(j)(1). New York's Medicaid program reimburses the FI for performing these administrative tasks. See id. § 505.28(b)(9), (j)(1). FI's reimbursements are paid by the MCO or LDSS with which the FI contracts. DOH does not reimburse the FI directly. Bassiri Decl. ¶¶ 24-26.

**C.  The CDPAP Amendment's Modification of New York Social Services Law § 365-f**

The CDPAP Amendment was enacted on April 20, 2024 with an effective date of April 1, 2025. Bassiri Decl. ¶ 36. The CDPAP Amendment requires any "managed care plans, managed long-term care plans, local social services districts, and other appropriate long-term service programs offering consumer directed personal care services" to contract with the single Statewide FI to provide all FI services to consumers. SSL § 365-f(4-a)(a)(ii-a). Thus, the CDPAP

7

Amendment only changes the financial mechanism for how the consumers' PAs get paid. While outgoing FIs may subcontract with the Statewide FI, those FIs that do not were required to cease operations by March 31, 2025. See SSL § 365-f(4-a-1)(a); Bassiri Decl. ¶ 112.

The CDPAP Amendment does not modify consumers' eligibility for CDPAP. Bassiri Decl. ¶ 96; Mar. 24, 2025 Press Release. The Statewide FI cannot alter or reduce consumers' CDPAP services. See id. § 365-f(4-a)(a)(iii). It will provide the same payroll and other administrative services to PAs as was provided by the outgoing FIs. SSL § 365-f(4-a)(a)(ii).

**D. Rationale for the CDPAP Amendment**

Previously, there were more than 600 outgoing FIs in the State. Bassiri Decl. ¶ 27. But many states have just one FI and most states have fewer than three. Id. ¶ 28. With more FIs than the rest of the country combined, New York's administrative rate is twice the average rate paid by other state Medicaid agencies with similar programs and costs of living. Id. ¶ 32.

The rationale for a Statewide FI is two-fold: administrative cost savings and improved efficiency. Id. ¶ 37. CDPAP comprises more than $9 billion of the NYS Medicaid Program budget. Id. ¶ 38. But previously, a substantial portion of CDPAP funding was not used to fund PA services, but rather was funneled to the more than 600 FIs to cover their administrative costs. Id. ¶ 32. Using a Statewide FI is anticipated to save about $500 million annually. Id. ¶ 40; Ex. 1 to the Bassiri Decl. This cost-savings will support the long-term viability of CDPAP. See Bassiri Decl. ¶ 124. Without a Statewide FI, substantive cuts to CDPAP will be required. Id. ¶¶ 126-27.

Furthermore, CDPAP efficiency will improve with a Statewide FI. See Bassiri Decl. ¶ 29. The volume of FIs hinders DOH's monitoring and program integrity efforts. Id. For example, false and misleading marketing and solicitation of consumers to CDPAP remains problematic, as well as the significant disparities among hundreds of outgoing FIs. Id. ¶ 30. As such, the use of a

single Statewide FI that contracts with the State allows DOH to track Medicaid payments and analyze data for patterns that may be indicative of fraud, waste, and abuse, while also allowing the Office of Medicaid Inspector General to conduct auditing and oversight more efficiently. Id. ¶ 43.

### E. The Transition to the Statewide FI

As part of the transition to the Statewide FI, and as a consumer direct program, consumers and PAs must register with PPL. 18 NYCRR § 505.28(c)(4), (6). Consumers must register with PPL and sign a statutorily mandated memorandum of understanding ("MOU").[3] SSL § 365-f(4-1)(a)(ii)(I). DOH cannot sign the MOU on the consumer's behalf, nor can DOH automatically enroll consumers without a signed MOU. Bassiri Decl. ¶ 102.

As a result, DOH has made significant efforts to notify the approximately 280,000 consumers and their PAs about the transition to a Statewide FI and help get them registered with PPL. In the first week of January 2025, DOH, through MCOs and LDSSs, began regional distribution of a direct notice to consumers to make them aware of the transition and give them additional information regarding what steps they need to take to register with PPL. Bassiri Decl. ¶ 76. Beginning January 7, 2025, DOH has issued weekly press releases on the transition to the Statewide FI.[4] DOH has been airing public service announcements on television and radio. Id. ¶ 83. On February 4, 2025, DOH published a letter to consumers dispelling misinformation spread by the FI industry and telling consumers how to register with PPL. Id. ¶ 88, Ex. 12 to the Bassiri Decl.

