UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LIZA ENGESSER, MARISOL GETCHIUS
GEETANJALI SEEPERSAUD by her Next Friend
SAVITRI SEEPERSAUD, and MARIA JAIMIE on
Her own behalf and as Next Friend to Y.P.S. and
C.P., individually and on behalf of all persons
Similarly situated; BROOKLYN CENTER FOR
INDEPENDENCE OF THE DISABLED, and
REGIONAL CENTER FOR INDEPENDENT
LIVING,

Dkt. No. 1:25-cv-01689

**DECLARATION OF
MARIA PERRIN**

Plaintiffs,

-against-

JAMES V. MCDONALD in his capacity as
the Commissioner of the New York State
Department of Health,

Defendant.

---

1. I am the President of Public Partnership, LLC ("PPL"). I submit this Declaration in opposition of Plaintiffs' complaint, temporary restraining order and request for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

2. The purpose of this Declaration is to provide the Court with relevant information and facts related to the New York State Consumer Directed Personal Assistance Program ("CDPAP") transition to a statewide fiscal intermediary ("Statewide FI").

3. CDPAP is a "self-directed" Medicaid home care program. This means that the Medicaid agency allows Medicaid members to recruit, select, and employ their own domestic caregivers. Over 250,000 consumers receive services in CDPAP.

1

4. In most state self-directed programs, the state Medicaid agency contracts with a "fiscal intermediary" (FI) to process payroll for the self-directing Medicaid members. Most other states with a self-directed program contract directly with only one FI. New York has been an outlier in this arena, allowing over 600 unlicensed and unmonitored entities to perform FI services to its self-directing Medicaid members.

**A.** **<u>PPL As the Statewide Fiscal Intermediary</u>**

5. In April 2024, the New York state legislature enacted Part HH of Chapter 57 of the New York Session Laws of 2024 (the "CDPAP Amendment").

6. One major purpose of the CDPAP Amendment was to eliminate the over 600 FIs working in CDPAP, and to replace them with a single statewide FI. The CDPAP Amendment specifically states that beginning on April 1, 2025, the only entity that can pay caregivers working in the CDPAP program is the statewide FI.

7. Having a single statewide FI would increase program efficiency, reduce administrative costs, and eliminate fraud, waste and abuse. It would also bring the CDPAP program in line with other self-direction programs in the nation, most of which already use a single statewide FI.

8. Notably, however, the CDPAP amendment would have absolutely no negative impact on the consumers' benefits and services under CDPAP. In fact, by reducing administrative costs in the program, the CDPAP amendment would safeguard those services for years to come.

9. As directed by the CDPAP Amendment, DOH issued a competitive procurement for a single statewide FI in June 2024.

10. As the largest and most experienced FI in the nation, it is not surprising that PPL was the highest scoring bidder in the procurement. PPL currently provides services for fifty (50) different programs across approximately twenty (20) different states and jurisdictions.

11. DOH notified PPL of its contract award on September 27, 2024.

**B.   <u>Backlash from the Outgoing FIs.</u>**

12. Since October 1, 2024, the date that PPL's award was publicly announced, date, the 600 outgoing FIs and their allies have engaged in a relentless campaign to sabotage the transition to the Statewide FI.

   a. They have maligned PPL in the press, calling PPL "disastrous," and alleging a "failing track record," "labor disputes" "poor oversight" and "repeated failures." (none of which are true).

   b. They have encouraged CDPAP participants not to register with PPL.

   c. They have characterized the competitive procurement as a "sham" and accuse PPL of being a "handpicked" "monopolist."

   d. They have spread lies and misinformation, including stating that CDPAP participants would lose access to their services and would be forced to live in institutions.

   e. They have organized protests and publicity stunts across the state, including an airplane circling downtown Albany towing a banner which read "SOS: Save CDPAP Stop PPL" and a digital display truck driving through Albany streets with a sign stating: "Save my life. Stop PPL."

   f. They have filed over 20 legal actions against DOH and PPL in both state and federal courts, including numerous emergency motions for injunctions and restraining orders, the vast majority of which have been resoundingly unsuccessful.

13. The lies and misinformation campaign became so problematic that DOH produced a television advertisement titled "The Truth About the CDPAP Transition" (available here: https://www.health.ny.gov/health_care/medicaid/program/longterm/cdpap/ ) and issued 18 "cease and

desist" letters to the worst offending FIs on March 11, 2025 (available here:

https://www.health.ny.gov/press/releases/2025/2025-03-11_cdpap.htm)

C.     **PPL's Efforts to Ensure a Successful Transition**

14.    On January 6, 2025, PPL officially began its efforts to onboard CDPAP consumers and their associated PAs, so that as of April 1, 2025, they would all be transitioned to PPL and "payroll ready."

15.    As recognized by the Supreme Court, New York County in the action of *Freedom Care v. DOH, et al.* (Index No. 161036/2024, Dkt.No.160), PPL "has invested an enormous amount of time and resources into meeting the deadline for operation as the sole Statewide FI…"

16.    PPL has offered CDPAP consumers and PAs multiple different options for registration.

   a. Both consumers and PAs can complete the registration process on their own without assistance, with the consumer starting at PPL's website, www.pplfirst.com/cdpap.com

   b. Consumers and PAs who need assistance can call PPL's support center at 1-833-247-5346 or TTY: 1-833-204-9042 and a PPL team member will help them complete the process.

   c. Consumers and PAs can work with an approved CDPAP facilitator who can guide them through the process.  PPL has strategically selected CDPAP facilitators that are community-based organizations located throughout New York State that provide assistance with the transition with ongoing customer service and EVV support.

   d. Our facilitator partners enhance PPL's ability to provide culturally competent and localized support to the many New Yorkers who rely on CDPAP. In addition to the approved list of partners below, PPL is working with additional facilitators to further

expand our capacity and footprint. Partners are approved and readied on a rolling basis. We will post additional facilitators in the coming weeks.

   e. Consumers and PAs can attend any number of virtual or in-person registration sessions for assistance with their registrations.

