UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. AND C.P., individually and on behalf of all persons similarly situated, BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING,<br><br>     Plaintiff,<br><br>   v.<br><br>JAMES V. MCDONALD, as Commissioner of the New York State Department of Health,<br><br>     Defendant. | CASE NO. 1:25-CV-01689-FB-LKE<br><br>Judge Frederic Block<br><br>BRIEF OF CARING PROFESSIONALS, INC., CONSUMER DIRECTED PERSONAL ASSISTANCE ASSOCIATION OF NEW YORK STATE, AND MAXIM OF NEW YORK, LLC AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

| | |
|---|---|
| **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br>Edward Wipper<br>1155 Avenue of the Americas, 26th Floor<br>New York, New York 10036<br>(646) 593-7051<br>ewipper@beneschlaw.com<br>Deana S. Stein<br>127 Public Square, Suite 4900<br>Cleveland, Ohio 44114<br>(216) 363-4500<br>dstein@beneschlaw.com<br>*Attorneys for Caring Professionals, Inc.* | **BOND, SCHOENECK & KING, PLLC**<br>Hermes Fernandez<br>Roger Bearden<br>22 Corporate Woods Blvd., Fifth Floor<br>Albany, New York 12211<br>(518) 533-3209<br>hfernandez@bsk.com<br>rbearden@bsk.com<br>*Attorneys for Consumer Directed Personal Assistance Association of New York State and New York Association on Independent Living* |
| **ARENTFOX SCHIFF, LLP**<br>Michael P. McMahan<br>Shayshari Potter<br>1301 Avenue of the Americas, Floor 42<br>New York, NY 10019<br>(212) 484-3900<br>michael.mcmahan@afslaw.com<br>shayshari.potter@afslaw.com<br>*Attorneys for Maxim of New York LLC* | |

## INTEREST OF *AMICI CURIAE* AND PRELIMINARY STATEMENT

The Consumer Directed Personal Assistance Association of New York State ("CDPAANYS") is the only association in New York State dedicated to the principles of self-direction and support for the Consumer Directed Personal Assistance Program ("CDPAP"). CDPAANYS' members are individuals who are Consumers, that is, recipients of CDPAP services, and CDPAP Fiscal Intermediaries ("FIs") committed to Consumer self-direction. New York Association on Independent Living ("NYAIL"), a not for-profit, non-government membership organization that promotes the independent living and rights of New Yorkers with disabilities, created by, and are composed of, Independent Living Centers (ILCs) throughout New York State. The majority of each ILC's Board members are people with disabilities and CDPAP is central to their mission. As described in further detail below, FIs provide the administrative supports that underpin CDPAP. Caring Professionals, Inc. ("Caring Professionals) and Maxim of New York, LLC ("Maxim"), are two such FIs.

CDPAANYS, NYAIL, Caring Professionals, and Maximum (the "FI Amici") are directly and specifically affected by the temporary restraining order entered by this Court on March 31, 2025, as modified on April 2, 2025 (together, the "TRO") and the pending motion for a preliminary injunction, set for hearing on April 4, 2025.

The TRO made explicitly clear that regardless of their individual circumstances and present registration status…all CDPAP consumers and PAs who received care and payment before April 1, 2025, regardless of their present registration status, shall continue to receive care from their existing PAs, who shall be timely paid for their services." The purpose of this brief is to assist the Court in understanding that the FI Amici are the sole entities capable of supporting Consumers in maintaining access for all those not currently receiving services. Only the FI Amici can assure

that no CDPAP Consumers experience interruption to their care, and to assure continued pay to their existing PAs. It is with this specific interest that FI Amici file this amicus brief.

As explained fully below, FI Amici, as well as all other FIs, who were operational until April 1, 2025 (together, the "Existing FIs") are the only solution to allowing Consumers to continue receiving services and their chosen PAs to continue being timely paid and in compliance with the numerous State and Federal laws that strictly apply to the CDPAP program and many other programs that involve complex interactions between Federal and State, Medicaid, Labor and Wage laws, Workers Compensation, HIPAA and other laws – all of which PPL and the solutions it has proposed do not account for and propose only to violate.

