# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Akiva Shapiro
Direct: +1 212.351.3830
AShapiro@gibsondunn.com

April 22, 2025

**VIA ECF**

Hon. Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

Re: *Engesser et al. v. McDonald*, 25-cv-01689-FB (E.D.N.Y.)

Dear Judge Block:

We represent Freedom Care LLC ("Freedom Care") and request that this letter be considered as an amicus submission in connection with the conference scheduled for today in the above-referenced action. Freedom Care was the largest fiscal intermediary in New York prior to the transition to the single, statewide fiscal intermediary—serving **approximately 30,000 consumers**—and writes to corroborate and provide further information regarding the issues raised in the April 18, 2025 letter submitted by Caring Professionals, Inc. *See* Dkt. 63. The issues outlined therein are representative of the experience of Freedom Care and, we understand, of numerous other fiscal intermediaries across the State who are trying to provide services to consumers and pay caregivers (personal assistants) in accordance with this Court's preliminary injunction, *see* Dkt. 62, but who have been stymied by Department of Health ("DOH") inaction and refusal to meaningfully implement that injunction, even as it pays lip service to it. To ensure meaningful relief and compliance with the preliminary injunction, we ask the Court to order further relief as sort forth below.

### I. Consumer and Caregiver Experience Under The Preliminary Injunction.

On April 1, 2025, Freedom Care shut down its New York operations pursuant to the single fiscal intermediary mandate being implemented by DOH. Two weeks later, on April 15, 2025, Freedom Care resumed its operations as permitted by this Court's Order dated April 10, 2025. Dkt. 62. Within just a few days, Freedom Care received over 20,000 phone calls from consumers and caregivers—largely problems, questions, and concerns from consumers and caregivers regarding continuity of service and payment, despite the preliminary injunction's nominal guarantee of the same. Most personal assistants were either unable to register with the single fiscal intermediary, Public Partnerships, LLC ("PPL") and are therefore not being paid, *or* were registered with PPL but were still not being paid. Freedom Care also received over 15,000 emails over that same time period, which were of a piece with the calls.

The extent of the outreach is unsurprising, given that the data provided by DOH and PPL shows that only one-third of caregivers have been paid since April 1, 2025. *See* Dkt. 66-1-2. The fact that Freedom Care, which as noted previously served 30,000 consumers, received over 20,000 calls and 15,000 emails in such a short period only underscores the massive scope of the disruption.

Most of the individuals who reached out pleaded to return to Freedom Care. But while Freedom Care has received thousands of such requests, it has received only 244 authorizations to date. Because Freedom Care cannot legally provide services without valid authorizations, many caregivers remain unpaid, and the consumers—many elderly or disabled—are left without care. The system is breaking down, and the consequences are being felt by real people, in real time.

Representative emails received by Freedom Care by a caregiver and consumer include:

- "I tried contacting my fathers health insurance so we can continue services with freedom care but they stated they have no information from the government that cdpap service can continue with freedom care. Please advise as I am still helping my father however I am not being paid through freedom care or ppl."

- "[M]y worker . . . has not been paid for 3 weeks now."

Our understanding is that caregivers across fiscal intermediaries are facing the same issues. For example, caregivers have posted on public message boards the following:

- "I haven't received a single dollar since April 1st. I can't pay my rent. I can't pay for food. I'm taking care of my disabled father full time, and I'm being punished for doing it."

- "I've been clocking in and out since April 1st. My hours go from 'in review' to 'denied' in less than a minute. The paperwork is complete. The authorization is approved. PPL doesn't even know why it's being denied. I've now gone weeks without pay. This is stressing me out and I can't go on like this."

- "They had everything on file—my consumer and I were fully cleared. But now when I clock out of the Time4Care app, PPL automatically denies the shift. Same shifts I worked with my old FI. My consumer can't approve them and no one answers the phones. I live with my consumer. This is how we put food on the table. I'm fighting the urge to drive to Georgia to get someone to speak to me in person because nothing is working."

- "Every time I call, I get a different answer. I've spent hours on hold, I've cried on the phone. I've called every day for weeks. I'm doing everything right, and I'm still not getting paid. How am I supposed to survive?"

## II. Requested Relief

To immediately stabilize the situation, we respectfully ask the Court to order the following:

1. Extend all fiscal intermediary authorizations that were valid as of March 31, 2025, for the pendency of the preliminary injunction (including any extensions).

2. Allow consumers to resume services with their prior fiscal intermediaries by calling or emailing them, with no further paperwork required.

3. Require DOH or health plans to pay fiscal intermediaries within 30 days of service.

4. If a prior fiscal intermediary is no longer operational, allow the consumer to choose another fiscal intermediary, rather than forcing the consumer into PPL.

5. Instruct DOH to require health plans to send letters assuring payment to all prior fiscal intermediaries based on the blanket extension, so that fiscal intermediaries can resume services without fear of non-reimbursement.

Freedom Care recognizes that the requested order could result in a limited, short-term risk that some caregivers could be paid twice—once by PPL and once by their prior fiscal intermediary. This is not ideal. But it is the unavoidable result of PPL's inability to provide timely registration and payment, not any action by consumers or fiscal intermediaries. This risk only exists, moreover, for a few days of services and can be reconciled later. But delaying care any longer would result in far greater harm.

We are witnessing a collapse of care in real time. Without intervention, it will deepen. These are not abstract policy failures; these are real families, real caregivers, and real suffering. We urge the Court to act swiftly to ensure that its preliminary injunction provides meaningful relief.

We thank Your Honor for your continuing close attention to this important matter.

Respectfully submitted,

*Akiva Shapiro*
Akiva Shapiro
GIBSON, DUNN & CRUTCHER LLP