

Edward C. Wipper
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial: 646.593.7051
Fax: 646.798.8902
ewipper@beneschlaw.com

May 20, 2025

**_Via ECF_**
The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

  Re: *Engesser et al. v. McDonald*, Civil Action No. 25-cv-01689 (FB) (LKE)

Dear Judge Block:

  We represent *amicus* Caring Professionals, Inc. ("Caring Professionals") in the above-captioned matter. We write in response to the parties' recent communications regarding Plaintiffs'[1] request to modify and extend the Preliminary Injunction (the "PI"). *See* ECF Nos. 76-83. Specifically, we write to address material inaccuracies contained in Defendant's submissions concerning CDPAP and the failed transition that is endangering the health, safety, and continuity of care for thousands of CDPAP Consumers.

  Seeking to create the false impression that this failed transition is now virtually complete and a stunning success, Defendant claims that 203,000 individual PAs are purportedly registered with PPL and that PPL allegedly issued 198,000 paychecks last week. Defendant falsely claims that because PAs allegedly can work for more than one Consumer, it shows that the "vast majority" of Consumers are receiving services. But this fundamentally misrepresents the nature of CDPAP and, if true, actually demonstrates a massive failure. The true ratio of PAs to Consumers is approximately 3:2, or one-and-a-half PAs for every Consumer. If there are 209,000 Consumers registered with PPL, there should be at least 313,500 PAs registered. And a full transition of CDPAP's 290,000 Consumers would have required the onboarding of approximately 435,000 PAs. Thus, there are tens of thousands of Consumers not receiving care and facing the imminent threat. Caring Professionals knows of at least 20 Consumers whose PAs are not being paid, and we can provide that information upon request. This number is only a sample size, not representative of the total amount of PAs remaining unpaid to date.

  But we do not have to guess. Caring Professionals has also advised the parties that the MCOs are able to compile a list of all Consumers and PAs in the system as of March 31, 2025 (redacted, as needed) and identify their current status (*e.g.,* registered with PPL, registered Consumer but not PA, etc.). This will ensure we have an objective starting point for a full understanding the status of the transition, rather than just relying on the parties' self-serving, and self-reported data.

  Next, the simplest way to ensure that all Consumers receive services and PAs get paid is to allow existing FIs to continue serving Consumers and PAs who are identified as not fully

---

[1] Where not otherwise defined herein, capitalized terms have the meanings given in ECF Nos. 62 and 76-83.

Block, J.
May 20, 2025
Page 2

transitioned or not being paid and order MCOs to reinstate requisite authorizations upon *either* request of the individual Consumer or their FIs. Caring Professionals, like other FIs, are in constant communication with Consumers and PAs who are complaining of a lack of services and payment and who have been unable to resolve their issues with PPL. Thus, streamlining the ability of FIs to receive reinstated authorizations would ensure 100% coverage.

Further, large swaths of information about the CDPAP transition have been redacted from the parties' communications with the Court. Because this dispute concerns a public program—and the redacted information does not appear to be commercially sensitive or HIPAA-protected information—the public should be entitled to access such information. We respectfully move that these letters should be submitted unredacted and without seal. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004) ("[T]he public has a qualified…right to attend judicial proceedings and to access certain judicial documents."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) (holding documents may be sealed "only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.").

The inability of Defendant to be forthright about the true status of care in the State or, more specifically, the lack thereof, is telling. The purported rationale for the CDPAP Amendment was that it would save the State hundreds of millions of dollars. The manner in which the Defendant has conducted this seems more designed to save CDPAP money by eliminating people from the program and burden other parts of the healthcare system, namely nursing homes and emergency rooms. This will result in no net savings for the State of New York and only pain and suffering.

Thank you for your consideration.

Sincerely,

BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP

*/s/ Edward C. Wipper*

Edward C. Wipper

ECW:dss