

22 Corporate Woods Boulevard, Suite 501 | Albany, NY 12211 | **bsk.com**

**ROGER A. BEARDEN, ESQ.**
rbearden@bsk.com
P: 518.533.3217
F: 518.533.3299

May 20, 2025

<u>**VIA ECF**</u>

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

***Re: Engesser et al. v. McDonald, Civil Action No. 25-cv-01689 (FB) (LKE)***

Dear Judge Block:

This firm represents *amici* Consumer Directed Personal Assistance Association of New York State (CDPAANYS) and appeared on behalf of the clients before your Honor on April 22, 2025 regarding Defendant James V. McDonald's substantial and ongoing noncompliance with the Preliminary Injunction in this above-captioned matter (NYSCEF Dkt. 62).  Following that court conference, and at your direction, by letter dated April 23, 2025 we advised Rachel Summer, Assistant Attorney General, and counsel to Defendant McDonald of the serious issues in the transition of the Consumer Directed Personal Assistance Program (CDPAP) Public Partnerships LLC (PPL) as the single, statewide Fiscal Intermediary.

In a nutshell, through its acts and omissions, and despite the terms of the Court's Preliminary Injunction dated April 10, 2025, Consumers are being prevented from continuing to receive CDPAP services because the New York State Department of Health has failed to instruct properly New York Medicaid Managed Care Plans and Local Departments of Social Services to revoke the recissions of their contracts with Fiscal Intermediaries and to assure that they issue authorizations for services for Consumers to receive services from their Prior FI.  By failing to instruct Plans and LDSS's, the Department continues to leave PPL as the only means for Consumers to access CDPAP services even though PPL has yet to show the ability to serve all Consumers.  In addition, the Department has required that Plans identify to PPL each Consumer and Personal Assistant to PPL before that Consumer or Personal Assistant can be supported by a different FI.  By doing so, the Department has placed PPL, the entity that has been unable to complete the transition, in charge of the remedy.  The proverbial wolf is watching the hen house.

Attorneys At Law | A Professional Limited Liability Company

Hon. Frederic Block
May 20, 2025
Page 2

Since the date of our initial letter, the situation has not improved. The deep, continuing problems have been brought to the Court's attention by the Motion for a revised Preliminary Injunction Plaintiffs filed on May 15th. Eligible Consumers are not receiving Consumer Directed Personal Assistance services, Personal Assistants are not being paid or are receiving incorrect amounts, and Consumers are losing their Personal Assistants.

Remarkably, PPL is touting its failures as success. In its weekly press release issued this past Friday, May 16th, PPL proclaimed that it had issued paychecks to 191,000 Personal Assistants (copy attached). That is well below the 236,000 Consumers the Department of Health has stated as currently enrolled with PPL. *See* Affidavit of Amir Bassiri, May 9, 2025, para. 3, attached. Using the Department of Health's own numbers, either 45,000 enrolled Consumers are without Personal Assistants, or their 45,000 Personal Assistants are not being paid. What employer could claim success by announcing that it had paid less than 80% of its workforce? In any other circumstance, the failure to pay one out of every five workers would be an abject failure, and a cause for investigation, fines and penalties.

As awful as the failure to pay Personal Assistants is, the consequences to Consumers of the diminished number of Personal Assistants are even worse. According to the Department of Health's own statements, prior to the forced transition there were 280,000 Consumers served by 400,000 Personal Assistants. By those numbers Consumers employed 1.4 Personal Assistants on average. This means that the actual gap between Consumers and needed Personal Assistants is much, much greater than the 54,000 unpaid Personal Assistants. Rather than a payroll of 191,000 Personal Assistants, the expected payroll should have been 330,000 (236,000 Consumers multiplied by the pre-transition average of 1.4 Personal Assistants). That is an astonishing shortfall, having real consequences in Consumer care and well-being. And even these numbers understate the care gap. These numbers do not take into account the number of Personal Assistants who will leave their jobs because PPL has not paid them. They also do not take into account the large numbers of Consumers who have yet to be enrolled by PPL. Far from a success, this is a crisis.

We have strong reason to believe that the situation is much worse than even the Department's numbers suggest. Although the Department has stated that 70,000 former Consumers have chosen a different form of home care, large licensed home care providers have indicated to us that they have not experienced significant influxes of new home care patients. This suggests that there are many more individuals who are not receiving CDPAP services or home care services at all.

