UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. and C.P., individually and on behalf of all persons similarly situated; BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING,<br><br>                    Plaintiffs,<br><br>            -against-<br><br>JAMES V. MCDONALD, as Commissioner of the New York State Department of Health,<br><br>                    Defendant. | Case No.: 1:25-cv-01689<br><br>**[PROPOSED] AMENDED PRELIMINARY INJUNCTION** |

**WHEREAS** the Consumer Directed Personal Assistance Program ("CDPAP") is a New York State Medicaid Program intended "to permit chronically ill and/or physically disabled individuals [referred to as 'Consumers'] receiving home care services greater flexibility and freedom of choice in obtaining such services," N.Y. Social Services Law ("SSL") § 365-f(1); 18 New York Codes, Rules, and Regulations ("NYCRR") 505.28(a);

**WHEREAS** under CDPAP, the Consumer may select and retain personal care aides (referred to as a "personal assistant" or "PA") to assist with their home care needs;

**WHEREAS** to participate in CDPAP, each Consumer is required to assume responsibilities, including, but not limited to, recruiting, hiring, training, scheduling, and supervising their PAs, *see* SSL § 365-f(3);

**WHEREAS** in the fulfillment of their responsibilities, the Consumer works with a Fiscal Intermediary ("FI") that performs administrative functions such as wage and benefit processing for PAs, processing all income tax and other required wage withholdings, and maintaining

1

employment records on behalf of the Consumer, *see* SSL § 365-f(4-a)(a)(i)-(ii); 18 NYCRR 505.28(b)(6) and (i);

**WHEREAS** on April 20, 2024, the New York State Legislature passed an amendment to CDPAP's governing statute (hereinafter "the CDPAP Amendment"), SSL § 365-f to address certain financial, administrative, and compliance concerns;

**WHEREAS** the CDPAP Amendment required the New York State Department of Health to issue a Request for Proposals ("RFP") to contract with a single statewide FI to perform the FI role for CDPAP ("Statewide FI"), *see* SSL § 365-f(4-a);

**WHEREAS** on September 27, 2024, Public Partnerships, LLC ("PPL") was selected as the Statewide FI;

**WHEREAS** the CDPAP Amendment provides that "[e]xcept for the [contracted] statewide fiscal intermediary and its subcontractors, as of April first, two thousand twenty-five, no entity shall provide, directly or through contract, fiscal intermediary services," *see* SSL § 365-f(4-a-1)(a);

**WHEREAS** as of March 31, 2025, there were CDPAP consumers who had not fully transitioned to PPL;

**WHEREAS** on or about March 24, 2025, DOH announced that Consumers and PAs would be permitted an additional 30 days to register with PPL, by April 30, 2025, such that those PAs will receive payment from PPL for all days worked in April 2025 upon registration;

**WHEREAS** Plaintiffs filed this action on March 26, 2025, and moved for entry of a temporary restraining order and preliminary injunction on March 27, 2025;

**WHEREAS** the Court granted a temporary restraining order on March 31, 2025, and entered a further Order clarifying the temporary restraining order on April 2, 2025;

**WHEREAS** no plaintiff class has been certified to date, Plaintiffs reserve the right to make any motion for class certification, and Defendant reserves the right to oppose any motion for class certification in the event that the Parties are not able to reach a settlement;

**WHEREAS** Plaintiffs and Defendant James V. McDonald, sued in his official capacity as Commissioner of the New York State Department of Health ("DOH" or the "Department") (together, the "Parties"), desired to resolve Plaintiffs' motion for a temporary restraining order and preliminary injunction without further litigation and without admission that a motion for such relief is appropriately granted;

**WHEREAS** the Parties submitted a joint [Proposed] Preliminary Injunction on April 9, 2025, which the Court ordered on April 10, 2025, and which had an expiration date of June 6, 2025;

**WHEREAS** the Original Preliminary Injunction was entered into to allow Consumers to continue receiving CDPAP services and PAs to continue to be paid while Consumers and PAs fully transitioned to PPL;

**WHEREAS** on May 15, 2025, Plaintiffs filed a pre-motion letter in anticipation of a motion to amend and extend the Original Preliminary Injunction ("Motion for Amended Preliminary Injunction");

