# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

LIZA ENGESSER, MARISOL GETCHIUS,
GEETANJALI SEEPERSAUD by her Next Friend
SAVITRI SEEPERSAUD, and MARIA JAIME on
her own behalf and as Next Friend to Y.P.S. AND
C.P., individually and on behalf of all persons
similarly situated, BROOKLYN CENTER FOR
INDEPENDENCE OF THE DISABLED, and
REGIONAL CENTER FOR INDEPENDENT
LIVING,

              Plaintiffs,

      *v.*

JAMES V. MCDONALD, as Commissioner of the
New York State Department of Health,

              Defendant.

Case No. 25-cv-1689

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

I.     SUMMARY OF ALLEGATIONS IN THE COMPLAINT...............................3

     A.     The Medicaid Act Notice and Fair Hearing Requirements .....................3

     B.     Overview of CDPAP.............................................................................3

     C.     The Disruptive Transition to PPL ..........................................................4

II.     SUMMARY OF PROCEDURAL HISTORY AND SETTLEMENT
     NEGOTIATIONS...........................................................................................6

III.     SUMMARY OF SETTLEMENT TERMS........................................................7

     A.     Extended Deadline for PPL Registration and PA Backpay ....................8

     B.     Prior Written Notices of Intended Action to Discontinue CDPAP........8

     C.     Additional Terms ................................................................................10

     D.     Class Members' Release of Claims ....................................................10

     E.     Attorneys' Fees and Costs .................................................................11

ARGUMENT ..........................................................................................................11

IV.     THIS COURT SHOULD GRANT CLASS CERTIFICATION FOR
     SETTLEMENT PURPOSES ...........................................................................11

     A.     The Class Satisfies the Requirements of Rule 23(a).............................12

     B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(2)......15

V.     THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT........15

     A.     Rule 23(e)(2)(A)-(B): Plaintiffs and Class Counsel Adequately
     Represented the Class Through Arms-Length Negotiations ................16

     B.     Rule 23(e)(2)(C): The Relief Provided to the Class Is Adequate .........18

VI.     THE PROPOSED FORM AND METHOD OF NOTICE SATISFY THE
     REQUIREMENTS OF RULE 23(E)(1) ..........................................................23

CONCLUSION........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ................................................................................14

*Alexander A. ex rel. Barr v. Novello*,
210 F.R.D. 27 (E.D.N.Y. 2002) ..........................................................................12

*Caballero by Tong v. Senior Health Partners, Inc.*,
No. 16 CV 0326 (CLP), 2018 WL 4210136 (E.D.N.Y. Sept. 4, 2018) ......................19, 21, 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..........................................................16, 18, 20, 21

*Clark v. Astrue*,
274 F.R.D. 462 (S.D.N.Y. 2011) ........................................................................15

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..........................................................................16, 20

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ..............................................................................11

*EB v. New York City Dep't of Educ.*,
No. 02CV5118ENVMDG, 2015 WL 13707091 (E.D.N.Y. May 19, 2015) ...................17, 23

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) ........................................................................12

*Fero v. Excellus Health Plan, Inc.*,
No. 6:15-CV-06569 EAW, 2022 WL 1292133 (W.D.N.Y. Apr. 29, 2022) .....................24

*Garland v. Cohen & Krassner*,
No. 08–CV–4626, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ...........................21

*Goldberg v. Kelly*,
397 U.S. 254 (1970). 42 C. ..................................................................................3

*In re Grana y Montero S.A.A. Sec. Litig.*,
No. 17CV01105 (LDH)(ST), 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ..................20

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................18

ii

*Guadagna v. Zucker*,
    332 F.R.D. 86 (E.D.N.Y. 2019) ................................................................14

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ...................................................................15

*Ligon v. City of N.Y.*,
    288 F.R.D. 72 (S.D.N.Y. 2013) ..............................................................13

*Marisol A. v. Giuliana*,
    126 F.3d 372 ...........................................................................................12

*Mayer v. Wing*,
    922 F. Supp. 902 (S.D.N.Y. 1996) .........................................................12

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV 935904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .................21

*Morel v. Giuliani*,
    927 F. Supp. 622 (S.D.N.Y. 1995) .........................................................12

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .....................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................23

*Padro v. Astrue*,
    No. 11-CV-1788 CBA RLM, 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) .........................22

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) ...................................................................15

*Parker v. City of New York*,
    No. 15 CV 6733 (CLP), 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) .................................19

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ..............................................................11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ...................................................................14

*Shakhnes v. Daines*,
    740 F. Supp. 2d 602 (S.D.N.Y. 2010), *aff'd in part, vacated in part on other grounds*, 689 F.3d 244 (2d Cir. 2012) ..................................................15

*Shepard v. Rhea*,
    No. 12-CV-7220 (RLE), 2014 WL 5801415 (S.D.N.Y. Nov. 7, 2014) .................................13

*Soberal–Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983)..................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F. 3d 96 (2d Cir. 2005).........................................................................23, 25

*Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*,
    331 F.R.D. 279 (S.D.N.Y. 2019) ........................................................................14

**Statutes**

42 U.S.C. § 1396a(a)(3) .........................................................................................3

42 U.S.C. § 1988(b) ..............................................................................................11

Medicaid Act, 42 U.S.C. § 1396 *et seq.*........................................................ *passim*

N.Y. Soc. Servs. Law § 365-f(4-a-1)(a) ..................................................................4

N.Y. Soc. Servs. Law § 365-f(4-a)(ii) .....................................................................4

N.Y. Exec. Law § 202-a.........................................................................................25

**Other Authorities**

42 C.F.R. § 431.206(b)-(c) ......................................................................................3

42 C.F.R. § 431.210 .................................................................................................3

42 C.F.R. § 431.211 .................................................................................................3

42 C.F.R. §  431.220 ...............................................................................................3

42 C.F.R. §  438.210(c)-(d) .....................................................................................3

42 C.F.R. § 438.402 .................................................................................................3

42 C.F.R. § 438.404 .................................................................................................3

42 C.F.R. § 431.230(a) ............................................................................................3

42 C.F.R. § 431.231(c) .............................................................................................3

18 N.Y.C.R.R. § 505.28(b) ......................................................................................4

Federal Rule of Civil Procedure 23 ................................................................ *passim*

Plaintiffs respectfully submit this memorandum of law in support of their Motion for Certification of Settlement Class and Preliminary Approval of the Class Action Settlement ("Motion").

