UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. AND C.P., individually and on behalf of all persons similarly situated, BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING,

            Plaintiffs,

-against-

JAMES V. MCDONALD, as Commissioner of the New York State Department of Health,

            Defendant.

Case No: 25-cv-1689

**DECLARATION OF
LISA E. CLEARY**

---

I, Lisa E. Cleary, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney duly admitted to appear in this Court and a member of the law firm of Patterson Belknap Webb & Tyler LLP ("Patterson Belknap"), which, along with the New York Legal Assistance Group ("NYLAG"), represents Plaintiffs Liza Engesser, Marsiol Getchius, Geetanjali Seepersaud by her Next Friend Savitri Seepersaud, and Maria Jaime, on her own behalf and as Next Friend to Y.P.S. and C.P., individually (collectively, the "Named Plaintiffs") and on behalf of all persons similarly situated (the "Class Members" and together, the "Class"), Brooklyn Center for Independence of the Disabled ("BCID"), and Regional Center for Independent Living ("RCIL").

2. I respectfully submit this declaration in support of Plaintiffs' motion for

1

certification of a settlement class, appointment of class representatives and class counsel, preliminary approval of a class action settlement, and approval of notice to the Class.

3. Capitalized terms used but not defined herein have the meanings assigned to such terms in Plaintiffs' Memorandum of Law In Support of Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement.

4. Attached as exhibits hereto are true and correct copies of the following documents:

| Exhibit 1 | Stipulation of Class Action Settlement, General Release, and Order of Dismissal dated July 4, 2025 |
|---|---|
| Exhibit 2 | Form of Notice of Class Action Settlement |
| Exhibit 3 | [Proposed] Order Certifying Settlement Class, Appointing Class Counsel and Class Representatives, Preliminarily Approving Settlement, Approving Class Notice, and Scheduling Fairness Hearing |

5. Plaintiffs have entered a Stipulation of Settlement, General Release, and Order of Dismissal with Defendant James V. McDonald ("Defendant"), as Commissioner of the New York State Department of Health ("DOH").

**Settlement Negotiations**

6. The settlement discussions in this matter spanned eight weeks and involved extensive arm's length negotiations, including several in-person and Zoom meetings and the exchange of dozens of settlement proposals, stipulations, drafts of settlement language, and related questions and answers.

7. Plaintiffs first raised the possibility of a global settlement involving an extension of the deadline to register for PPL, distribution of Medicaid Act-compliant notices, and an opportunity for Consumers encountering difficulties with PPL to be heard in early May. Several weeks later, as settlement discussions continued, Plaintiffs provided DOH with a term sheet

outlining a potential global resolution of this class action. The following week, the Parties met in-person for over eight hours to discuss a potential resolution of this matter.

8. The Parties continued to exchange term sheets and meet by Zoom and teleconference regarding settlement. I estimate that we spoke with counsel for Defendant, sometimes alongside representatives of DOH at the operational level, dozens of times by phone and Zoom regarding settlement. Emails were also exchanged between counsel for the Parties that asked and answered settlement-related questions. By June 19, 2025, the Parties were nearing an agreement in principle on a class-wide settlement. After exchanging numerous drafts of a proposed stipulation of settlement, on July 4, the Parties finalized a joint stipulation as to the agreed-upon terms of the Settlement.

9. In addition to these formal settlement discussions, the Parties met weekly with respect to the PPL transition and to discuss the issues with registration or PA payment faced by individual Consumers. The information exchanged at these meetings provided DOH with insight into the issues being faced by individual Class Members, as well as provided Plaintiffs with an understanding of DOH's administrative and operational capabilities to offer Class-wide relief. Although these discussions were not specifically focused on settlement, they enabled the Parties to have an understanding of each other's positions and facts that, later, informed settlement discussions.

10. There was no collusion between the parties or bad faith exercised in reaching this Settlement. To the contrary, this Settlement was intensively and painstakingly negotiated at arm's length, and required difficult concessions and compromises on both sides. Both sides were represented by capable counsel with extensive experience handling complex class actions and

cases regarding Medicaid benefits specifically.

11.     There are no agreements made in connection with the proposed Settlement other than the Parties' agreement to submit a joint proposed amended preliminary injunction for the Court's consideration and the Settlement Agreement itself.

**Risks and Delay of Proceeding to Litigation**

12.     Continued litigation of this matter would have involved extensive time and resources, as well as significant litigation risk in establishing Defendant's liability. Although Plaintiffs' counsel believe that the Class's claims have substantial merit and that Plaintiffs would prevail at summary judgment and/or trial, DOH presented defenses in its opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction, in its opposition to Plaintiffs' motion to amend the preliminary injunction, and during oral argument to the Court. Notwithstanding the Parties' engagement in good faith settlement discussions, both Parties were prepared to file dispositive motions—including Plaintiffs' anticipated motions for summary judgment and class certification and Defendant's anticipated motion to dismiss—all of which would be opposed, requiring considerable briefing. Each side would likely appeal an unfavorable decision on any of these motions. If the case proceeded to trial, both sides would engage in substantial preparation given the complexities of the Medicaid scheme at issue, the numerous government actors with an interest in the litigation, and the size and diverse needs of this large and vulnerable Class. Based on Class Counsel's experience with similar litigations, that process could take a year or more. And, all the while, Class Members would face substantial negative ramifications: continued disruptions in their receipt of critical CDPAP services, with the attendant risk of health problems, hospitalization, and institutionalization.