Likewise, since January 6, 2025, PPL has undertaken a multi-faceted and multi-lingual

---

[3] The MOU is available online in multiple languages. The English version is available at: https://pplfirst.com/wp-content/uploads/2025/02/MOU-V5-FINAL.pdf.
[4] Press Releases are available at: https://www.health.ny.gov/press/releases/2025/.

outreach campaign, including publication of a website with access to 130 language translations, streaming television ads, sending over 200,000 direct emails to consumers, and publishing print ads in 24 publications in 12 languages. PPL Decl. ¶¶ 18-19.

Beginning in December 2024, DOH has also issued guidance to MCOs regarding the transition, including guidance on contracting with the Statewide FI, communicating with consumers, and providing certain data to DOH. Bassiri Decl. ¶ 70; Ex. 7 to the Bassiri Decl.; Ex. 15 to the Summer Decl. DOH issued a notice to MCOs that they should contract with the Statewide FI, and issued transition guidance to FIs. Bassiri Decl. ¶ 75; Ex. 6 to the Bassiri Decl.

Commencing March 18, 2025, MCO has been calling consumers that have not enrolled with PPL daily. Bassiri Decl. ¶ 80.

Consumers were able to register with PPL as early as January 2025. See PPL Decl. ¶ 14. As of March 31, 2025, the efforts of DOH, MCOs, LDSSs, and PPL have led to 195,000 consumers having started or completed registration with PPL.[5] Moreover, over 220,000 PAs have started or completed registration with PPL. Id. Additionally, a group of approximately 60,000 consumers have chosen not to transfer to PPL to continue to receive CDPAP, and instead have transitioned to personal care services ("PCS"), another Medicaid home-based service program. See 18 NYCRR § 505.14.

DOH is aware there are consumers and PAs who had not yet transitioned to PPL or PCS by April 1, 2025. As a result, DOH created a late registration window, permitting consumers and PAs an additional 30 days to register with PPL by April 30, 2025 such that the PAs will receive

---

[5] See New York State Department of Health Provides Update on Latest Progress on CDPAP Transition to PPL Ahead of April 1 Deadline, Department of Health (Mar. 31, 2025), https://www.health.ny.gov/press/releases/2025/2025-03-31_cdpap_update.htm ("Mar. 31, 2025 Press Release").

payment from PPL for all days worked in April. See Mar. 31, 2025 Press Release; Ex. 16 to the Summer Decl. As long as consumers and their PAs register with PPL over the next month, PAs will receive retroactive payments for hours worked. Id. Certainly, as would be the case for a consumer with a new authorization for CDPAP, any consumer who registers with PPL after April 30, 2025 would receive CDPAP services paid by PPL going forward. See Ex. 15.

## STANDARD OF REVIEW

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "unavailable except in extraordinary circumstances." Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005). Where "a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Friends of E. Hampton Airport, Inc. v. Town of E. Hampton, 841 F.3d 133, 143 (2d Cir. 2016).

## ARGUMENT

The Court should deny the PI Motion because Plaintiffs fail to meet the necessary standard for such extraordinary and drastic relief. First, Plaintiffs cannot show irreparable harm because there is no concrete injury. The late registration window permits consumers and PAs to continue enrolling with PPL, continue receiving services, and continue PAs' payment. Second, the balancing of equities lies against the granting of a preliminary injunction. The creation of a Statewide FI gave the authority for DOH to contract with PPL and for PPL to be paid. In contrast, outgoing FI contracts with MCOs and LDSSs have been canceled and DOH, as a non-party to those contracts, cannot force new contracts to be created. If an FI is not contracted with an MCO or LDSS, the FI cannot pay PAs. Third, Plaintiffs are unlikely to succeed on the merits

11

as there is no violation of their due process rights because no service is being altered, reduced, or eliminated, and no property interest is being taken away. Plaintiffs also lack Article III and organizational standing as they cannot show an injury-in-fact. Finally, no court that has heard an application for a preliminary injunction enjoining the enforcement of the CDPAP Amendment has granted the injunction. This Court should similarly decline to issue a preliminary injunction for the same reasons.