17. In addition, DOH continues to promote registration and maintains information on the CDPAP transition webpage.

18. PPL has implemented a multi-channel, multi-lingual registration outreach campaign for consumers and their PAs including:

   a. print and digital advertising,

   b. streaming television commercials,

   c. radio ads,

   d. direct email and call campaigns to consumers and PAs,

   e. print ads in 24 locations across 12 languages,

   f. paid social media posts,

   g. geolocation and language based paid advertising,

   h. co-branding with health plans to distribute fliers and emails

   i. events, meetings and flier distribution with community organizations, and senior centers,

   j. virtual and in-person information sessions,

   k. virtual and in-person registration sessions with native speakers available for translation as needed,

19. More specifically, since January 6, 2025, PPL's activities have included:

a. Sending emails about the transition to over 500,000 consumers and over 400,000 PAs,

b. Sending 8000 pieces of physical mail to consumers and PAs without a phone or email address,

c. Hosting community events for over 27,000 participants,

d. Engaging in traditional and digital advertising, including:

- Organic social media impressions (55,185)
- Paid social media impressions, includes English and non-English campaigns (1,924,561)
- Earned media placement estimated reach (63,952,990)
- Print media estimated reach (4,612,107)
- Radio estimated reach (24,084,974)
- Streaming commercial in English & Spanish (735,345)
- PPL YouTube videos views (22,100)
- Influencer videos views (118,607)
- Website traffic to NY CDPAP program page (576,830)

20. Since November 2024, PPL has hosted 10 virtual information sessions, reaching over 3,200 individuals.

21. Since January 28, 2025, PPL has hosted twice weekly virtual registration sessions, increasing to three times weekly in March 2025. These virtual registration sessions have served over 1,500 individuals.

22. PPL has held community events to educate on the CDPAP transition as well as in person enrollments sessions with senior centers, social adult daycares and other community-based organizations.

23. Starting in January 2025 PPL began hosting in-person registration sessions across the state which have thus far served over 5500 individuals.

24. PPL also stood up an enormous call center and enrollment operation. PPL's call center currently employs 1924 team members. PPL also currently has a contingent of 616 workers processing registration paperwork for the CDPAP population, for a total CDPAP registration staff of over 2,500 individuals.

25. PPL's call center has handled the following number of average weekly inbound calls by month:

   a. January 2025: 14,818

   b. February 2025: 78,858

   c. March 2025: 301,993

26. The staggering increase in call volume in March is directly attributable to the efforts of the outgoing FIs, who explicitly instructed their consumers and PAs not to register with PPL, stated that consumers would lose services if they registered, and/or asserted that the CDPAP Amendment would be overturned and therefore registration was not necessary.

**D.** **Current Status of the Transition**

27. As of this writing, 173,000 consumers have completed the registration process with PPL, and 25,000 consumers are in process, for a total of 198,000 consumers.

28. As of this writing, 190,000 PAs have started or completed their registration process. All 190,000 have access to PPL's timekeeping system and will be able to submit their timesheets to PPL for time worked beginning on April 1, 2025.

E. **Current Status of Purported Class Members in This Matter**

29. Liza Engesser and her 2 PAs have completed their registration paperwork. According to PPL's system notes, Ms. Engesser was thankful for the phone call from the PPL representative and indicated that she was "all set".

30. Marisol Getchius's registration is complete. However, her PA has not registered. PPL's system notes show that PPL unsuccessfully reached out to the PA on February 21, February 28, March 8, 2025 and again today. PPL has assigned a PA Support Supervisor to follow up with this PA, and they are scheduled to meet this evening.

31. Geetanjali Seepersuad has been contacted by the PPL escalation team and has completed her registration. Three of her 4 PAs have completed their registrations.

32. Maria Jaime has completed their registration paperwork.

33. Milagros Franco has completed her registration paperwork, ut one of her PAs is missing required documents and her other PA has a "pending" status in the federal e-verify system. The PPL escalation team has reached out to her PAs to assist them with their registration paperwork

34. Susan Stahl has completed all necessary paperwork with PPL, though her health plan has not yet sent a copy of her service authorization to PPL.

F. **Implications of the Temporary Restraining Order**

35. The temporary restraining order issued in this matter has thrown the program into chaos and confusion.

36. Outgoing fiscal intermediaries are contacting their consumers and using the court order as a basis to tell consumers and their PAs not to continue registering with PPL.

37. Certain outgoing fiscal intermediaries are telling consumers they can come back to them even though the consumers have already registered with PPL.

38. This is a problem because PAs can only be paid retroactively for work performed on or after April 1, 2025 if they and their consumer are fully registered by April 30, 2025. If they follow the outgoing fiscal intermediaries' instructions and do not finish registering, there is a chance that they will not meet the deadline.

39. Outgoing fiscal intermediaries are also contacting their PAs and instructing them to continue to submit time to them, rather than to PPL.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2025.

_____
Maria Perrin