## SUMMARY OF ARGUMENT

New York is in the midst of a transition of CDPAP from a program in which over 600 FIs served the over 280,000 Consumers to one in which a single statewide fiscal intermediary ("SFI")—Public Partnerships LLC ("PPL")—manages CDPAP. As made clear by Plaintiffs in this action, and in their motion papers, a significant number of Consumers and their Personal Assistants are caught in the crosshairs of this transition, by being unable to receive services through PPL as of the April 1, 2025 transition deadline. The end result is that Consumers have been unable to get the care needed, and their PAs are unable to be paid. It is for that reason that this Court correctly entered the TRO, which specifically enjoined the Defendant from "from disallowing other Fiscal Intermediaries from servicing those CDPAP participants who have not yet registered with PPL" (Dkt. No. 37) and requiring that "Defendant must ensure and take whatever action necessary to ensure that all CDPAP consumers and PAs who received care and payment before April 1, 2025, regardless of their present registration status, shall continue to receive care from their existing PAs, who shall be timely paid for their services." (Order, Apr. 2, 2025).

However, because of the transition to PPL, the DOH and the Medicaid-payor agencies that provide Existing FIs with the authorization to provide FI services to Consumers have terminated these requisite authorizations and contracts, effective April 1, 2025. But because tens of thousands of Consumers and PAs have not fully transitioned to PPL—including those who believe they have registered but whose authorizations have not been processed by PPL—those individuals have been left without services as of April 1, 2025.

They are caught in the narrow space in between the Existing FIs, who served them as of March 31, 2025, but who are no longer permitted to do so as of April 1, 2025, and PPL, who is not yet ready to ensure services to CDPAP Consumers and payment to PAs. The solution is quite simple—DOH must work with Medicaid Managed Care Plans (MMCPs) and local Departments of Social Services ("LDSSs") to reissue authorizations for services to Existing FIs and direct those same entities to renew contracts with Existing FIs so that Consumers can receive care and PAs can be paid. This will essentially turn back on what was turned off on April 1 and restore the status quo—as ordered by this Court. The Existing FIs stand ready, willing, and able to assure that this Court's direction that Consumers continue to get services and that their PAs get paid is fully effectuated.

Moreover, the Existing FIs are the only ones who have all of the detailed and intricate systems in place that are necessary to both ensure that the Consumers' existing PAs are paid, ensure that proper records of the Consumers' qualifications to receive services are on the books, ensure proper compliance with CDPAP requirements and to provide the proper support for PAs to continue in their employment with the Consumers.

# ARGUMENT

## A. The Role of FIs in CDPAP

CDPAP is a program available to all New York Medicaid beneficiaries otherwise eligible for home care services. N.Y. Soc. Servs. Law § 365-f(1),(2). FIs are central to the operation of CDPAP and serve two main roles: (1) administrative convenience and (2) Consumer support. *See* 18 NYCRR § 505(i).

In terms of administrative convenience, FIs perform functions that most Consumers could not easily perform. They are able to bill for and receive Medicaid funds to pay the PAs, arrange for Workers' Compensation and Disability coverage, enroll in unemployment insurance for each of their PAs, and perform the employer functions for related claims. *Cf. Id.* § 505.28(i)(1)(i), (j)(1). FIs perform the following on a daily basis:

- Ensure the Consumer is able to direct their own care
- Ensure PA's and Consumers adhere to the 21st Century Cures Act for Electronic Visit Verification
- Conducs spot checks of PA's to ensure services are being performed
- Handle any inbound calls regarding any issues or questions
- Ensure the Consumers have adequate coverage and offer assistants when applicable
- Ensure service authorization hours are followed and uploaded properly
- Process wages and billing
- Establish schedules with the Consumer and PA's
- Offer free trainings for PA's to advance their careers and education.

Affirmation of Julian Hagmann ("Hagman Aff.) ¶ 4.