The statistics supplied in the letter submitted by the Assistant Attorney General yesterday on behalf of the Department of Health should not be credited. The supplied statistics are at startling variance from those stated in the PPL press release issued only

21724150.v1-5/20/25
21728231.v1-5/20/25

Hon. Frederic Block
May 20, 2025
Page 3

three days earlier, on Friday, May 16, 2025.  The statistics are also at serious variance with the historical record in CDPAP.  Most significantly, the Department of Health now makes the startling assertion that Consumers now on average employ fewer than .8 Personal Assistants per Consumer when the average prior to the March 31 transition was 1.4 Personal Assistants.  Apparently, if the Department of Health is to be believed, Consumers now have less need for assistance than they had prior to April 1, 2025.

Moreover, the movement of Consumers from CDPAP to licensed home care agency patients is itself a failure of the transition.  Individuals were always free to receive their home care through licensed home care agencies but they did not choose licensed home care until PPL and the transition.  This "choice" carries with it a risk of diminution of care as CDPAP Personal Assistants are permitted to provide a broader range of services than personal care attendants employed by licensed home care agencies.  *See* NY Education Law 6908(1)(a)(iii).

If permitted to do so, and as the current Preliminary Injunction seemingly contemplated, Fiscal Intermediaries could bridge this care gap.  Indeed, we are advised that many Consumers continue to request assistance from their former Fiscal Intermediaries.  In accordance with the Preliminary Injunction, neither PPL nor the Department of Health should prevent Fiscal Intermediaries from supporting Consumers.  The use of facilitators as Plaintiffs now propose should not prevent Consumers from being served by a Fiscal Intermediary.  As the Preliminary Injunction contemplated, payors should reauthorize willing Fiscal Intermediaries through the transition.  The Department of Health should encourage, rather than discourage, those reauthorizations.  Consumers whose Personal Assistants have not been paid or completed enrollment should be permitted without delay to use a prior Fiscal Intermediary until their Personal Assistants are fully enrolled and PPL can demonstrate that it has in place the process and information necessary to pay the particular Personal Assistant.  This would not preclude the use of Facilitators to assist in Consumer enrollment and Personal Assistant onboarding with PPL.  Facilitators cannot, however, correct the internal problems seemingly within PPL that have prevented the completion of Consumer enrollments and Personal Assistant onboarding, or the issuance of timely, correct wages.

To effectuate the use of Fiscal Intermediaries, we urge the following steps:

1. The Department should direct Medicaid Managed Care Plans, Medicaid Managed Care Organizations and Local Departments of Social Services ["Medicaid Payors] to contact immediately each Fiscal Intermediary with which it had a Fiscal Intermediary contract on March 31, 2025 as to its willingness to provide Fiscal Intermediary services to CDPAP Consumers.

2. The Department should maintain and publish on its website the list of Fiscal Intermediaries willing to provide CDPAP Fiscal Intermediary services.

Hon. Frederic Block
May 20, 2025
Page 4

3. If a willing Fiscal Intermediary, the respective Medicaid Payor should direct each Consumer previously served by such Fiscal Intermediary as of March 31, 2025 to such Fiscal Intermediary if the Consumer has not completed enrollment with PPL or the Personal Assistants employed by the Consumer were unpaid or incorrectly paid on May 15, 2025, or the Personal Assistant has been unable to complete registration with PPL.

4. Willing Fiscal Intermediaries who previously served a Consumer as of March 31, 2025 should be permitted to contact such Consumer to advise the Consumer that if the Consumer has not completed enrollment with PPL or the Personal Assistants employed by the Consumer were unpaid or incorrectly paid on May 15, 2025, or the Personal Assistant has been unable to complete registration with PPL, that the Consumer could receive CDPAP Fiscal Intermediary services from the Fiscal Intermediary or another Fiscal Intermediary.

5. If a Consumer's prior CDPAP Fiscal Intermediary is not available, or the Consumer wishes to use a different Fiscal Intermediary, the Consumer should be permitted to select another CDPAP Fiscal Intermediary.

6. The Department should be required to direct explicitly the Medicaid Payors to cooperate with CDPAP Fiscal Intermediaries, including reinstating prior Fiscal Intermediary contracts according to their prior terms.

We thank the Court for its attention to these issues.

Very truly yours,

BOND, SCHOENECK & KING, PLLC

*[signature]*

Roger A. Bearden