**WHEREAS** on May 20, 2025, the Court extended the expiration date of the Original Preliminary Injunction to June 20, 2025, to allow the Parties to attempt to settle or otherwise brief the Motion for Amended Preliminary Injunction;

**WHEREAS** the Parties submitted briefing on the Motion for Amended Preliminary Injunction;

**WHEREAS** on June 19, 2025, the Court extended the expiration date of the Original Preliminary Injunction to July 1, 2025, to allow the Parties to both settle the Motion for Amended Preliminary Injunction and submit a joint proposed class settlement for the Court's review and approval;

**WHEREAS** the Parties desire to resolve the Motion for Amended Preliminary Injunction without further litigation and without admission that a motion for such relief is appropriately granted, with a view toward a final settlement of this action;

**WHEREAS** the Parties are negotiating a joint proposed class settlement to be submitted for the Court's approval, which is contingent on a fairness hearing pursuant to Rule 23 of the Federal Rules of Civil Procedure being held in early August 2025;

**WHEREAS** this Order will allow Defendant to begin implementation of the injunctive relief negotiated as part of a joint proposed class settlement.

**IT IS HEREBY ORDERED AS FOLLOWS**:

I. Definitions
   a. "Fully Registered Consumer" means a consumer who has themselves or through a Designated Representative:
      i. Completed the necessary steps for registration with PPL; and

  ii. Signed the required memorandum of understanding with PPL.

b. "Fully Onboarded Personal Assistant" means a Personal Assistant who has completed all legal requirements to become a PPL employee, including employment eligibility verification, and has been notified that the PA is Fully Onboarded.

c. "MCO" shall have the same meaning as a Managed Care Provider pursuant to SSL § 364-j.

d. "LDSS" means Local Departments of Social Services established pursuant to Article 2 of the Social Services Law.

e. "Authorization" means the authorization for services by an MCO or LDSS pursuant to 18 NYCRR 505.28(d)(3)(i).

f. "Facilitators" means entities subcontracted with PPL to perform services on behalf of the Consumer to facilitate the Consumer's role as the employer pursuant to SSL § 365-f.

g. "Prior FI" means the FI with which the Consumer was enrolled on March 31, 2025.

h. "Expiration Date" means the date of the fairness hearing held relating to the anticipated joint proposed class settlement. If the fairness hearing is not held during the first week of August, "Expiration Date" means August 15, 2025.

i. "CDPAP Amendment" means Part HH of Chapter 57 of the New York Session Laws of 2024 that amended subdivision 4-a(ii-a) and added subdivision 4-a-1(a) (*see* Section 3 of Part HH) to SSL § 365-f.

j. "Registration Deadline" means August 1, 2025.

k. "Order" or "Amended Preliminary Injunction" means this Proposed Amended Preliminary Injunction submitted for the Court's approval on June 26, 2025.

l. "Designated Representative" shall have the same meaning as Designated Representative pursuant to 18 NYCRR 505.28(b)(5).

m. "Original Preliminary Injunction" means the consent Preliminary Injunction jointly submitted by the Parties on April 9, 2025 and so-ordered by the Court on April 10, 2025, ECF No. 62, and extended by the Court on June 19, 2025.

n. "MLTC" shall have the same meaning as a Managed Long Term Care plan pursuant to Public Health Law § 4403-f.

o. "CBLTCS" shall have the same meaning as Community Based Long Term Care Services pursuant to the contract in effect for the MLTC Plan of which the consumer is a member. CBLTCS is comprised of services such as Home Health Services, Private Duty Nursing, Consumer Directed Personal Assistance Services, Adult Day Health Care Program, and Personal Care Services.

p. "NYMC" shall mean New York Medicaid Choice.

q. "Consumer With Unused Services" shall mean a Consumer who has a valid authorization for CDPAP services but has no record of having received CDPAP services during the month of June 2025.