## PRELIMINARY STATEMENT

Plaintiffs Liza Engesser, Marisol Getchius, Geetanjali Seepersaud, Maria Jaime, Y.P.S., and C.P., on behalf of themselves (the "Named Plaintiffs") and those similarly situated (the "Class Members," and together, the "Class"), Brooklyn Center for Independence of the Disabled ("BCID"), and Regional Center for Independent Living ("RCIL") (collectively, "Plaintiffs"), respectfully submit this <u>unopposed</u> motion seeking this Court's approval of the settlement Plaintiffs have reached with Defendant James V. McDonald, in his capacity as Commissioner of the New York State Department of Health ("DOH"). If approved, this settlement will bring critical relief to thousands of low-income New Yorkers eligible for Medicaid-funded home care services pursuant to the State's Consumer Directed Personal Assistance Program ("CDPAP").

Through CDPAP, the State allows chronically ill, disabled, and/or elderly New Yorkers to select and train the aides who provide extremely personal in-home care, including getting in and out of bed, ambulating, bathing, toileting, eating, and administering medication. In this action, Plaintiffs claim that Defendant's implementation of a change in state law violated Class Members' rights to pre-deprivation notice and a Fair Hearing process before their CDPAP benefits were suspended, terminated, or reduced pursuant to the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

Under the change in state law, an estimated 600 private companies that previously provided "Fiscal Intermediary" ("FI") services—*e.g.*, payroll and human resource services supporting employment and payment of their CDPAP aides—could no longer do so, because the State would select only one, private company to serve as a single, statewide FI. Plaintiffs do not, and have

never, challenged the validity of this change in law. However, Plaintiffs allege DOH's actions to implement the transition—including setting an impossibly short timeline to effect the transition to the statewide FI; failing to communicate clearly and effectively with Class Members and failing to timely remedy associated technological failures—had the practical effect of disrupting Class Members' receipt of critical Medicaid services without first affording them with the process required by federal law. Defendants disagree with these assertions, which would be vigorously litigated were this action to proceed further.

Following zealous litigation and weeks of extensive, in-person, arm's-length negotiations, the Parties have arrived at a proposed class action settlement (the "Settlement"), in which DOH agrees to provide CDPAP Consumers with improved outreach and written notice and the opportunity for a Fair Hearing and aid continuing prior to discontinuing a Consumer's CDPAP benefits.

The Settlement satisfies all the criteria for approval pursuant to Federal Rule of Civil Procedure 23(e), and the Class meets all the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). Plaintiffs thus respectfully request that the Court:

1. Certify a settlement class, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisting of: All Consumers who were in receipt of CDPAP services in March 2025 and (1) who received services from a Prior FI after April 1, 2025, or (2) who (a) were authorized for CDPAP services in the month of June 2025 and (b) did not receive any CDPAP services in the month of June 2025 and (c) did not switch to a different long-term care service.

2. Appoint the New York Legal Assistance Group and Patterson Belknap Webb & Tyler LLP as Class Counsel and the Named Plaintiffs as Class Representatives;

3. Enter the proposed preliminary approval order, attached as Exhibit 3 to the Declaration of Lisa E. Cleary submitted in support of this Motion; and

4. Schedule a fairness hearing to occur no later than August 8, 2025, at which time the Court will consider whether to grant final approval of the Settlement and the stipulated attorneys' fee award.

5. Award such other and further relief as this Court deems just and proper.

## BACKGROUND

### I.    Summary of Allegations in the Complaint

#### A.    The Medicaid Act Notice and Fair Hearing Requirements

Federal law and regulations require the state to provide Medicaid recipients with timely and adequate notice of any intended state action to reduce, suspend, or terminate their Medicaid services, as well as the opportunity for a Fair Hearing process to challenge the intended state action.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.206(b)-(c), 431.210, 431.211, 431.220, 438.210(c)-(d), 438.402, 438.404.  The State must also provide Medicaid recipients who timely request a Fair Hearing with aid continuing, which means continuation of their services pending the outcome of the Fair Hearing process.  *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.230(a), 431.231(c).  Fair Hearing systems must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970).  42 C.F.R. § 431.205(d).

#### B.    Overview of CDPAP

Through CDPAP, New York State permits eligible Medicaid beneficiaries ("Consumers") to directly recruit, hire, supervise, and train their home care worker(s).  Unlike home care workers employed through other Medicaid programs, CDPAP aides, referred to as "Personal Assistants," or "PAs," are exempt from certain licensing requirements and can be friends or members of the Consumer's family (with certain exceptions).  *See* Corrected Class Action Complaint (ECF No. 32, "Compl.") ¶ 65.

PAs provide highly personal support to the Consumers they serve.  For example, PAs may assist Consumers with bathing, dressing, and grooming; toileting, and hygiene; walking; transferring from the bed or chair to a wheelchair; turning and positioning, including overnight;

preparing meals and eating; and changing simple dressings.  18 N.Y.C.R.R. § 505.28(b).  Unlike aides employed by traditional homecare services, PAs may also assist with "home health aide services," defined in New York regulations as "simple health care tasks, personal hygiene services, housekeeping tasks essential to the consumer's health and other related supportive services."  18 N.Y.C.R.R. § 505.28(b)(10).  If deprived of these services—even temporarily—a Consumer risks hospitalization or institutionalization.  Compl. ¶ 71.  At the start of 2025, an estimated 280,000 Consumers and 300,000 PAs participated in CDPAP.  ECF No. 6-5 ¶ 10.