13. For this reason, Plaintiffs spent weeks negotiating with DOH to provide relief to the Class on the most expedited basis that was possible, and Plaintiffs are persuaded that the Settlement provides the best possible outcome for Class Members. In fact, the Settlement terms go beyond the declaratory and injunctive relief that Plaintiffs originally requested in the Complaint.

**The Class**

14. The Parties estimate that this Class has thousands of members.

**Class Counsel's Work**

15. Class Counsel spent a tremendous amount of time and effort in this litigation. Class Counsel performed over a thousand hours of work on the litigation portion of this case. This litigation work included interviewing, collecting documents from, and providing information to the Named Plaintiffs and other Class Members; conducting extensive legal and factual research and investigation to support the Class Members' claims; speaking with other advocates; developing legal claims; pre-suit discussions with DOH; filing an exceedingly detailed Complaint; filing robust motions for a temporary restraining order and preliminary injunction, class certification, and to amend the preliminary injunction, as well as several other letters seeking substantive relief from the Court; establishing a NYLAG website page and hotline to receive phone and email communications from putative Class Members facing difficulties; endeavoring to address and escalate those difficulties appropriately or do whatever else was possible to support those putative Class Members in resolving their issues; and preparing for and participating in a telephone and several in-person conferences before the Court. Class Counsel also prepared for an evidentiary hearing in support of their motion for a preliminary injunction

and expended substantial resources negotiating the settlement, as described *supra* at Paragraphs 6-9.

**Class Counsel's Qualifications**

16. Patterson Belknap Webb & Tyler LLP is a century-old, sophisticated New York City law firm whose lawyers are experienced in complex civil litigation. In recent years, the firm's attorneys have litigated numerous class actions on behalf of vulnerable populations, often in collaboration with public interest organizations.

17. For example, Patterson Belknap represented certified classes of plaintiffs in the following cases: *Bagley v. N.Y. State Dep't of Health*, 1:15-cv-04845-FB-CLP (E.D.N.Y.) (class of Medicaid recipients denied home- and community-based services under the Nursing Home Transition and Diversion waiver program, with Mobilization for Justice as co-counsel); *Foster v. City of Alexander City*, 3:15-cv-00647-RCL-WC (M.D. Ala.) (class of individuals jailed for failure to pay fines and court costs, with the Southern Poverty Law Center as co-counsel); *P.B. ex rel. Berry v. Pastorek*, 2:10-cv-04049-JCZ-KWR (E.D. La.) (class of New Orleans students with disabilities, with the Southern Poverty Law Center and Lawyers Committee for Civil Right Under Law as co-counsel). Additionally, Patterson Belknap is currently litigating another putative class action, in which the firm intends to seek certification. *Z.Q. v. N.Y.C. Dep't of Ed.*, 1:20-cv-09866-JAVRFT (S.D.N.Y.) (putative class of students with disabilities, with Advocates for Children as cocounsel).

18. As a member of Patterson Belknap, I have personally represented certified classes of plaintiffs in several lawsuits. *E.g.*, *A.M. v. Mattingly*, 1:10-cv-02181-BMC (E.D.N.Y.) (class of children in foster care who are confined in psychiatric hospitals, with the Legal Aid Society as

6

co-counsel); *David v. #1 Marketing Serv., Inc.*, Index No. 30238/10 (N.Y. Sup. Ct. Kings Cnty.) (class of residents of three-quarter houses with Mobilization for Justice as co-counsel); *City of New York v. Mau*l, Index No. 400207/04 (N.Y. Sup. Ct. N.Y. Cnty.) (class of developmentally disabled children in the foster care system, with New York Lawyers for the Public Interest and Lawyers for Children as co-counsel), *aff'd*, 59 A.D.3d 187 (1st Dep't 2009), and *aff'd*, 929 N.E.2d 366 (N.Y. 2010); *C.W. et al. v. City of New York*, 1:13-cv-07376-SJ-PK (E.D.N.Y.) (class of homeless youths ejected from youth shelters, with the Legal Aid Society as co-counsel).

19. Patterson Belknap has the experience, knowledge of applicable law, and resources to adequately represent the proposed class here.

**Attorneys' Fees**

20. The Partes intend to negotiate the reasonable attorneys' fees and costs that Defendant will pay Plaintiffs for work performed in support of this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
July 4, 2025

_____
LISA E. CLEARY