## I.    PLAINTIFFS HAVE NOT SHOWN AN IRREPARABLE HARM

Plaintiffs have not established irreparable harm. Irreparable harm must be "actual and imminent," not remote or speculative. Tom Doherty Assocs., Inc. v. Saben Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995). Plaintiffs' allegations are speculative.

Plaintiffs allege that consumers "will lose their CDPAP benefits" if they or their PAs are not fully registered by April 1. PI Motion at 24. Plaintiffs further allege that their PAs will not be paid. Id. This allegation is incorrect. Under the CDPAP Amendment, eligibility for CDPAP will not change. New Yorkers currently enrolled in CDPAP will keep their services. See Mar. 24, 2025 Press Release. The CDPAP Amendment only switches the entities that will perform administrative tasks for consumers; it does not require any change to who performs their personal assistance services, nor does it change the level of care and benefits consumers receive from CDPAP. See generally SSL § 365-f. Consumers and PAs will now simply work with the Statewide FI to handle payroll and compliance with record-keeping requirements, rather than contend with the outgoing FIs.

Moreover, under the late registration window, regardless of whether a consumer or PA has started to transition to PPL, consumers will continue to receive care and PAs who have not yet completed the transition can retroactively receive payments for hours worked in April upon

12

completion of their registration with PPL. <u>See</u> Mar. 24, 2025 Press Release. Plaintiffs' benefits are continuing; their PAs will continue to be paid. Consumers and PAs just need to complete an administrative task, over the next 28 days, so that PPL can pay the PAs.

To be clear—and while it gets at speculative harm—in the event of an emergency, MCOs and LDSSs are required to provide immediate services for consumers. Bassiri Decl. ¶ 100; 18 NYCRR § 505.28(l). This safety net provision ensures that if there is a lapse in services from a consumer's PA, the consumer still receives the assistance necessary. Bassiri Decl. ¶ 100. And if for some unknown reason the MCO or LDSS does not provide emergency services—again, a speculative harm that would result from the actions of non-party actors—the consumer would at that time have a fair hearing right. <u>Id.</u>; SSL §§ 366-a(12), 364-j(31), 365-a(2)(e)(iii); 18 NYCRR 505.28(l).

Finally, Plaintiffs' "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." <u>Wreal, LLC v. Amazon.com, Inc.</u>, 840 F.3d 1244, 1248 (11th Cir. 2016) (collecting cases from the Second Circuit, other circuits, and this Court); <u>see also</u> <u>Shady v. Tyson</u>, 5 F. Supp. 2d 102, 109 (E.D.N.Y. 1998) (quoting <u>Costello v. McEnery</u>, 767 F. Supp 72, 78 (S.D.N.Y. 1991)). The CDPAP Amendment was enacted on April 20, 2024. Bassiri Decl. ¶ 36. DOH began informing people of the need to transition to PPL in January 2025.[6] Plaintiffs did not move for preliminary injunctive relief until March 27, 2025, almost a full year after enactment and only four days before the CDPAP Amendment went into effect. <u>See</u> PI Motion. Plaintiffs' delay in seeking relief should "bolster

---

[6] <u>See</u> <u>Governor Hochul Announces New CDPAP Partnership with Independent Living Centers as Part of Plan to Strengthen Home Care Services for New Yorkers</u>, Governor Kathy Hochul (Jan. 7, 2025), https://www.governor.ny.gov/news/governor-hochul-announces-new-cdpap-partnership-independent-living-centers-part-plan.

[the] conclusion that there has been an insufficient showing of irreparable harm to justify the issuance of a preliminary injunction."[7] Costello, 767 F. Supp. at 75; see also Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995) (four-month delay supported denial of PI); Hirschfeld v. Bd. of Elections in City of N.Y., 984 F.2d 35, 39 (2d Cir. 1993) (noting irreparability was a product of the movant's own delay, which was "inequitable to the other party and to the courts as well"); ECF No. 39-1 at 20:8 ("THE COURT: . . . Why you didn't do this sooner, I'm not so clear as to why you waited until the eleventh minute.").