FIs also guard CDPAP integrity, by ensuring all CDPAP rules are followed. 18 NYCRR § 505.28(i)(1)(vi). Each Consumer is assessed annually,[1] resulting in a determination of whether a Consumer is eligible for CDPAP, and how many hours of PA service the Consumer may receive per week. *Id.* § 505.28(e). FIs ensure that Consumers receive no more than their authorized hours

---

[1] Assessments are performed by Local Departments of Social Services ("LDSS") or Medicaid Managed Care Organizations ("MCO"). 18 NYCRR 505.28(d),(f). Fiscal Intermediaries have no role in the assessment process.

of service. *Id.* § 504.3(e). They also ensure that PAs meet CDPAP standards, including that PAs have annual health assessments—and that those assessments demonstrate fitness for the position (*id.* § 505.28(i)(1)(ii))—that PAs have required health immunities or immunizations (*id.* § 505.28(i)(1)(iii)), that they meet minimum age requirements (*id.* § 504.3(e), 505.28(b)(3)), are eligible to work in the United States, are not barred from the position due to a familial relationship (*id.* § 504.3(e), 505.28(b)(3)), and that they have not been excluded from the Medicaid program (*id.* § 515.5). FIs are responsible for the accuracy of their Medicaid billing (*id.* § 504.3(e)), and must implement an Electronic Visit Verification system in collecting PA time records. NYS Department of Health, Electronic Visit Verification, Frequently Asked Questions, 2.2., available at Electronic Visit Verification (EVV) Resource Library. FIs process each Personal Assistant's wages and benefits, including establishing the wage of each PA; processing all income tax and other required wage withholdings; and comply with worker's compensation, disability and unemployment insurance requirements (*id.* §505.28 (j) (i)).

Finally, FIs support Consumers. Managing one's own home care is not always easy, and FIs assist in conflict resolution with PAs, from the simple disputes needing mediation to dealing with sexual harassment or racial discrimination sometimes arise. Hagmann Aff. ¶ 5. FIs deal with all of this. New York also requires that every employer, even employers with only one employee, provide employees with training against sexual harassment, and FIs make that training available. NY Labor Law 501-g; Hagmann Aff. ¶ 6. New York also requires that PAs have at least twenty-four consecutive hours off each work week or be paid at overtime rates for hours during that period. NY Labor Law 161. The responsibility for that falls on FIs, as well. *Id.* ¶ 7. New York also requires that PAs receive a minimum amount of paid leave each year. Likewise, the responsibility for assuring that occurs falls upon FIs. *Id.* ¶ 9. There are other restrictions on PA hours that FIs must

assure Consumers respect. *Id.* ¶ 10. If a Consumer receives more than sixteen hours of PA in a day, the Consumer must use more than one PA. 18 NYCRR § 505.28(b)(4). If a Consumer is authorized to receive live-in twenty-four-hour care, Consumers must provide a separate space reserved for the PA. *Id.* § 505.28(d)(2)(v). In addition, each PA must receive three one-hour breaks and a five hour uninterrupted break. If those breaks are not received, the rate of payment to the PA is significantly different. FIs must work with Consumers to assure these rules are respected. Hagmann Aff. ¶ 11.

### B. Complicated and Incomplete Transition to PPL

On April 20, 2024, the New York legislature amended the CDPAP enabling statute, which stated that as of April 1, 2025 there could only be one FI for the entire State. *See* N.Y. Soc. Servs. Law § 365-f(4-a-1)(a). On September 30, 2024, Governor Kathy Hochul publicly announced that PPL had been chosen as the single, SFI[2]. As part of that change, the DOH announced that all CDPAP Consumers and their PAs must register with PPL on or by April 1, 2024 to continue receiving services (and payments).[3]

As already explained by Plaintiffs in their motion papers, the process to enroll with PPL is a daunting task requiring multiple steps involving the following:

> (i) the consumer providing information, including the consumer's Medicaid Client Identification Number; (ii) the consumer setting up an e-signature and signing a Memorandum of Understanding; (iii) the consumer receiving a 19-digit PPL Tracking Number and an 8-digit PPL ID to use when logging into the PPL website; (iv) waiting for a registration link from PPL to be delivered to the Personal Assistants' cell phone numbers or email addresses; and (v) the Personal Assistants to use that registration link to download, complete, and e-sign eight required forms

---

[2] Press Release, Governor Hochul Announces Next Steps in plans to Strengthen Home Care Services for New Yorkers (Sept. 30, 2024), https://www.governor.ny.gov/news/governor-hochul-announces-nextsteps-plans-strengthen-homecare-services-new-yorkers (hereinafter "September 30, 2024 Press Release").
[3] Press Release, Governor Hochul Announces New CDPAP Partnership with Independent Living Centers as Part of Plan to Strengthen Home Care Services for New Yorkers (Jan. 7, 2025),
https://www.governor.ny.gov/news/governor-hochul-announces-new-cdpap-partnership-independent-living-centers-part-plan.

and upload proof of identity and employability (although the website does not specify exactly what documents are needed for this proof).