II. Employment and Payment of PAs through Pendency of Amended Preliminary Injunction

a. This Section sets forth the actions to be taken during the pendency of the Order with respect to the Categories of Consumers created by the Original Preliminary Injunction.

b. Category A: "Fully Registered Consumer, Fully Onboarded PA" Group

  i. This Category covers employment and payment of PAs who are Fully Onboarded with PPL, and whose Consumers are Fully Registered with PPL.

  ii. Because Consumers in Category A have Fully Registered with PPL and their PAs have Fully Onboarded with PPL, PPL will remain the joint employer of these PAs and continue to be the only FI permitted to provide FI services. These Consumers shall also receive a communication, described in Section III.a, to provide information about resources they can contact for assistance using CDPAP services.

c. Category B: "Fully Registered Consumer, Not Fully Onboarded PA" Group

  i. This Category covers employment and payment of any PAs who are not Fully Onboarded with PPL, and whose Consumers are Fully Registered with PPL.

  ii. Any PA that is providing services to a Consumer in Category B under the Original Preliminary Injunction, Section II.d, must be Fully Onboarded with PPL by the Registration Deadline. Until the Registration Deadline, any PA that is being paid by a prior FI can continue to be paid by the Prior FI. After the Registration Deadline any PA not Fully Onboarded with PPL will not receive payment for services until the PA is Fully Onboarded.

5

      iii. Any PA who is not Fully Onboarded but whose Consumer is Fully Registered, upon Fully Onboarding with PPL by July 1, 2025, and qualifying (e.g., care was authorized and accurate records were kept) can receive retro-pay through PPL for work performed back to the later of (a) April 1, 2025, or (b) the last date for which the PA was paid by the Prior FI.

      iv. PAs who are not Fully Onboarded with PPL can utilize the Expedited PPL Onboarding Mechanism, *see infra*, as set forth in this Section.

  d. Category C: "Not Fully Registered Consumers" Group

      i. This Category covers employment and payment of all PAs whose Consumers are *not* Fully Registered with PPL.

      ii. All Consumers and PAs in Category C under the Original Preliminary Injunction, Section II.e.iii, must register with PPL by the Registration Deadline. Until the Registration Deadline, any Consumer that has elected to have their PA(s) paid by a prior FI can continue to have their PA(s) paid by the Prior FI. After the Registration Deadline any PA not Fully Onboarded with PPL will not receive payment for services until the PA is Fully Onboarded.

      iii. Any PA serving a Consumer who has not Fully Registered with PPL can, upon the Consumer Fully Registering and the PA Fully Onboarding by July 1, 2025, receive retroactive pay through PPL if otherwise qualified (e.g., care was authorized and accurate records were kept) for work performed back to the later of (a) April 1, 2025, or (b) the last date for which the PA was paid by the Prior FI.

      iv. Consumers and PAs who are not Fully Registered with PPL can utilize the Expedited PPL Onboarding Mechanism, *see infra,* as set forth in this Section.

  e. Moving from Category B or C to Category A

      i. DOH will direct PPL that, at the point any PA who was previously not Fully Onboarded with PPL becomes Fully Onboarded with PPL, PPL must:

        1. Inform the Consumer, the Consumer's Designated Representative, if any, and the PA via email and phone that the PA is employed and will be paid by PPL, and the date payment begins; and

        2. Provide the PA, the Consumer's Designated Representative, if any, and Consumer with instructions for submitting and approving time.

    f. Expedited Authorization:

       i. For any Consumer who is Fully Registered with PPL but whose Authorization has not been transferred to PPL, DOH will instruct the MCOs and LDSS to continue to prioritize the transfer of those Authorizations.

    g. Expedited PPL Onboarding Mechanism:

       i. The Expedited PPL Onboarding Mechanism put into place pursuant to the Original Preliminary Injunction, Section II.h, for urgent onboarding of PAs who are not Fully Onboarded with PPL and are serving a Consumer in Category B or C (*see* Sections II.c and II.d *supra*) shall remain in place as follows. This process includes:

         1. Intensive and direct outreach by DOH;
         2. Maintenance of DOH's dedicated CDPAP transition team;
         3. Maintenance of the dedicated DOH CDPAP Transition phone number (1-833-947-8666) and email address (statewidefi@health.ny.gov) through December 31, 2025, after which time existing Medicaid consumer services hotlines (for MCOs and LDSS Consumers) will support CDPAP;
         4. Consumer in-home visits by Facilitators and/or MCOs; and
         5. Availability of in-person community office visits.

    h. As of the date of this Order, no Consumer can newly elect to have a PA be paid by their Prior FI.

    i. This Order does not prevent DOH or PPL from continuing to transition Consumers and their PAs to PPL.