CDPAP is structured so that the Consumer is the employer of his or her PA(s).  To facilitate this employment relationship, Medicaid funding passes through private entities called "Fiscal Intermediaries" to provide payroll and human resources services to the PAs.  *See* N.Y. Soc. Servs. Law § 365-f(4-a)(ii).  Prior to April 1, 2025, over 600 FIs operated in New York.  Compl. ¶ 76.  On April 20, 2024, New York State enacted legislation providing that, effective April 1, 2025, there could only be one FI for the entire state.  S. 8307-C, 2024 Sess. Laws of N.Y., 247th Leg. Sess., Ch. 57 (Apr. 20, 2024) (the "CDPAP Amendment"); *see also* N.Y. Soc. Servs. Law § 365-f(4-a-1)(a).  Thus, the CDPAP Amendment does not alter any Consumer's eligibility or authorization to receive CDPAP services.  It does, however, change the mechanism by which PAs are paid for their services to Consumers.  On September 30, 2024, Governor Hochul announced that Public Partnerships, LLC ("PPL") had been chosen as the single, state-wide FI.  Compl. ¶ 100.

C.      The Disruptive Transition to PPL

In January 2025, DOH announced that each CDPAP Consumer must proactively enroll with PPL, and that the deadline for Consumers to complete the enrollment process was March 28, 2025.  Compl. ¶¶ 114, 133.  As a result, over 280,000 Consumers and their 300,000 PAs were given just over two months to enroll with PPL.  *See* ECF No. 6-5 ¶ 10.

Plaintiffs allege that this brief transition period proved disastrous. In this action, initiated just two days before the March 28 deadline, Plaintiffs allege that tens of thousands of Consumers had been unable to complete their own enrollment or register their PAs due to PPL's overly complex registration process, technology glitches on PPL's platform, and poor communication from PPL representatives. Compl. ¶¶ 117-124, 127-132.

Under DOH's transition plan, successful enrollment by a Consumer *and* successful registration by the Consumer's PAs was required for payment for CDPAP services to continue. But, according to Plaintiffs, these information and access barriers meant it was virtually impossible for the remaining tens of thousands of unregistered Consumers and PAs to meet these requirements in the two days remaining before the deadline. Moreover, although DOH made some efforts to notify CDPAP participants of the transition to PPL, Plaintiffs allege none of them adequately explained that a CDPAP Consumer who does not enroll or whose PAs do not register with PPL by March 28 would cease receiving CDPAP services on April 1. Compl. ¶¶ 136, 139, 140-142. In opposing Plaintiffs' applications for injunctive relief in this action, DOH's position has been that CDPAP Consumers continued to be authorized for CDPAP services after April 1, 2025, but that CDPAP Consumers who did not enroll with PPL by April 1 would experience an interruption in worker payroll if their PAs were not registered with PPL. Plaintiffs therefore claimed in this action that DOH's communications failed to inform Consumers of their right to a Fair Hearing or aid continuing. *Id.* Therefore, Plaintiffs alleged that Class Members who were not fully enrolled and/or whose PAs were not fully registered with PPL faced an imminent suspension, reduction, or termination of their CDPAP services on April 1 without prior notice or an opportunity to be heard as required by the Medicaid Act and the Due Process Clause of the

Fourteenth Amendment. In this action, Defendants have disagreed with these assertions, and indicated they would be aggressively litigated were this action to proceed further.

## II.      Summary of Procedural History and Settlement Negotiations

On March 26, 2025, Plaintiffs filed the Complaint, moved for the issuance of a temporary restraining order ("TRO") and a preliminary injunction ("PI") enjoining Defendant from implementing the CDPAP Amendment unless and until Class Members could receive the requisite notice and Fair Hearing rights.  ECF Nos. 1, 4.  On March 31, 2025, following oral argument, the Court issued a TRO enjoining Defendant from implementing those portions of the CDPAP Amendment that disallowed FIs other than PPL from "servicing those CDPAP participants who have not yet registered with PPL."  ECF No. 37 at 2.

On April 4, following additional briefing by the Parties regarding Plaintiffs' motion for a PI and an appearance before the Court, the Court ruled that the TRO would remain in effect while the parties worked to jointly propose a consent PI for the Court's review and approval.  *See* Minute Entry dated Apr. 4, 2025.  On April 9, the Parties jointly submitted a proposed PI, which the Court so-ordered on April 10.  *See* ECF Nos. 59, 62 (the "Consent PI").  The Consent PI provided various protections to Consumers affected by the transition to PPL, including that they could elect to continue receiving services from their former FIs, instead of PPL, Consent PI ¶¶ II.d.iii; II.e.iii, and that PAs were eligible to be paid for hours worked between April 1 and when they successfully registered with PPL, up to the Consent PI's June 6 expiration date. Consent PI ¶¶ II.c.ii; II.f.i.3.  Moreover, the June 6 expiration date of the Consent PI achieved the tremendous benefit of allowing *tens of thousands* of Consumers more time to transition to PPL, lessening or eliminating any disruption to their services.

Notwithstanding these benefits, as time passed, Plaintiffs came to believe that many CDPAP Consumers and their PAs were struggling to transition to PPL and would not be

successfully transitioned by June 6. Accordingly, on May 15, 2025, Plaintiffs filed a letter requesting a pre-motion conference in anticipation of moving to amend the Consent PI. ECF No. 77. The Court granted Plaintiffs' application and held a pre-motion conference on May 20. ECF No. 79. At that time, the Court extended the PI until June 20. ECF No. 86. Plaintiffs then filed their motion to amend the Consent PI, which Defendant opposed. ECF Nos. 93-109.

During this time, the Parties began to negotiate a resolution of this case. These settlement discussions spanned several weeks and involved the exchange of multiple term sheets outlining potential settlement terms, an all-day, in-person, settlement negotiation held at the offices of Patterson Belknap Webb & Tyler LLP, and exchanging numerous drafts of a proposed Settlement Agreement. Cleary Decl. ¶ 8. These extensive arm's-length negotiations have resulted in the Parties' proposed Settlement Agreement, which the Parties have submitted to the Court along with this Motion.

On June 19, the Parties appeared before the Court to discuss Plaintiffs' motion to amend the Consent PI. ECF No. 114. In light of the Parties' ongoing settlement negotiations, the Court held Plaintiffs' motion to amend the Consent PI in abeyance, extended the current PI to July 1, and set a June 26, 2026 deadline for the Parties to jointly file a further amended PI. *Id.* The parties filed their proposed amended PI on June 26, which the Court so-ordered on June 27. ECF No. 118 ("Amended PI").