## II.    THE BALANCING OF THE EQUITIES FAVORS DEFENDANT

The equities support denying the preliminary injunction. Because the Statewide FI's contract is a result of the CDPAP Amendment, staying the CDPAP Amendment would stay the Statewide FI's contract and prevents PPL from paying PAs. Additionally, the outgoing FIs' contracts have been canceled and DOH cannot force MCOs and LDSSs to enter into new contracts. Finally, the CDPAP Amendment will save the State millions of dollars.

### A.    Staying the CDPAP Amendment Prevents the Statewide FI From Paying PAs Who Have Registered

The contract between PPL and DOH is enabled by the CDPAP Amendment. Prior to the CDPAP Amendment, FIs contracted with MCOs and LDSSs, not DOH. Bassiri Decl. ¶ 14. Under the CDPAP Amendment, the Statewide FI "has a contract for providing such services with the department of health." SSL § 365-f(4-a)(a)(i). It is under this authority that PPL contracted with DOH and can be paid. A stay of the CDPAP Amendment and thus PPL's contract would cause disastrous effects. As the Statewide FI, PPL is responsible for paying PAs

---

[7] Plaintiffs waited to file their PI Motion until the final stage of the implementation of the CDPAP Amendment, after various actions were taken to facilitate the transition. Indeed, as of the time of filing, 220,000 consumers had already taken action in line with the transition. Mar. 24, 2025 Press Release.

and ensuring PAs receive their employment benefits. SSL § 365-f(4-a)(a)(ii). As of March 31,

2025, approximately 195,000 consumers and 220,000 PAs have started or completed the

registration process with PPL. Mar. 31, 2025 Press Release. By contrast, only about 20,000

consumers have not taken any action to register with PPL. Bassiri Decl. n. 8. Staying the CDPAP

Amendment, and the PPL contract in turn, prohibits PPL from paying hundreds of thousands of

PAs.

### B. The Contracts for the Outgoing FIs Have Been Canceled

Significantly, it has long been anticipated that the contracts between the outgoing FIs and

the MCOs and LDSSs would be canceled, with outgoing FIs instructed to send notices to

affected consumers at least 45 days before discontinuing services at the end of March 2025. SSL

§ 365-f(4-d)(a)(i). And these contracts have been canceled: the FI-MCO contracts terminated

pursuant to their own terms effective April 1, 2025, and the remaining contracts were terminated

by LDSSs effective March 31, 2025. See Ex.14.

For outgoing FIs to continue paying and providing employment benefits to PAs, they

would need to negotiate new contracts with MCOs and LDSSs. This can be a time-intensive

process and take weeks to complete. See Bassiri Decl. ¶¶ 22-23. Moreover, as a non-party to the

contract, DOH has no control over these contracts and cannot force either the outgoing FIs or the

MCOs and LDSSs to enter into such a contract. Id. Additionally, over 42 of the outgoing FIs

have already become subcontractors of PPL. See SSL § 365-f(4-a)(ii-b); Bassiri Decl. ¶ 91.

Consequently, whether FIs will be able to continue functioning and provide any payments to PAs

is unknown and outside the control of any parties to this lawsuit.

In addition, in anticipation of the Statewide FI, as of April 1, 2025 MCOs have changed

their internal payment systems to reflect payment to PPL. Bassiri Decl. ¶ 112. If PPL is stayed

from being the Statewide FI, these systems will need to be entirely reprogrammed so payment

15

can be sent to the outgoing FIs. Id. ¶ 113. This is a time-intensive process that can take weeks and delay payment to PAs. Id.

In addition, the consumer authorizations would likewise need to be reprogrammed. MCOs need to authorize an FI for each consumer. Id. ¶ 114. In anticipation of PPL as the Statewide FI, MCOs have been changing the consumer authorizations from the outgoing FIs to PPL. Id. If a preliminary injunction is issued, MCOs would need to manually change each consumer's authorization. See id. This will take extensive manpower and time to complete and will delay PAs' payment.