(Dkt. No. 5 at 9.) Moreover, PPL's website is only available in English. (*Id.*) Further, CDPAP Consumers and PAs have reported long wait times, missing registration links, and the inability to reach an appropriate representative to troubleshoot problems. (*Id.* at 9-10.) Further, PPL, as SFI, must ensure that all CDPAP Consumers and PAs are eligible for services and should be facilitating requisite orientations for PAs, which typically happens when a PA switches to a new FI. Hagmann Aff. ¶ 13.

### C. The Numerous Legal Requirements that PPL Has Not Completed But Which the Existing FIs Have Complete To Get Existing FIs Enrolled in the Program and Paid to Care for Consumers

The process for enrolling PAs with PPL is even more daunting, with the following tasks needing to be completed before a PA is eligible to receive payment:

- Provide original photo ID for I-9 completion (i.e. State-issued driver's license, State-issued non-driver's license photo ID, Permanent Resident Card, Employment Authorization Card, U.S. Passport)
- Provide signed, original social security card
- Complete pre-hire physical exam and TB questionnaire, signed by licensed medical professional (and includes any needed medical clearance resulting from the exam)
- Provide proof of vaccinations
- Submit to and provide results of PPD or Quantiferon TB Test:
- Complete EPS Staff check
- Complete direct deposit form (if applicable)
- Complete e-signature package, including a PA/Consumer agreement, live-in guidelines, and a Disqualified Relationship Attestation

Hagmann Aff. ¶ 14. Any Consumer and their PAs that have not met all of these qualifications is not fully enrolled with PPL, is not ready for PPL to begin providing services and, critically, is not eligible for payment. *Id.* ¶ 15.

In addition, the Existing FIs facilitate health insurance and workers' compensation insurance for the PAs, which are necessary and important benefits that are vital to their lives. PPL has also not supplied them with these benefits nor put them in place.

### D. The Results of PPL's Failure to Transition and the Resulting TRO

The end result has been, and will continue to be, that tens of thousands of Consumers have not fully transitioned to PPL and have lost access to CDPAP services. This is particularly because as of April 1, 2025, FIs' contracts with their respective MCOs and LDSSs were to be deemed terminated and FIs would no longer able to provide FI services to Consumers and PAs after March 31, 2025, even if Consumers were not fully registered with PPL.[4]

Plaintiffs filed the instant lawsuit and, on March 31, 2025, the court entered a TRO which specifically enjoined the DOH "from disallowing other Fiscal Intermediaries from servicing those CDPAP participants who have not yet registered with PPL." (Dkt. No. 37.) In short, the status quo was to be maintained for those CDPAP Consumers and PAs not fully transitioned to PPL. Following further dispute between the parties, as well as confusion, the Court further clarified the TRO, ordering that "Defendant must ensure and take whatever action necessary to ensure that all CDPAP consumers and PAs who received care and payment before April 1, 2025, regardless of their present registration status, shall continue to receive care from their existing PAs, who shall be timely paid for their services. " (Order, Apr. 2, 2025.)

### E. Role of Existing FIs to Assist in Implementing TRO

Following the issuance of the TRO, the practical concern has been raised as to how Defendant can "ensure" that all CDPAP Consumers and PAs who received care and provided,

---

[4] *See* New York State Dep't of Health Memo (Dec. 6, 2024), https://www.health.ny.gov/health_care/medicaid/redesign/mrt90/mltc_policy/2024/docs/24-04_memo.pdf.

services, before April 1, 2025, can continue to do so, uninterrupted as to service and payment. The answer is quite simple—utilize the Existing FIs.