III. Additional Actions To Be Taken for Fully Registered Consumers

    a. Communication to all Fully Registered Consumers:

       i. DOH shall direct the MCOs and LDSS to send a letter to all Fully Registered Consumers ("Fully Registered Consumer Letter") via their preferred method of communication, as set forth in Section III.a.iii, *infra*, reminding the Consumer of:

         1. Contact information for PPL and DOH CDPAP Transition phone number;
         2. Availability of Facilitators;
         3. The list of Facilitators; and
         4. The process for requesting a Facilitator.

      ii. The Fully Registered Consumer Letter will contain a form for Consumers to select a Facilitator if they choose to do so.

      iii. Preferred method of communication

          1. A Consumer's preferred method of communication is that which was previously selected by the Consumer pursuant to Guidance for Medicaid Managed Care Plans on Enrollee Electronic Notification of Managed Care Organization Determinations, effective October 1, 2022.

          2. If the Consumer's preferred method of communication is email or text, that Consumer will be sent an email or text message that includes a link to a webpage containing the same information that was included in the Fully Registered Consumer Letter, as well as a link to the Facilitator selection form.

          3. If the Consumer's preferred method of communication is phone, that Consumer will be emailed the Fully Registered Consumer Letter. If such a Consumer does not have an email address on file, the letter shall be mailed.

      iv. DOH shall also post a copy of the Fully Registered Consumer Letter publicly on the DOH website.

   b. Specialized resources for certain populations:

      i. DOH shall direct PPL to have PPL's website identify Facilitators who have expertise in serving certain populations.

      ii. DOH shall direct PPL to direct Consumers to the list of Facilitators with expertise to inform Consumer choice of whether and which Facilitator to select. PPL's outreach referenced in Section III will specifically note that Facilitators are available to support not just the onboarding process, but also ongoing and day-to-day Consumer needs; as such, Consumers with specialized needs may choose to work with a Facilitator with relevant expertise if they wish to receive this ongoing support.

IV. Additional Actions to Be Taken for Consumers Being Served by a Prior FI Pursuant to the Order

   a. DOH shall direct the MCOs and LDSS to mail a letter to all Consumers being served by a Prior FI pursuant to Sections II.c.ii and II.d.ii, *supra*, that advises those Consumers that they must be Fully Registered and their PAs must be Fully

8

Onboarded by the Registration Deadline to remain in CDPAP ("Prior FI Consumer Letter"). The Prior FI Consumer Letter will explain how Consumers can Fully Register with PPL and how PAs can Fully Onboard with PPL, provide the DOH CDPAP Transition phone number, explain how a Consumer can choose to be assisted by a Facilitator, include a list of Facilitators and a form to be completed to select a Facilitator, and explain who a Consumer can contact to change to different long term care services if necessary by including phone numbers for their health plan and the Independent Consumer Advocacy Network ("ICAN").

b. For Consumers who are registered with PPL, but whose PAs are still being paid by a Prior FI, the Prior FI Consumer Letter will state that if their PAs are not Fully Onboarded by the Registration Deadline, the PAs will not be paid after the Registration Deadline until they are Fully Onboarded.

c. Following the Prior FI Consumer Letter, if the Court approves the settlement after a duly conducted Fairness Hearing, Consumers will be subject to the discontinuation process outlined in Section VI.b, *infra*, if the Consumer and their PA do not register with PPL by the Registration Deadline.

d. For Consumers with a Prior FI who are Fully Registered before the Registration Deadline but whose PAs Fully Onboard with PPL after the Registration Deadline but prior to August 15, 2025, pay for August 1 through August 15, 2025 will be available through PPL for those PAs who otherwise qualify (*e.g.*, care was authorized and an accurate record of time worked is uploaded to PPL@Home).