## III.   Summary of Settlement Terms

Upon approval, the Settlement would resolve all claims against Defendant in this action by providing substantially all the relief sought by Plaintiffs: additional time to transition to PPL, Medicaid Act-compliant notice, and the opportunity for a Fair Hearing and aid continuing prior to any reduction, suspension, or termination of CDPAP services.

## A. Extended Deadline for PPL Registration and PA Backpay

Under the Settlement, Consumers and PAs will have until August 1, 2025, to register with PPL.  Ex. 1 to the Cleary Declaration ("the Settlement Agreement") ¶ 1(bb).  This final deadline is more than four months later than the original April 1 deadline set by DOH.  In addition, PAs who completed registration with PPL by July 1 can seek back payment for hours worked between April 1 and July 1.  Amended PI ¶¶ II(c)(iii), II(d)(iii).

## B. Prior Written Notices of Intended Action to Discontinue CDPAP

Most importantly, DOH has agreed to issue a series of written communications to Consumers.  The specific communications to be received by an individual Consumer depend on their registration status with PPL and whether they are authorized for CDPAP services through a Managed Long Term Care Plan ("MLTC"), Mainstream Managed Care ("MMC"), or a Local District of Social Services ("LDSS").  However, every Consumer not registered with PPL by the August 1 deadline—and therefore in jeopardy of losing their CDPAP services—will receive a written communication informing them of the impending deadline and how to register with PPL or another long-term care service.  Settlement Agreement ¶¶ 5(c)(i), 5(d)(i), 5(e)(i)[1]  Even those Consumers presently registered with PPL will receive a letter reminding them of how to contact PPL or DOH for assistance and that "Facilitators"—former FIs that subcontract with PPL—are available to support them with their ongoing, day-to-day needs in utilizing CDPAP services. Settlement Agreement ¶ 5(b)(i).[2]  Plaintiffs' counsel will be given an opportunity to review and

---

[1] Letters to Consumers registered with a prior FI under the Consent PI will also state that, if they complete registration by the August 1 deadline, and their PAs complete registration by August 15, their PAs will be eligible for backpay for hours worked between August 1 and August 15, notwithstanding that the PAs were still completing their registration during this two-week window. Settlement Agreement ¶ 5(c)(iv).

[2] The letter to these Consumers will attach a list of Facilitators as well as a form for Consumers to select a Facilitator.  Settlement Agreement ¶ 5(b)(i)(1). DOH will also post a copy of this letter publicly on the DOH website, so that Consumers can continue to access it.  Settlement Agreement ¶ 5(b)(i)(4).  DOH will also instruct PPL to make specialized resources available for Consumers with particular needs, including a website page that

comment on all written notices to Consumers. Settlement Agreement ¶ 5(g)(iii). The Settlement requires DOH to send these written communications to the Consumer's designated representative, as well as the Consumer, to maximize the likelihood that the Consumer will receive the information. Settlement Agreement ¶ 5(g)(i).

Following these initial, informational letters, a written, Medicaid Act-compliant notice will be sent to every Consumer not registered with PPL by the August 1 deadline, as follows:

- <u>Consumers Enrolled in an MLTC & Authorized for CDPAP but No Other Long-Term Care Service</u>: If any such Consumer does not register by the August 1 deadline, she will be mailed a Notice of Intent to Disenroll letter. Settlement Agreement ¶ 5(d)(iii). This notice will be followed by a second, formal, Disenrollment Notice letter that informs Consumers of their Fair Hearing rights. *Id.* ¶ 5(d)(iv)(1). DOH will also instruct MCOs to make at least 10 additional efforts to contact these Consumers, at least one of which must be a home visit (with a second home visit if no one answers the door) and at least one of which must try to reach the Consumer's authorized representative, before the August 1 deadline. *Id.* ¶ 5(d)(ii).

- <u>Consumers Registered with a Prior FI Under the Consent PI or Enrolled in MLTC for CDPAP and Another Long-Term Care Service, MMC, or LDSS</u>: If any such Consumer does not register by the August 1 deadline, she will be mailed a written Discontinuation of Services Notice citing the failure to comply with an administrative requirement that informs the Consumer of her Fair Hearing rights. *Id.* ¶ 5(e)(ii).

If a Consumer facing disenrollment from their MLTC or discontinuance from their CDPAP services requests a Fair Hearing, the Hearing will be scheduled on a priority basis. Settlement Agreement ¶¶ 5(d)(iv)(2), 5(e)(iii). This request will also stop the MTLC disenrollment process or service discontinuance process, as applicable. Settlement Agreement ¶¶ 5(d)(iv)(2), 5(e)(iii). DOH will also reach out to Consumers who request Fair Hearings to see if the Consumer can be expeditiously registered with PPL or switched to another long-term care service. Settlement Agreement ¶¶ 5(d)(iv)(3), 5(e)(iv).

---

identifies Facilitators with expertise in serving specialized populations (*e.g.*, minor children, with traumatic brain injuries). Settlement Agreement ¶ 5(b)(ii).

If any Consumer facing MLTC disenrollment requests reinstatement or takes other actions to indicate their desire to continue with CDPAP, the disenrollment process will be halted and effort will be taken to enable the Consumer to return to their prior MLTC, as applicable. Settlement Agreement ¶ 5(d)(iv)(5).

## C. Additional Terms

The Settlement includes additional terms intended to support CDPAP Consumers both during the transition to PPL and in the course of their ongoing use of CDPAP.

Facilitators will be granted access to the PPL system equivalent to that of PPL customer service representatives and provided additional training on how to use it. Settlement Agreement ¶¶ 5(f)(i), (ii). If an issue arises that a Facilitator cannot resolve, they will have the ability to flag issues for expedited follow up by PPL, as well as access to a dedicated Facilitator liaison team at PPL. *Id.* ¶¶ 5(f)(iii), (iv).