**C.  The CDPAP Amendment Will Save the State Hundreds of Millions of Dollars**

CDPAP comprises around $9 billion of the Medicaid budget. See Bassiri Decl.¶ 38. However, a substantial portion of CDPAP funding is not going to actual home care services, but instead is funneled to outgoing FIs to cover administrative costs. Id. ¶ 39. The State estimates that transitioning to a single Statewide FI will reduce administrative costs by $500 million annually, without impacting funding for delivering actual personal care services. Id. ¶ 40; Ex. 1. Extrapolating that amount forward, the transition will free up billions of dollars to continue to provide medical services to needy beneficiaries. See Ex. 1. Accordingly, an injunction would weigh against the public interest of maintaining quality health services to Medicaid recipients.

Thus, the Court should deny the preliminary injunction. The preferred outcome of this litigation for all interested parties should be to encourage and facilitate the prompt registration of all consumers and PAs such that the CDPAP transition be completed as soon as possible. Plaintiffs' requested preliminary injunction is too broad not only in length of time, ECF No. 39-1 at 24:8-9 ("THE COURT: . . . I think you suggested until September. That seems a little bit long to me"), but also in the categories of individuals that would be affected, i.e., those consumers

16

who have registered with PPL but not completed all tasks required such that their PAs would not be able to be paid by the outgoing FI.

## III.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

Plaintiffs cannot succeed in their due process claim because there is no reduction in their Medicaid benefits and, thus, no right to an administrative fair hearing. Additionally, Plaintiffs lack standing to bring such claims and, in any event, their claims are moot.

### A.  Plaintiffs Have Not Alleged a Due Process Violation Because the CDPAP Amendment Does Not Reduce or Alter Their Medicaid Benefits

Defendant is likely to prevail in this lawsuit because Plaintiffs allege no viable claim. Plaintiffs plead a due process violation, arguing that they are entitled to notice and an administrative fair hearing to "challenge any proposed termination or suspension" of CDPAP services. Compl. ¶ 185. Plaintiffs' claim fails because they misunderstand the CDPAP Amendment.

To state a due process claim, a plaintiff must plausibly allege that "'(1) state action (2) deprived him or her of liberty or property (3) without due process of law.'" Bellin v. Zucker, 6 F.4th 463, 474 (2d Cir. 2021) (citing Barrows v. Burwell, 777 F.3d 106, 113 (2d Cir. 2015)). "A constitutionally protected property interest exists where 'one has a legitimate claim of entitlement to the benefit,'" and is determined by looking "'to the statutes and regulations governing distribution of benefits' and determine whether 'those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome.'" Bellin, 6 F.4th at 476 (quoting Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005)). Here, Defendant does not dispute that Plaintiffs, once they were deemed eligible, have a property interest in receiving CDPAP services through Medicaid.

But a fair hearing is only required when a consumer's benefits are suspended, terminated,

17

or reduced. 42 C.F.R. §§ 431.200(b), 431.206(c), 431.220(a), 431.201; 18 NYCRR § 358-3.1(b)(3). By contrast, a fair hearing is not required when consumers fail to take an administrative step they are required to take. See 42 C.F.R. § 431.206(c) (not including a change in FI as a basis for a fair hearing).

In this case, the CDPAP Amendment does not deprive Plaintiffs of any protected property interest because it does not alter, reduce, or eliminate Plaintiffs' CDPAP services. See Mar. 24, 2025 Press Release; Bassiri Decl. ¶ 98. Plaintiffs fail to allege how a transition to a Statewide FI, that will provide the same payroll and other administrative services to their PAs that is being provided by the 600-plus outgoing FIs, will reduce their CDPAP services such that their due process rights are violated. The Statewide FI, as with the outgoing FIs, has no power to affect a consumer's eligibility. The CDPAP Amendment is simply a matter of administration of payment of the PA.

Even if Plaintiffs were offered a fair hearing, no relief could be granted. All that can be decided at a Fair Hearing is whether DOH's actions to suspend, terminate, or reduce the consumer's services were correct. See 42 C.F.R. §§ 431.241(a), 431.220(a)(1); 18 NYCRR § 358-5.9(a). However, since the CDPAP Amendment does not change a consumer's eligibility for CDPAP or services provided, there would be no issue to decide. See Mar. 24, 2025 Press Release; see also SSL § 365-f(4-d). Indeed, DOH has not taken any action against consumers; the CDPAP Amendment merely changes an administrative function of how PAs will be paid. See SSL § 365-f(4-a)(a)(ii) (listing role of the FI). If anything, the only possible remedy for an administrative law judge to issue would be to direct the consumer to transition to the Statewide FI. Therefore, Plaintiffs do not have a procedural due process right to a fair hearing.