Existing FIs were operating and providing the litany of services listed above to the CDPAP Consumers and PAs who are not fully transitioned to PPL as recently as March 31, 2025. Hagmann Aff. ¶ 16. The only thing that changed on April 1, 2025 was that the DOH had directed the MCOs and LDSSs to terminate their contracts with the Existing FIs and terminate the requisite authorizations for Consumers to receive care and for FIs to pay PAs for providing these services. *Id.* ¶ 17. But the reality is that Existing FIs stand ready, willing, and able to resume that role. *Id.* ¶ 18. DOH need only direct the MCOs and LDSSs to reinstate and reissue the contracts and authorizations. *Id.* ¶ 18. Existing FIs can certainly assist with that process, but certainly the DOH, and likely PPL, can identify exactly which Consumers and PAs are affected by the issues before this Court, and essentially reverse what was done effective April 1, 2025 that caused this disconnect for vulnerable New Yorkers.

This is the only viable solution to the current predicament faced by thousands of Consumers and PAs. As explained above, this is not simply a matter of incomplete paperwork that can be handled later, and prospective payments issued to PAs. There are numerous, specific legal requirement governing the CDPAP program, provision of Consumer services, and, therefore, pay to PAs. Thus, the *only* way that these individuals' needs can be met, and to ensure there is no disruption in services or pay, is for DOH to work with MCOs, LDSSs, and Existing FIs to restore the status quo, as it was on March 31, 2025, and let it remain that way until each and every last Consumer and PA has effectively transitioned to PPL.

For example, Amici Maxim reports that one MCO said it could not issue updated authorizations because "NYS required us to switch all auths to PPL effective 4/1 or risk freezing

our Medicaid enrollment/program entirely," so that plan "will be stopping your claims with DOS 4/1 and until further notice to pay without an auth." Affirmation of Daniel McNamara ("McNamara Aff.") ¶ 5. Another stated that "We are following the NYS DOH guidance and continuing with the authorizations we have moved to PPL. We will not be moving any authorizations back to other FIs." *Id.* ¶ 6. Another stated that they have "contracted with PPL effective 4/1 and [have] loaded all authorizations to PPL for the ongoing care of our members. At this time, we do not maintain active contracts or authorizations with any fiscal intermediaries outside of PPL." *Id.* ¶ 7.

Accordingly, FI Amici respectfully request that any preliminary injunction that issues require specific guidelines for DOH to follow, namely:

1. That DOH instruct its MCOs and LDSSs to recontract with Existing FIs to service those Consumers who are covered by the injunction;

2. That DOH ensure that all Consumers whose PAs have not full transitioned to PPL have access to Existing FIs services during the extended transition.

3. That the DOH and PPL will provide a mechanism for Existing FIs to check whether a given Consumer or PA has fully transitioned to PPL and is receiving payments from PPL, and not simply "begun registration";

4. That any Existing FIs that act in accordance with this Court's Order will not be penalized or sanctioned by the DOH for assisting those Consumers; and

5. Such other and further relief as the Court deems proper.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion in all respects and specifically direct Defendant to work with MCOs and LDSSs to restore

or reissue terminated contracts and Consumer and PA-specific authorizations so that Existing FIs can resume their services and ensure there is no further disruption to CDPAP Services.

Dated: April 2, 2025

Respectfully Submitted By:

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

/s/ Edward Wipper
Edward Wipper
1155 Avenue of the Americas, 26th Floor
New York, New York 10036
(646) 593-7051
ewipper@beneschlaw.com

Deana S. Stein
127 Public Square, Suite 4900
Cleveland, OH 44114
(216) 363-6170
E: dstein@beneschlaw.com
*Attorneys for Caring Professionals, Inc.*

**BOND, SCHOENECK & KING, PLLC**

/s/ Roger Bearden
Roger Bearden
Hermes Fernandez
Jeremy Sher
22 Corporate Woods Blvd., Fifth Floor
Albany, New York 12211
T: (518) 533-3209
hfernandez@bsk.com
rbearden@bsk.com
jsher@bsk.com
*Attorneys for Consumer Directed Personal Assistance Association of New York State and New York Association on Independent Living*

**ARENTFOX SCHIFF, LLP**

/s/ Michael P. McMahan
Michael P. McMahan
Shayshari Potter
1301 Avenue of the Americas, Floor 42
New York, NY 10019
(212) 484-3900

michael.mcmahan@afslaw.com
shayshari.potter@afslaw.com
*Attorneys for Maxim of New York LLC*