V. Additional Actions to Be Taken for Consumers With Unused Services Enrolled in MLTC Who Are Not in Receipt of Any CBLTCS Services

a. MLTC Letter

  i. DOH shall direct the MCOs to mail a letter, no later than July 7, to Consumers With Unused Services who are enrolled in an MLTC but have no record of having received any CBLTCS services informing them of the Registration Deadline for Consumers to be Fully Registered and their PAs to be Fully Onboarded ("MLTC Letter").

  ii. The MLTC Letter shall explain the multiple registration methods available through PPL; provide the DOH CDPAP Transition phone number; explain how a

9

      Consumer can choose to be assisted by a Facilitator, include a list of Facilitators and a form that can be used to select a Facilitator; and explain who a Consumer can contact to change to different long term care services if necessary by including phone numbers for their health plan and ICAN.

   iii. The MLTC Letter shall indicate that if the Consumer does not comply with the Registration Deadline, the Consumer could be in danger of CDPAP service discontinuation or disenrollment from their MLTC plan.

b. DOH shall direct MCOs to conduct additional outreach to the Consumers described in Section V(a)(i) before the Registration Deadline, including:

   i. At least 10 outreach attempts that will be conducted at different times of day, and on different days of the week, beginning when the Parties jointly file this Order;

   ii. At least one of these 10 outreach attempts will be to the Consumer's authorized representative instead of the Consumer when an authorized representative is identified with the MCO;

   iii. At least one of these 10 outreach attempts will be a home visit to the Consumer. MCOs are required to attempt a second home visit in the event no one answers the door during the initial home visit attempt;

   iv. At least five of these outreach attempts, including the home visit and contact with an authorized representative, will be conducted after the MLTC Letter is sent.

c. Once the Registration Deadline has passed, any Consumers With Unused Services in Section V who have not responded to contact to indicate an intent to re-start CDPAP services, or have not taken any step toward re-starting services (e.g., registered with PPL or had their PA register with PPL), will be mailed, as applicable, a Notice of Intent to Discontinue services because the Consumer selected a different long term care service, or a Notice of Intent to Disenroll from their MLTC plan during the first week of August, 2025.

d. Formal disenrollment of Consumers With Unused Services who are enrolled in an MLTC but have no record of having received CBLTCS services by the Registration Deadline and who have not responded to contact to indicate an intent to re-start CDPAP services or taken any step toward re-starting services (e.g., registered with PPL or had their PA register with PPL):

10

    i. If the Court approves the joint class settlement after a duly conducted Fairness Hearing, by August 15, 2025, a formal Disenrollment Notice with fair hearing rights letter will be sent to the category of Consumers described in Section V(d) from NYMC. Depending on NYMC capabilities, this notice shall say that DOH does not have jurisdiction to hear a challenge to the statute creating a single statewide FI.

    ii. For such Consumers who timely request a fair hearing after receiving the Disenrollment Notice described in Section V.d.i, *supra*, hearings will be scheduled on a priority basis and the disenrollment process will cease.

    iii. DOH will direct MCOs to notify DOH of any such Consumer who requests a fair hearing, and to inform DOH of the type of notice sent to the Consumer. After receiving this information from the MCO, DOH will contact each such Consumer who requests a fair hearing after receiving the Disenrollment Notice described in Section V.d.i, *supra*, to determine whether the Consumer can be expeditiously Fully Registered. DOH will then guide such Consumers through the expedited onboarding process set forth in Section II.g or an update to their plan of care to incorporate another LTSS and will request that the Consumer withdraw the hearing.

    iv. For any such Consumer who does not request a fair hearing after receiving the notice described Section V.d.i, *supra*, and who also does not take any step to re-start CDPAP services or indicate an intent to re-start CDPAP services, DOH will involuntarily disenroll those Consumers effective September 1, 2025.

    v. If a Consumer in Section V informs the MCO at any point prior to the effective date of disenrollment that they wish to remain in the MLTC plan and understand the steps required to do so, the disenrollment process will be stopped and the Consumer will be supported through the expedited onboarding process or an update to their plan of care.

VI. Additional Actions to Be Taken for MCO or LDSS Consumers With Unused Services, or MLTC Consumers With Unused Services Who Are Receiving Another CBLTCS.
    a. MCO/LDSS letter

    i. DOH shall direct the MCOs and LDSS to mail MCO and LDSS Consumers With Unused Services in Section VI a letter informing them of the Registration Deadline for the Consumers and their PAs to be Fully Registered and Fully Onboarded with PPL ("MCO/LDSS Letter") by July 7. MLTC Consumers With Unused Services in this Section who are authorized for CDPAP, and who are receiving another CBLTCS shall also receive the MCO/LDSS Letter.