DOH will keep the dedicated phone line it established for CDPAP Consumers open until December 31, 2025, and thereafter will train the existing Medicaid consumer services hotlines to handle calls from CDPAP Consumers. Settlement Agreement ¶ 5(a)(vii)(c). In addition, DOH will issue guidance to MCOs and LDSS on several important topics that support continuity of care, including clear deadlines for service authorization renewals; instructions on how to provide aid continuing; and the proper procedure to follow when a Consumer has lost her capacity to self-direct. *Id.* ¶ 5(h). Finally, DOH will regularly update Plaintiffs' counsel on the status and results of the transition for six months following approval of the Settlement, which will enable Plaintiffs' counsel to monitor the transition's progress and any issues that arise. *Id.* ¶ 6.

## D. Class Members' Release of Claims

In exchange for the relief they are receiving pursuant to the Settlement, the Class Members will release Defendant, DOH, and the State of New York from all manner of claims

concerning the conduct challenged in this action in violation of the Medicaid Act, 42 U.S.C. §

1396 and its implementing regulations, and the United States Constitution, or any claim for

attorneys' fees, costs, or other expenses, with the exception of reasonable attorneys' fees to be

paid by DOH and agreed by the Parties, as discussed *infra*.

### E.    Attorneys' Fees and Costs

The Parties will agree on the attorneys' fees and costs that Defendant will pay Plaintiffs

pursuant to the Civil Rights Attorney's Fees Awards Act of 1976. *See* 42 U.S.C. § 1988(b). The

Parties will file papers setting forth their agreement in advance of the fairness hearing.

Importantly, however, any fee award in this action would not negatively impact the Class

Members in any respect because the Plaintiffs have sought only declaratory and injunctive relief

in the Complaint and thus a fee award by Plaintiffs is wholly separate from the relief provided to

the Class. Cleary Decl. ¶ 21.

## ARGUMENT

## IV.    THIS COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

"Assessment of class certification in the settlement context invokes a 'responsibility

imposed upon [the courts] to exercise independent judgment for the protection of class absentees.'"

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig*., 330 F.R.D. 11, 51

(E.D.N.Y. 2019) (quoting *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir.

1980)). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a

court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche*

*Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). "The Second Circuit has emphasized that Rule 23

should be given liberal rather than restrictive construction, and . . . the Second Circuit's general

preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quotations omitted).

Courts have frequently certified classes of applicants and recipients of public benefits seeking to challenge a policy that reduces their public benefits or delays access to them. *See e.g.*, *Morel v. Giuliani*, 927 F. Supp. 622, 634 (S.D.N.Y. 1995) (certifying class of recipients of federal and state public benefits who suffered the protracted denial of aid continuing benefits); *Mayer v. Wing*, 922 F. Supp. 902, 907–08 (S.D.N.Y. 1996) (certifying class of Medicaid recipients of personal care services whose care was threatened with reduction or termination by city and state agencies even though their need had not changed).

Because the proposed Class satisfies the requirements of Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court should certify the settlement Class consisting of all Consumers who were in receipt of CDPAP services in March 2025 and (1) who received services from a Prior FI after April 1, 2025, or (2) who (a) were authorized for CDPAP services in the month of June 2025 and (b) did not receive any CDPAP services in the month of June 2025 and (c) did not switch to a different long-term care service.

### A. The Class Satisfies the Requirements of Rule 23(a)

#### i. The Class Is So Numerous That Joinder of All Class Members Is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has held that the numerosity requirement is presumptively satisfied where there are at least forty class members. *See, e.g.*, *Marisol A. v. Giuliana*, 126 F.3d 372, 376 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1997)); *Alexander A. ex rel. Barr v. Novello*, 210 F.R.D. 27, 33 (E.D.N.Y.

2002) (citation omitted). This Class is estimated to include thousands of Consumers, which is many orders of magnitude more than necessary to satisfy the numerosity requirement.

ii. *The Class Members' Claims Share Common Issues of Law and Fact.*

Rule 23(a)(2) requires that the claims of a proposed class raise common questions of law or fact. To satisfy this criterion, Plaintiffs' "claims must depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions of law and fact have been central to the litigation of this case, and they include, *inter alia*, whether Defendant's transition plan was adequate and whether any alleged acts of Defendant violated due process rights under the Medicaid Act, 42 U.S.C. § 1396 *et seq*., and its implementing regulations, as well as the Due Process Clause. Moreover, "[w]hen the plaintiff class seeks to enjoin a practice or policy, rather than individualized relief, commonality is assumed." *Shepard v. Rhea*, No. 12-CV-7220 (RLE), 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014) (citing *Nat'l Law Ctr. on Homelessness & Poverty, R.I. v. New York*, 224 F.R.D. 314, 324 (E.D.N.Y. 2004); *see also Ligon v. City of N.Y.*, 288 F.R.D. 72, 82 (S.D.N.Y. 2013) (commonality satisfied where "plaintiffs and the putative class members were allegedly subjected to the same unlawful conduct . . . under the auspices of a single [government] program"). Commonality is satisfied here.

iii. *Named Plaintiffs' Claims Are Typical of the Settlement Class.*

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of those of the other class members. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[T]ypicality may be assumed where the nature of the relief sought is injunctive and declaratory." *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 293 (S.D.N.Y. 2019) (quoting *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001)). Here, all the Named Plaintiffs are subject to the class-wide conduct that this action challenges: they are CDPAP Consumers, they are required to enroll with PPL and have their PAs registered to keep their benefits, and they allege that they have not received timely and adequate notice of their rights to a fair hearing to challenge the suspension or termination of their benefits and to aid continuing while that fair hearing remains pending. Such circumstances satisfy typicality. *See Guadagna v. Zucker*, 332 F.R.D. 86, 95 (E.D.N.Y. 2019) ("Here, the Plaintiff and the putative class members were subject to the same course of conduct by the DOH, and will proceed on virtually the same legal theories, satisfying the typicality inquiry.").