18

B.  **Plaintiffs Are Not Entitled to a Fair Hearing Notice, but Nevertheless Have Received Ample Notification to Transition to the Statewide FI**

Without a right to a fair hearing, Plaintiffs have no right to any formal fair hearing notice. See 42 C.F.R. § 431.210; 18 NYCRR § 358-5.1. Yet, to ensure a smooth transition, as set forth in the Bassiri and PPL Declarations, DOH, MCOs, LDSSs, and PPL have made extensive outreach efforts, including multiple direct communications in writing and by phone, to consumers and PAs about the need to transition to the Statewide FI as required by the CDPAP Amendment. In January 2025, DOH began regional distribution of a first direct notice to consumers. Bassiri Decl. ¶ 76. Commencing January 7, 2025, DOH has issued weekly press releases informing consumers and PAs of the need to register with PPL and the steps to take to complete registration. Id. ¶ 82. Starting January 8, 2025, DOH issued a public service announcement to be run on television and radio.[8] Id. ¶ 82. On February 4, 2025, DOH issued a second direct notice to consumers. Id. ¶ 88; Ex. 12.

DOH has also worked with MCOs and LDSSs to assist in the FI transition. On December 6, 2024, DOH issued a memorandum directing outgoing FIs to provide information to MCOs by January 15, 2025. Ex. 6. Thereafter, the MCO was directed to provide that information to DOH by January 22, 2025. Id. Unfortunately, numerous outgoing FIs have not cooperated with this memorandum and have, instead, filed lawsuits against DOH. Bassiri Decl. ¶ 69. Undeterred, DOH issued a memorandum on February 26, 2025 directing MCOs to ensure that each consumer receives outreach from their care manager to assist in the transition to PPL. Ex. 15.

Similarly, PPL has engaged in extensive public outreach, including emails, phone calls, text messages, radio and print publication ads, social media ads, streaming television

---

[8] The public service announcement is available on DOH's website at: https://www.health.ny.gov/health_care/medicaid/program/longterm/cdpap/

commercials, and in-person and virtual seminars. PPL Decl. ¶ 18. In addition to their call center, PPL continues to hold virtual and in-person registration events. Id. ¶ 15. PPL has recorded its virtual sessions and made them available for viewing on its website in multiple languages. CDPAP Resources & Events, PPL, available at https://pplfirst.com/cdpap-resources-events/ (last visited Apr. 1, 2025). PPL has also had flyers delivered to senior centers, community centers, and physician offices with information about the transition to PPL and how to contact PPL. PPL Decl. ¶ 18(i). Collectively, DOH, MCOs, LDSSs, and PPL have made extensive efforts to notify consumers and their PAs of the transition to a Statewide FI. The efforts have sufficiently notified consumers of the requirement to register with PPL.

## C. Plaintiffs Lack Article III Standing Because There is No Injury-in-Fact

This lawsuit also fails on the merits because Plaintiffs lack standing. Federal courts can only decide "cases" and "controversies." U.S. Const., art. III, 2; Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012). Standing is "the threshold question in every federal case." Warth v. Seldin, 422 U.S. 490, 498 (1975). "In order to ensure that this 'bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008). Article III standing requires three elements: "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged action of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by requested relief." Id. at 106-07.

To satisfy the first element, the injury must "affect[] the plaintiff in a personal or individual way." Gill v. Whitford, 585 U.S. 48, 65 (2018) (explaining that the injury-in-fact

requirement is "foremost among" the factors a plaintiff in federal court must establish to satisfy Article III standing); see also W.R. Huff, 549 F.3d at 107 ("[T]he injury-in-fact requirement means that a plaintiff must have personally suffered an injury"). Moreover, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972). "To establish standing to obtain prospective relief, a plaintiff must show a likelihood that he will be injured in the future." Carver v. City of N.Y., 621 F.3d 221, 228 (2d Cir. 2010). "[A]llegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). Rather, "there must be a substantial risk that the future injury will occur, or the threatened injury must be certainly impending." Nicholas v. Trump, 433 F. Supp. 3d 581, 587 (S.D.N.Y. 2020); see also Lacewell v. Off. of the Comptroller of the Currency, 999 F.3d 130, 141-42 (2d Cir. 2021).