    ii. The MCO/LDSS Letter shall explain how Consumers can Fully Register with PPL; provide the DOH CDPAP Transition phone number; explain how a Consumer can choose to be assisted by a Facilitator; include a list of Facilitators and a form that can be used to select a Facilitator; and explain who a Consumer can contact to change to different long term care services if necessary, by including phone numbers for their health plan or LDSS and ICAN.

    iii. The MCO/LDSS Letter shall indicate that if the Consumer does not comply with the Registration Deadline, the Consumer could be in danger of CDPAP service discontinuation.

b. If the Court approves the joint class settlement after a duly conducted fairness hearing, DOH shall direct MCOs and LDSS (or, as applicable MLTCs) to send Consumers in Section VI who do not comply with the Registration Deadline and who also do not take any step to re-start CDPAP services or indicate an intent to re-start CDPAP services a written discontinuation of services notice for failure to comply with an administrative requirement by August 15, 2025. This notice will serve as a final determination notice and state that DOH does not have jurisdiction to hear a challenge to the statute creating a single statewide FI.  The effective date of these notices shall be no earlier than September 1, 2025.

c. For such Consumers who timely request a fair hearing after receiving the notice described in Section VI.b, *supra*, hearings will be scheduled on a priority basis and the CDPAP discontinuance process will cease.

d. DOH shall direct MCOs and LDSS to notify DOH of any such Consumer who requests a fair hearing, and to inform DOH of the type of notice sent to the Consumer. After receiving this information from the MCO or LDSS, DOH will contact anyone in this group who requests a fair hearing after receiving the notice described in VI.b,

12

*supra*, to determine whether the Consumer can be expeditiously Fully Registered or an update can be made to their plan of care to incorporate another LTSS so the hearing can be subject to a pre-hearing disposition.

VII. Facilitators

    a. Facilitators will have access to the PPL system equivalent to that of PPL customer service representatives, with the exception of the ability to assign a Facilitator to a Consumer.

    b. DOH will continue to work with PPL on means of enhancing Facilitator training to support Facilitators in serving Consumers, including through the mechanisms identified in parts a, c, and d of this Section.

    c. Facilitators will be given the ability to flag issues for expedited follow up by PPL when they identify a problem that needs to be resolved but that the Facilitator itself cannot resolve, and receive a response when the problem is resolved.

    d. Facilitators will be given priority access to PPL call center agents that are highly skilled and have priority call routing. PPL will have a dedicated Facilitator liaison team that assists Facilitators with any questions or needs.

VIII. Additional Terms Governing Communications and Notices to Be Sent Pursuant to this Order

    a. For the purposes of this Order, any reference to a communication sent to a Consumer also means that the communication shall also be sent to the Consumer's Designated Representative, if applicable.

    b. Until the Expiration Date, with consent of the Consumer, Plaintiffs' counsel may provide DOH with the appropriate personal identifying information of any Consumer not Fully Registered with PPL or whose PAs are not Fully Onboarded with PPL who are encountering issues with the registration, the onboarding process, or receiving timely or complete payment from PPL. Plaintiffs' counsel will also provide DOH with an explanation of each Consumer's or PA's issue. DOH will use, and will instruct PPL to use, best efforts to address the situation expeditiously and update Plaintiff's counsel.

    c. For the purposes of this Order, written communication will be provided to the Consumer in English and Spanish with accompanying information to be provided in

13

        the 12 languages required under the New York State Language Access Law that will explain how to access verbal or written translation services for alternate languages.

    d. All notices will be reviewed by Plaintiffs' counsel in advance of distribution. Plaintiffs' counsel shall have 72 hours to suggest edits to the notices for DOH's consideration. DOH will review these proposed edits and accept reasonable edits.

IX. Additional Guidance to MCOs, LDSS, and/or PPL

    a. DOH shall issue guidance to MCOs and LDSS regarding the proper procedure to follow when the MCOs and LDSS suspects a Consumer has lost capacity to self-direct and does not have a designated representative.

    b. DOH shall issue guidance to MCOs, LDSS and PPL on service authorization renewals to ensure that Consumers have continuity of care. The guidance will require clear deadlines for issuing authorizations. These deadlines will enable PPL to timely upload the service authorizations and associate the authorizations renewals with the relevant Consumer profile before the expiration of the prior authorization.

    c. DOH will issue guidance to MCOs, LDSS, and PPL about how to provide aid to continue when a Consumer is facing reduction or discontinuance of service and has timely requested a fair hearing under Section V.