        *iv.*     *The Named Plaintiffs and Their Counsel Adequately Represent the Class.*

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class." This requirement consists of two elements: (1) the interest of the class representatives must coincide with the interests of the class; and (2) class counsel must be qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both elements are satisfied here. First, the Named Plaintiffs, as CDPAP Consumers whose services have been affected by Defendant's conduct, have the same interest as other Class Members in obtaining relief, and seek relief that will benefit the Class as a whole. There are no conflicts of interest between Named Plaintiffs and other Class Members. Second, class counsel—the New York Legal Assistance Group ("NYLAG") and Patterson Belknap Webb & Tyler LLP ("PBWT")—have extensive

experience litigating class actions on behalf of vulnerable populations.  Cleary Decl. ¶¶ 16-18; Jois Decl. ¶¶ 4-7.

## B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(2)

A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  That standard is met in these circumstances.  The DOH actions that Plaintiffs challenged in the Corrected Class Action Complaint applied to all members of the proposed Class.  Courts in this Circuit have routinely held that cases like this one—alleging systemic acts or failures to act by a government entity—are uniquely appropriate for class certification under Rule 23(b)(2).  *See, e.g.*, *Shakhnes v. Daines*, 740 F. Supp. 2d 602, 628 (S.D.N.Y. 2010) ("[C]ivil rights actions . . . alleging systemic administrative failures of government entities [ ] are frequently granted class action status under Rule 23(b)(2)."), *aff'd in part, vacated in part on other grounds*, 689 F.3d 244 (2d Cir. 2012); *Clark v. Astrue*, 274 F.R.D. 462, 471 (S.D.N.Y. 2011) (approving nationwide class under 23(b)(2) in challenge to generally applicable Social Security Administration policy).  Indeed, a class action is the only practical way for Class Members to vindicate their rights, and the relief that the parties have negotiated will benefit every member of the Class by helping to protect their statutory and Constitutional rights.  Thus, certification of the proposed class under Rule 23(b)(2) is necessary and appropriate.

## V.  THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

Judicial policy favors settling class actions.  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).  To grant approval of a class settlement under Rule 23(e), a court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion."  *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

To do so, Fed. R. Civ. P. 23(e)(2) requires the court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats Class Members equitably relative to each other. The Second Circuit has set forth nine factors (the "*Grinnell* factors") to use in conducting this analysis: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Courts apply these and the Rule 23(e)(2) factors "in tandem" to "focus. . . on the core concerns of procedure and substance that should guide the decision [] whether to approve the proposal." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020).

## A. Rule 23(e)(2)(A)-(B): Plaintiffs and Class Counsel Adequately Represented the Class Through Arms-Length Negotiations

To find a settlement process fair, the court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiff['s] counsel . . . possessed the experience and ability . . . necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (cleaned up) ("The . . . Court determines a settlement's fairness by examining the negotiating process leading up to [it]."). Rule 23(e)(2)(A) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class." This is a "procedural" inquiry, and "the focus . . . is on the actual performance of counsel

acting on behalf of the class." Advisory Committee Note, Federal Rule 23(e)(2)(A-B). Rule 23(e)(2)(B) also requires that "the proposal [have been] negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(B), *i.e.*, without collusion and fully "informed." *EB v. New York City Dep't of Educ.*, No. 02CV5118ENVMDG, 2015 WL 13707091, at *1 (E.D.N.Y. May 19, 2015).

All of these requirements are satisfied here. *First*, Counsel worked tirelessly to ensure fruitful settlement negotiations, which were conducted at arm's-length and spanned the entirety of the case—even while counsel litigated key issues. Cleary Decl. ¶ 6. The negotiations involved eight weeks of intensive work by counsel, with difficult concessions and compromises on both sides. *Id.* ¶¶ 6-10. These negotiations entailed numerous meetings and the exchange of dozens of drafts of proposals, stipulations, settlement language, and related questions. *Id.* ¶¶ 6-9.

The proposed settlement goes to the heart of Plaintiffs' claims, including the sending of letters informing Class Members of the deadline to transition to PPL and Medicaid Act-compliant notices with fair hearing and aid continuing rights before Class Members lose services. The proposed settlement goes further, however, also providing: (a) special procedures for registering and onboarding Class Members and PAs being served by prior FIs; (b) robust outreach to Consumers, including home visits for those who are not currently receiving services; (c) improved training for and capabilities of Facilitator staff; (d) updated guidance to MCOs and LDSS; and (e) significant data exchange between DOH and Class Counsel. *See supra* Section III. The hard-fought negotiations were conducted by experienced and capable attorneys with substantial expertise in class-action and benefits litigation, as well as in Defendant's Medicaid programs. Cleary Decl. ¶ 16-18; Jois Decl. ¶ 4-7.

*Second*, the Named Plaintiffs also vigorously represented the class. They attended meetings with counsel, shared intimate details of their lives, and worked closely on eight declarations in support of class injunctive relief. Jois Decl. ¶ 10-12. The Named Plaintiffs did so while working to resolve their own ongoing, and often complex issues receiving CDPAP services. *Id.* ¶ 12. Named Plaintiffs also provided feedback on the proposed settlement itself. *Id.* ¶ 10.

Given Plaintiffs' extensive settlement efforts, Class Counsel's effective advocacy, and the Named Plaintiffs' intensive engagement in the case, Rule 23(e)(2)(A) and (B) are satisfied.

### B.     Rule 23(e)(2)(C): The Relief Provided to the Class Is Adequate

Rule 23(e)(2)(C)(i) asks the Court to consider the "costs, risks, and delay of trial and appeal," and overlaps with the nine *Grinnell* factors. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i). Here, the relief provided is more than adequate because it addresses the central harms alleged, and proceeding to trial would have involved extensive time and resources, as well as significant litigation risk.

### 1.     *The complexity, expense, and likely duration of the litigation (Factor 1)*

The complexity of this litigation is evident, both with respect to each Named Plaintiff's claims and to DOH's practices as a whole. Each Named Plaintiff's claim based on unlawful termination of services constantly evolved, as they and their PAs worked through newly-surfacing barriers within PPL's systems. ECF No. 7-11, 97, 100, 102; Jois Dec. ¶¶ 11-12. Understanding these claims requires knowledge of DOH's highly complex Medicaid program, which involves multiple entities and State-specific procedures for providing services. *Cf.* ECF No. 106.