Plaintiffs cannot show an injury-in-fact. See supra Point I. Specifically, Plaintiffs' CDPAP services are not ending. See Mar. 24, 2025 Press Release; see also SSL § 365-f(4-d). Additionally, under the late registration window, as long as consumers and PAs register with PPL by April 30, 2025, PAs will receive retroactive payment. Mar. 25, 2025 Press Release. As such, Plaintiffs will continue being eligible for and receiving their CDPAP services, and they have failed to plead an injury-in-fact.

The Organizational Plaintiffs also fail to establish standing. An organization bringing claims on behalf of its members, as RCIL and BCID purport to do here, see Compl. ¶¶ 44, 55, must show, inter alia, that its members "would otherwise have standing to sue in their own right." Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 181 (2000); see also Faculty v. N.Y. Univ., 11 F.4th 68, 75 (2d Cir. 2021). At the preliminary injunction stage, an

organizational plaintiff must identify at least one member who has suffered the requisite harm. Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009); cf. Do No Harm v. Pfizer, Inc., 126 F.4th 109, 119 (2d Cir. 2025) (organizational plaintiff seeking preliminary injunction required to "set forth by affidavit or other evidence specific facts" demonstrating standing).

Here, RCIL and BCID fail to meet their evidentiary burden. RCIL's declarant identifies a single member receiving CDPAP services who successfully registered with PPL. ECF No. 11 ¶ 22. BCID's declarant identifies one individual Plaintiff as a constituent, as well as an employee who receives CDPAP services and is registered with PPL. ECF No. 12 ¶¶ 6, 26. The Organizational Plaintiffs provide no information specifying how or why any of their identified members and employees will be unable to continue their CDPAP benefits, apart from speculation that their PAs will be unable to register with PPL by the late registration deadline of April 30, 2025. ECF Nos. 11 ¶ 23; 12 ¶ 29. Because RCIL and BCID have failed "to show that [their] members suffered the requisite harm," Faculty, 11 F.4th at 76, they lack standing to seek a preliminary injunction.[9]

### D.  To the Extent Plaintiffs Seek Relief for Their PAs, They Lack Standing to Do So

Plaintiffs cannot bring claims that the PAs could have brought themselves. The doctrine of third-party standing "normally bars litigants from asserting the rights or legal interests of others to obtain relief from injury to themselves." Keepers, Inc. v. City of Milford, 807 F.3d 24, 40-41 (2d Cir. 2015). Plaintiffs' claimed harm rests on an assertion that PAs will not show up to

---

[9] To the extent the Organizational Plaintiffs assert standing to assert claims on their own behalf, they also fall short of meeting their burden. They appear to rely on a "diversion of resources" theory of organizational standing. ECF Nos. 11 ¶¶ 33-35; 12 ¶¶ 32-35. But expenditure of resources alone is insufficient to confer standing; an organizational plaintiff must demonstrate that the challenged conduct "directly affect[s] and interfere[s] with [the organization's] core business activities." Food & Drug Admin. v. Alliance for Hippocratic Medicine, 602 U.S. 367, 395 (2024).

work without immediate payment. But Plaintiffs will not lose their eligibility or CDPAP benefits, which are required to be maintained during the transfer to the Statewide FI. See Mar. 24, 2025 Press Release; see also SSL § 365-f(4-d). Rather, they claim that their PAs will fail to register with PPL, and thus fearing lack of payment will fail to provide care. See Compl. ¶¶ 148, 157. As such, Plaintiffs seek primarily to assert the interests of their PAs; their own interests are only collaterally affected. See Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 417 (2d Cir. 2015) (requiring a plaintiff to have a "genuinely personal stake" and not merely "benefit 'collaterally' from a resolution favorable . . . or suffer from an unfavorable one").