X. This Order vacates and supersedes the Original Preliminary Injunction.

XI. Timeline

    a. Defendant's time to answer, move, or otherwise respond to the Corrected Class Action Complaint, ECF No. 32, is hereby extended to the Expiration Date or any date further ordered by the Court.

    b. This Order shall remain in effect until the later of the Expiration Date or any date further ordered by the Court.

XII. Reservation of Rights

    a. Nothing in this Order waives or compromises the rights of any Consumer under the Medicaid Act or other provision of law, including but not limited to, Consumers' rights to notice, an opportunity to be heard, and aid-continuing before any reduction, suspension or termination of services, as set forth in Plaintiffs' Corrected Class Action Complaint.

14

    b. Nothing in this Order compromises or waives any Party's claims or defenses as to the merits of this Action.

    c. Nothing in this Order diminishes the rights of PAs under federal or state labor or employment laws.

XIII. Continued Communication Between the Parties During the Pendency of this Order

    a. Continued communication between the Parties is subject to the Confidential Agreement and Protective Order so-ordered on May 5, 2025, ECF No. 75.

    b. On a weekly basis until August 29, 2025, and then on a monthly basis through the date that is six months after the settlement is so-ordered by the Court, DOH shall provide aggregate data to Plaintiffs' counsel on the status and results of the transition. The parties will negotiate the terms of the data-sharing.

    c. The Parties shall reconvene to meet and confer in the event of any delay by the MCOs or LDSS in completing the required outreach.

XIV. Joint Proposed Class Settlement

    a. This Order is being entered into in anticipation of a joint proposed class settlement, the injunctive relief of which encompasses only that set forth herein.

    b. As part of the joint proposed class settlement, the Parties will negotiate the release of claims.

    c. As part of the joint proposed class settlement and after the substantive terms of the settlement have been negotiated, the Parties will negotiate attorneys' fees.

    d. The joint proposed class settlement is contingent on the fairness hearing being held during early August, 2025, such that the joint proposed class settlement is so-ordered no later than August 15, 2025. If the Court does not so-order the joint proposed class settlement by August 15, 2025, the Parties reserve all rights.

    e. The joint proposed class settlement is to be filed no later than June 30, 2025 or a reasonable date agreed to by the Parties and in sufficient time for the fairness hearing to be held during the first week of August, 2025.

XV. Neither Plaintiffs nor Defendant shall be deemed a "prevailing party" for any purpose including, but not limited to, any statutory or contractual claim based upon "prevailing party" status by virtue of this Order.

XVI. Defendant expressly denies any wrongful conduct or liability, or violation of any federal, state, or local statute, ordinance, or law in this Action whatsoever. Any actions taken pursuant to this Order are made solely to avoid the burdens and expenses associated with the Motion for Amended Preliminary Injunction, and this Order and the actions taken pursuant hereto are not to be deemed an admission by Defendant of liability or wrongdoing or that Defendant has violated any of Plaintiffs' rights as contained in the statutes, regulations, Constitutions or other applicable law of the United States or the State of New York, and will not independently give rise to a claim against Defendant or the State of New York.

XVII. This Order shall not in any manner be construed as determinative of the issues or claims raised in this Action or any other proceeding, and shall have no precedential value. In addition, notwithstanding the provisions of any paragraph herein, this Order shall not bind or collaterally estop Defendant or the State of New York (including, but not limited to, any and all present and former agencies, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity) in any pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues raised in said actions or proceedings, or from advancing any and all available defenses.

XVIII. DOH is immediately and preliminarily enjoined from implementing any sections of the CDPAP Amendment to the extent that they are inconsistent with this Order.

XIX. The headings contained in this Order are for ease of reference only and are not a material part of this Order.

XX. Notwithstanding the provisions of this Order, DOH reserves the right to implement, change, or otherwise alter or amend the procedures and requirements of this Order if required by intervening changes in federal or state statutes or regulations that are inconsistent with the terms herein.

_____

UNITED STATES DISTRICT JUDGE

Issued: _____, 2025