In addition, continued litigation would have required extensive additional motion practice and potentially, discovery and trial. Cleary Decl. ¶ 12. The Court has not yet ruled on Plaintiffs'

Motion for Class Certification, which Plaintiffs would refile if litigation were to continue. *Id.* Both parties were also poised to file dispositive motions, ECF Nos. 83, 88, which the Court may have considered at the same time or separately over the course of many months. To the extent the matter proceeded to trial, that would have involved significant preparation and the potential for additional delays to comport with the Court's schedule. And any judgment likely would be appealed, further delaying resolution. *Parker v. City of New York*, No. 15 CV 6733 (CLP), 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017).

Given that Plaintiffs' claims relate to receipt of critical Medicaid services which they otherwise could not afford, this prolonged timeframe would have come at great cost—namely, continued gaps in such services which could lead to health problems, hospitalization, or institutionalization. Cleary Decl., ¶ 12. In light of these concerns, the complexity, expense, and likely duration of the litigation weigh heavily in favor of approving the settlement. *See Caballero by Tong v. Senior Health Partners, Inc*., No. 16 CV 0326 (CLP), 2018 WL 4210136, at *12 (E.D.N.Y. Sept. 4, 2018) (preliminarily approving class action settlement in light of risks and length of time associated with additional litigation, where plaintiffs claimed unlawful deprivation of home health services).

### 2. The reaction of the Class (Factor 2)

The Parties are not able to evaluate the reaction of the Class Members to the proposed settlement because the notice of the proposed settlement has not yet been distributed and the time for objections has not yet passed. Thus, this Grinnell factor should be neutral. *See Parker*, 2017 WL 6375736, at *6. Named Plaintiffs, as well as institutional plaintiffs BCID and RCIL, have expressed support for the terms of the settlement. Jois Decl. ¶¶ 10, 13.

### 3. *The stage of the proceedings and the amount of completed discovery (Factor 3)*

As to the third *Grinnell* factor, the relevant inquiry is whether a sufficient factual investigation was conducted to afford the Court the opportunity to "intelligently make . . . an appraisal of the Settlement." *In re Grana y Montero S.A.A. Sec. Litig.*, No. 17CV01105 (LDH)(ST), 2021 WL 4173684, at *13 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted*, No. 17-CV-1105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) (cleaned up). However, courts routinely find this factor satisfied through the informal "exchange of documents and other information." *D'Amato*, 236 F.3d at 87; *In re Grana y Montero*, 2021 WL 4173684, at *13.

Here, the parties' weekly meetings with respect to the PPL transition and individual Consumers offered extensive insight into the veracity of Plaintiffs' allegations, as well as Defendant's defenses and counterarguments. Cleary Decl. ¶ 9. In addition, both parties repeatedly filed transition-related updates, including from DOH and PPL's websites as well as news outlets and other media reports. *E.g.*, ECF Nos. 6-7, 6-8, 6-9, 6-10, 6-12, 6-16, 6-17, 96-1; *see also* 106. All the while, Plaintiffs' counsel investigated the status of the Named Plaintiffs' services as well as problems barring PPL enrollment or PA payment for others in the CDPAP community. Jois Decl. ¶ 11. This robust investigation allowed Plaintiffs' counsel to tailor the remedies in the settlement to the needs affecting individual Consumers. *In re Grana y Montero*, 2021 WL 4173684, at *13.

### 4. *The risks of establishing liability and entitlement to relief (Factors 4 and 5)*

Class Counsel believe that the Class has a strong case and would prevail at summary judgment or trial. Cleary Decl. ¶ 12. However, Defendant denied all allegations and agreed to the Settlement with the caveat that "Defendant expressly denies any wrongful conduct or

liability, or violation of any federal, state, or local statute, ordinance, or law in the Action whatsoever." *See* Settlement Agreement at 1. Defendant has also expressed in papers opposing preliminary injunctions in this case that DOH would prevail on his asserted defenses to Plaintiffs' claims. There is thus uncertainty about whether Plaintiffs would prevail at a trial. When determining whether a settlement is adequate, "a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-Ray Film Antitrust Litig.*, No. CV 935904, 1998 WL 661515, at *12 (E.D.N.Y. Aug. 7, 1998) (cleaned up). The uncertain outcome of this matter counsels in favor of approving the proposed settlement. *See Caballero*, 2018 WL 4210136, at *12.

### 5.  *The risks of maintaining the class action through the trial (Factor 6)*

The sixth *Grinnell* factor "weighs in favor of settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, No. 08–CV–4626, 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Plaintiffs moved for class certification when they commenced this action. ECF No. 19. This Court terminated the motion as premature without a pre-motion conference. (March 27, 2025 Minute Entry). If this Settlement Agreement were not approved, Plaintiffs would refile their Motion for Class Certification, and presumably Defendant would oppose that motion. Cleary Decl. ¶ 12. Whichever Party did not prevail would likely appeal, a process that would require additional time and extensive briefing by all Parties. These risks are real, especially as compared to the certainty of all Class Members benefiting immediately from the critical relief that would be provided by the Settlement Agreement. The risks of maintaining the class weigh in favor of approving the settlement, as it would eliminate "risk, expense, and delay." *Garcia*, 2012 WL 5305694, at *5.

### 6. *The Remaining Grinnell Factors*

The remaining *Grinnell* factors—the risks of establishing damages, the ability of Defendant to withstand greater judgment, and the range of reasonableness of the settlement in light of the risks of litigation and the best possible recovery—are not particularly applicable here because Plaintiffs do not seek damages. *Caballero*, 2018 WL 4210136, at *12. In such circumstances, courts frequently consider these factors together "as part of a larger determination of whether the settlement is reasonable." *Padro v. Astrue*, No. 11-CV-1788 CBA RLM, 2013 WL 5719076, at *7 (E.D.N.Y. Oct. 18, 2013). A proposed settlement is reasonable if it "provides a meaningful benefit to the class when considered against the obstacles to proving plaintiffs' claims." *Caballero*, 2018 WL 4210136, at *12.