Plaintiffs cannot establish the required elements to overcome the bar on third-party standing: "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." Keepers, 807 F.3d at 41. On the barrier prong, a putative class of PAs recently brought similar claims in New York state court. See Matter of Eckert v. McDonald, Index No. 94315 (Sup. Ct. Cattaraugus Cnty. Mar. 17, 2025), attached as Ex. 18 to the Summer Decl. Absent an exception to the bar on third-party standing, Plaintiffs may not sue to vindicate financial and employment interests which properly belong to their PAs.

### E. Named Plaintiffs Have Transitioned to PPL, Making Their Claims Moot

Courts are only able to adjudicate "actual, ongoing cases or controversies." Deakins v. Monaghan, 484 U.S. 193, 199 (1988). "It is not enough that a controversy existed at the time the complaint was filed." Id. If a court's decision "will neither presently affect the parties' rights nor have a more-than-speculative change of affecting them in the future," a case should be dismissed as moot. Delaware Riverkeeper Network v. N.Y. State Dep't of Envtl. Conservation, 788 Fed. Appx. 65 (2d Cir. 2019) (citing Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 920 F.3d 1, 12 (D.C. Cir. 2019)).

23

In this case, the Individual Plaintiffs are registered with PPL, making any claims as to them moot. Plaintiff Liza Engesser, and two of her PAs, are registered with PPL. PPL Decl. ¶ 29. Plaintiff Marisol Getchius is also registered with PPL. Id. ¶ 30. Plaintiff Geetanjali Seepersaud was registered after the PPL escalation team reached out to her directly to complete the transition. Id. ¶ 31. Finally, plaintiff Maria Jaime[10] is also registered with PPL. Id. ¶ 32. As the Individual Plaintiffs have successfully transitioned to PPL, there is no ongoing controversy and the case is unlikely to succeed on the merits.

## IV.    OTHER FEDERAL AND STATE COURTS HAVE DENIED SIMILAR MOTIONS TO ENJOIN THE CDPAP AMENDMENT'S IMPLEMENTATION

As set forth in further detail in the Summer Declaration, numerous state and federal courts—including, most recently, the U.S. Supreme Court—have denied preliminary injunction motions brought both by consumers and FIs challenging the CDPAP Amendment on similar grounds as Plaintiffs challenge it here. This Court also should deny the PI Motion for the same reasons. See Summer Decl. at ¶¶ 5-15; Principle Homecare, 2025 WL 964774; see also Principle Homecare, LLC v. McDonald, No. 25-466, 2025 WL 946292 (2d Cir. Mar. 25, 2025) (denying an injunction pending appeal); Principle Homecare, LLC v. McDonald, No. 24-CV-07071, 2025 WL 622876, at *17 (S.D.N.Y. Feb. 26, 2025) (denying a preliminary injunction); Mot. Order, Jeannot v. McDonald, No. 25-314 (2d Cir. Mar. 25, 2025), ECF No. 21 (denying plaintiffs' motion for an injunction pending an appeal); Jeannot v. N.Y. State, No. 24-CV-05896, 2025 WL 80689 at *15 (E.D.N.Y. Jan. 13, 2025); Glidedown, LLC v. N.Y. State Dep't of Health, No. 24-CV-06731, 2025 WL 669510, at *1 (W.D.N.Y. Mar. 3, 2025). Defendant respectfully requests that this Court, like its sister court and state counterparts, deny Plaintiffs' motion for a

---

[10] Neither DOH nor PPL can confirm the status of Y.P.S.'s and C.P.'s registration without their full names. But see ECF No. 8 at ¶ 25 (confirming Y.P.S.'s paperwork is complete).

preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' PI Motion should be denied in full, together with

such other relief as the Court may award.


Dated:  New York, New York
        April 2, 2025

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        *Attorney for Defendant*

                            By:    /s/  Rachel Summer_____
                                        Rachel Summer
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, New York 10005
                                        Tel: (212) 416-8663
                                        Rachel.Summer@ag.ny.gov

## WORD COUNT CERTIFICATION

The undersigned hereby certifies that the Memorandum of Law in Opposition to Plaintiffs' Preliminary Injunction Motion a complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and does not exceed 8,750 words.

Dated: New York, New York
      April 2, 2025

                                    LETITIA JAMES
                                    Attorney General
                                    State of New York
                                    *Attorney for Defendant*

                By:    /s/ Rachel Summer_____
                                    Rachel Summer
                                    Assistant Attorney General