Here, the proposed settlement offers Class Members the most important relief sought in Plaintiffs' Complaint: Medicaid Act-compliant notice, with a meaningful opportunity to be heard with aid continuing, as well as sufficient time to transition to PPL or another care program with minimal gaps in services. Compl. at 40 (prayer for relief). It also offers a variety of other benefits to Consumers, as explained *supra* at Section III. Indeed, the Settlement terms go beyond the relief Plaintiffs originally requested, and give Plaintiffs' counsel assurance that Class Members will have the support required to navigate the PPL transition while maintaining continuity of care. *See* Cleary Decl. ¶ 13; *see also supra* Section III. Therefore, Plaintiffs are persuaded that the Settlement Agreement provides relief to Class Members as quickly and efficiently as possible.

The Settlement provides the Class valuable relief addressing the specific harms alleged in the Complaint. If accepted, the Settlement Agreement will also improve DOH and PPL's provision of services as a whole. The Settlement Agreement therefore represents a significant achievement, particularly in light of the hurdles and length of time it would take to obtain

additional, class-wide injunctive relief. For all of these reasons, the certainty, immediacy, and tangibility of the proposed relief weigh in favor of approval. *Padro*, 2013 WL 5719076, at *7.

## VI. THE PROPOSED FORM AND METHOD OF NOTICE SATISFY THE REQUIREMENTS OF RULE 23(e)(1)

To evaluate the adequacy of a settlement notice in class actions, courts consider whether the proposed notice complies with Fed. R. Civ. P. 23(e) as well as the Due Process Clause. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F. 3d 96, 114 (2d Cir. 2005). Rule 23(e)(l) requires that for class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Due Process Clause also imposes a reasonableness standard, focused on whether the notice will "convey the required information" and "afford a reasonable time for those interested to . . . appear[]." *Soberal–Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

"There are no rigid rules to determine whether" a proposed notice "satisfies [these] requirements." *Wal-Mart Stores*, 396 F. 3d at 114. Indeed, the method of notice in class actions brought under Rule 23(b)(2) is left to the discretion of the Court. Fed. R. Civ. P. 23(c)(2)(A). Still, the notice must fairly give prospective class members notice of the settlement, information as to the terms of the settlement, and explain the options available to the class members. *Wal-Mart Stores*, 396 F. 3d at 114. Notice is "adequate if it may be understood by the average class member." *Id*. The adequacy of notice to a Rule 23(b)(2) class is particularly "flexible," and in many cases does not require individualized notice. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 n.19 (S.D.N.Y. 1996); *e.g.*, *EB v. New York City Dep't of Educ.*, No. 02CV5118 (ENV)(MDG), 2015 WL 13707091, at *2 (E.D.N.Y. May 19, 2015) (approving

notice mechanism for Rule 23(b)(2) class involving posting of notice but no individualized notices).

The proposed manner of providing notice to Class Members readily satisfies these requirements.   To maximize protection to Class Members, the notice will be disseminated by several means: (1) directly to Class Members and their Designated Representatives, if applicable, by text and/or email; and (2) by posting on websites and in physical locations frequented by CDPAP Consumers, including PPL, Facilitator, and LDSS offices.  DOH and NYLAG will also send the notice to Medicaid and Medicaid-related advocates' listservs, including those of Named Plaintiffs BCID and RCIL, for wider dissemination.  Settlement Agreement ¶ 4(c).  NYLAG's dedicated CDPAP Hotline will serve as another informational resource for those interested in the Settlement.

This multi-pronged approach is necessary to give Class Members: (1) the opportunity to benefit from the relief provided by the Settlement as soon as possible; and (2) sufficient time to consider the Settlement and any objections.  DOH commits to accomplishing these methods of notice within ten days of any order preliminarily approving the Settlement.  Settlement Agreement ¶ 4(c).  If the Court issues such an order this coming week and holds a Fairness Hearing on or before August 8, 2025, this plan will give Class Members three weeks to access, review, and consider the notice, along with the Settlement terms.  Given the compressed timeframe for outreach and other relief under the Settlement, *see* Settlement Agreement ¶ 5, and DOH's representation that the proposed methods are the only means by which it can timely effectuate notice in these unique circumstances, this plan is reasonable.  *See Fero v. Excellus Health Plan, Inc*., No. 6:15-CV-06569 EAW, 2022 WL 1292133, at *4 (W.D.N.Y. Apr. 29,

2022) (notice for Rule 23(b)(2) class via websites and a press release was "best notice . . . practicable under the circumstances").

The proposed notice also sufficiently informs the Class of essential background on this litigation and their rights under the Settlement Agreement. *Wal-Mart Stores*, 396 F. 3d at 114. The form describes the nature, history and status of the litigation, the claims alleged, and the definition of the Class. Cleary Decl. Ex. 2. It also explains Class members' rights under Rule 23 and how to object to the Settlement. *Id.* Per the New York State Language Access Law, N.Y. Exec. Law § 202-a, the notice will be available in the 12 most commonly spoken non-English languages in New York. Settlement Agreement ¶ 4(c)(i). The form will include the date, time, and Zoom link to the Fairness Hearing, which will enable Class Members all over the State to attend notwithstanding any difficulties they may face traveling to the Court. For all of the above reasons, the proposed notice satisfies all of the requirements of Rule 23 and the Due Process Clause.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their unopposed motion to certify the Class for purposes of settlement and grant preliminary approval of the Settlement.

Dated: July 5, 2025
New York New York

Respectfully submitted,

By: */s/ Lisa E. Cleary*
    Lisa E. Cleary
    Caitlin Ross
    Jacqueline Brandon
    Emma G. Brill
    PATTERSON BELKNAP WEBB & TYLER LLP
    1133 Avenue of the Americas
    New York, New York 10036
    Telephone No.: (212) 336-2000
    Facsimile No.: (212) 336-2222

    LISA RIVERA, ESQ.
    NEW YORK LEGAL ASSISTANCE GROUP
    100 Pearl Street, 19th Floor
    New York, New York 10004

    */s/ Julia Russell*
    ELIZABETH JOIS, Of Counsel
    JULIA RUSSELL, Of Counsel
    (212) 613-5093
    ejois@nylag.org
    jrussell@nylag.org

    *Attorneys for Plaintiffs*