# Exhibit B

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

Akiva Shapiro
Direct: +1 212.351.3830
Fax: +1 212.351.6340
ashapiro@gibsondunn.com

July 30, 2025

VIA U.S. MAIL AND EMAIL

Clerk of the Court
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

CDPAP Team
New York Legal Assistance Group
100 Pearl Street, Floor 19
New York, NY 10004
cdpaplawsuit@nylag.org

Re:    *Engesser v. McDonald*, Case No. 1:25-cv-01689-FB-LKE

Dear Judge Block:

I write on behalf of Ardijana Redzovic and Patricia Rodríguez—CDPAP Consumers and Class Members—to object to the proposed class settlement in the above-referenced case.[1]  We also write to provide notice that the undersigned counsel intends to appear at the upcoming fairness hearing on Mses. Redzovic and Rodríguez's behalf.[2]

The Settlement Agreement provides for an August 1 cutoff date for the provision of CDPAP services through a Prior FI—a date that is inexplicably ***before*** the fairness hearing—after which Consumers and personal assistants ("PAs") who have not transitioned to PPL will no longer be permitted to receive or provide CDPAP services through their Prior FI.  This Settlement leaves out in the cold the approximately ***11,000 Consumers*** who, by Plaintiffs' own admission, have yet to transition to PPL as of one week before the Registration Deadline, as well as the untold numbers of Consumers who receive services from the approximately ***170,000 PAs*** who have not yet onboarded with PPL, and the countless more who continue to face challenges because of payment and service issues after nominally transitioning to PPL.  It is important to note, in this regard, that the CDPAP program is a critical home-care lifeline providing a trusted caregiver for individuals with severe health challenges who cannot care for themselves; immediately cutting off their access to care risks severe health consequences.  The Settlement Agreement also fails to provide critical information to Class Members necessary in evaluating the fairness, reasonableness, and adequacy of the Settlement, and rams through a

---

[1] Unless otherwise noted, all capitalized terms have the meaning ascribed to them in the Settlement Agreement, Dkt. 122-1.

[2] We respectfully request that any contact with Mses. Redzovic and Rodríguez be through their counsel, whose name, telephone number, and address are provided in the letterhead above in satisfaction of the Fairness Notice.

July 30, 2025
Page 2

flawed settlement without tangible benefit to many Class Members while federal and state investigations are pending that will provide them with additional material information.

Mses. Redzovic and Rodríguez therefore object to the Settlement Agreement and ask the Court to disapprove of the Settlement and instead extend the existing preliminary injunction until such time as: (1) all Class Members are provided access to the full set of transition data that the Department of Health ("DOH") has provided and will provide to Plaintiffs; (2) all Consumers and PAs who were receiving or providing CDPAP services in March 2025 have successfully registered and onboarded with PPL or affirmatively opted out of the CDPAP program; and (3) it is affirmatively demonstrated that, for a period of 60 days, PPL has suffered no material payment, service, or related issues with respect to CDPAP Consumers and PAs.

1. **Mses. Redzovic and Rodríguez Have Standing to Object to the Settlement Agreement and Do So on Behalf of Themselves, the Entire Class, and Certain Subsets of the Class.**

Mses. Redzovic and Rodríguez have standing to object to the Settlement Agreement because both qualify as "Class Members" under its terms. The Settlement Agreement defines Class Members as:

> All Consumers who were in receipt of CDPAP services in March 2025 and (1) who received services from a Prior FI after April 1, 2025, or (2) who (a) were authorized for CDPAP services in the month of June 2025 and (b) did not receive any CDPAP services in the month of June 2025 and (c) did not switch to a different long-term care service.

Settlement Agreement ¶ 3. Mses. Redzovic and Rodríguez fit this definition because both were in receipt of CDPAP services from Prior FI Freedom Care in March 2025 and continued to receive such services from Freedom Care after April 1, 2025. Mses. Redzovic's and Rodríguez's status as Class Members also establishes their Article III standing to object to this settlement. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 145-46 (2d Cir. 2020).

Ms. Redzovic is a lifelong resident of New York State who currently resides in Staten Island. Ms. Redzovic received CDPAP services from Prior FI Freedom Care for approximately one year prior to the April 1, 2025 transition date and, with the benefit of the temporary restraining order and preliminary injunction entered by this Court, until June 20, 2025, at which point she and her parents, who are her caregivers, transitioned to PPL. Ismet Redzovic, Ms. Redzovic's father, referred to the transition as a "disaster." Despite multiple phone calls, PPL personnel have failed to correct incorrect personal information on file for him and for his daughter. More concerningly, Mr. Redzovic has been paid "only half the time" since the family transitioned to PPL one month ago; as of the time of this writing, he is still owed money by PPL. Ms. Redzovic wishes to continue receiving CDPAP services through her Prior FI unless and until such time as PPL is able to provide such services without issues and provide for regular payment of wages to her caregivers. Ms. Redzovic further understands that her experience

July 30, 2025
Page 3

and that of her parent-caretakers are representative of the disastrous experiences of countless other CDPAP Consumers and PAs who are Class Members and have attempted to transition or transitioned to PPL.

Ms. Rodríguez is also a lifelong resident of New York State who currently resides in Brooklyn. Ms. Rodríguez's daughter is her current caretaker and is the only caretaker with whom she feels comfortable.  Ms. Rodríguez has received CDPAP services from Prior FI Freedom Care for the past year and continues to receive those services.  She will be barred from receiving services from Freedom Care following the August 1 Registration Date.

Pursuant to Federal Rule of Civil Procedure 23(e)(5), Mses. Redzovic and Rodríguez object on behalf of themselves, the entire class, and certain subsets of the class—specifically: (1) all Class Members who have not yet completed registration with PPL; (2) all Class Members whose full complement of PAs have not yet completed onboarding with PPL; and (3) all Class Members whose PA or PAs have continued to face payment and related issues after the Class Member and the PA or PAs completed registration and onboarding with PPL.

**2. The Settlement Agreement Should Be Rejected As Not Fair, Reasonable, and Adequate, Including Because It Fails to Provide a Tangible Benefit to a Significant Portion of the Class and Requires Class Members to Blindly Waive Their Rights.**

FRCP 23(e)(2) provides that a court "may approve [a proposed class settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate[.]"  Here, the proposed Settlement Agreement is none of those things and therefore must not be approved.

In evaluating whether a class settlement is fair, reasonable, and adequate, a court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.  To aid in assessing the "fairness, adequacy, and reasonableness" of a settlement proposal under Rule 23(e)(2), courts in the Second Circuit consider the nine *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Guoliang Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740 at *5 (E.D.N.Y. Mar. 31, 2018).  In cases where plaintiffs do not seek damages, the fifth, eighth, and ninth of these factors may be considered together "as part of a larger determination of whether the settlement is reasonable." *Padro v. Astrue*, 2013 WL 5719076, at *7 (E.D.N.Y. Oct. 18, 2013).

July 30, 2025
Page 4

A. <u>The Settlement Agreement is Not Fair, Reasonable, or Adequate Because It Fails to Provide a Tangible Benefit to a Significant Portion of the Class.</u>

A settlement that fails to confer a tangible benefit on a significant portion of a class must be rejected as unfair, inadequate, and unreasonable. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238 (2d Cir. 2016) (reversing approval of class settlement, where "[a] significant proportion of merchants in the (b)(2) class [we]re either legally or commercially unable to obtain incremental benefit from the primary relief negotiated for them by their counsel"); *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) (vacating approval of settlement where "not every member of [the class] stands to benefit from [the injunction contained in] the settlement proposal"); *Guoliang Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740 at *7 (E.D.N.Y. Mar. 31, 2018) (finding settlement agreement unreasonable where "the class [wa]s receiving nearly valueless injunctive relief in exchange for a broad release").

Here, the Settlement Agreement is not fair, reasonable, or adequate because it fails to provide a significant number of Class Members either with sufficient time to transition or with a meaningful opportunity for a fair notice hearing, two core components of the relief sought on behalf of Class Members in this case.

1. *The Settlement Agreement Does Not Give a Significant Portion of the Class Sufficient Time to Transition.*

The Settlement Agreement in this case must not be approved because it will leave a significant portion of Class Members suddenly without CDPAP services by imposing a registration deadline of August 1, 2025, and does not provide adequate opportunity for Consumers or their PAs to complete the transition to PPL by that date. Plaintiffs argue that the injunctive relief they will obtain under the Settlement "offers Class Members the most important relief sought in Plaintiffs' Complaint: Medicaid Act-compliant notice, with a meaningful opportunity to be heard with aid continuing, as well as ***sufficient time to transition*** to PPL or another care program with minimal gaps in services." Dkt. 121 at 22 (emphasis added). They tout that, as of July 24, 2025, 210,000 Consumers have been fully registered with PPL and remain with CPDAP, and approximately 230,000 PAs have been paid for their services by PPL since April 1, 2025. Dkt. 127 at ¶¶ 26, 27.

But these figures elide the thousands more who have yet to transition to PPL. Even the limited data that has been released publicly—including Plaintiffs' limited disclosure in its papers submitted in support of the Settlement Agreement—make clear that the provisions of the preliminary injunction providing for more consumer outreach, additional notices, and more assistance with registration have not been sufficient to obtain, for a significant portion of Class Members, the core relief sought in this case: sufficient time to transition to PPL or another care program with minimal gaps in services.

July 30, 2025
Page 5

By Plaintiffs' own admission, at least **11,000 CDPAP Consumers** either have not yet registered with PPL or have no PAs onboarded with PPL. Dkt. 129 at 7. Not only that, there were 400,000 PAs left to transition at the outset of this process, leaving **170,000 PAs** who have yet to onboard with PPL.[3] Mere days before the Registration Deadline, this is less time to transition than was available to CDPAP Consumers and PAs when this action was first filed in March 2025. In other words, the Settlement Agreement imposes an almost immediate, draconian cutoff date after which thousands of Class Members will have their CDPAP services eliminated, while unknown thousands more—those who receive services from the 170,000 PAs who have not yet transitioned to PPL—will be bereft of their full complement of PAs, limiting and restricting the services to which they have access.

It is important to note that Consumers generally receive CDPAP services from multiple PAs. This is because a given PA is not always available during the days and times that a Consumer needs services; a PA may need to take personal time off or go on vacation; and certain Consumers receive more hours of weekly services than a single PA is permitted to provide. As a result, a Consumer with only a single transitioned PA is likely receiving less-than-complete services, with countless hours per month that the Consumer needs and has a right to services but is not able to receive them due to his or her single PA's unavailability. The fact that Plaintiffs and DOH only count as not-yet-fully-transitioned Consumers who "either have not yet registered with PPL or have no PAs onboarded with PPL," Dkt. 129 at 7, vastly undercounts the number of Consumers who are not receiving a full complement of CDPAP services because some of their PAs—170,000 in total—have not yet completed the PPL onboarding process.

Plaintiffs also ignore the countless Consumers whose PAs have technically been onboarded by PPL but who continue to have payment processing issues, such as objector Ms. Redzovic. Indeed, it has recently been revealed that thousands of payments to PAs were diverted by a PPL employee.[4] Such payment obstacles and issues impact a PA's willingness and ability to continue to provide CDPAP services going forward and likely will lead unknown numbers of PAs dropping out of the program altogether, leaving Consumers without adequate coverage.

---

[3] Letter from N.Y. State Sen. Leroy Comrie to N.Y. Gov. Kathy Hochul (Mar. 13, 2025), https://www.nysenate.gov/sites/default/files/admin/structure/media/manage/filefile/a/2025-03/sen.-comrie-cdpap-delay-sign-on-letter-updated-1.pdf.

[4] *See* Vaughn Golden, *Worker at Hochul's hand-picked homecare payment firm allegedly siphons off cash meant for participants*, N.Y. Post (July 15, 2025) ("A worker with the firm at the center of Gov. Kathy Hochul's scandal-plagued Medicaid homecare program allegedly siphoned off cash from potentially thousands of participants. The employee of Public Partnerships, LLC — the company hand-picked by Hochul's administration to act as the sole payment go-between for the state and participants in the Consumer Directed Personal Assistance Program — had been falsifying the direct-deposit information of up to 10,000 participants, sources told The Post. . . .The company discovered last week that one of its employees was directing homecare participants' paychecks to fraudulent bank accounts, including some overseas, sources said."), available at https://nypost.com/2025/07/15/us-news/worker-at-hochuls-hand-picked-cdpap-payment-firm-allegedly-siphons-off-cash-meant-for-participants/.

July 30, 2025
Page 6

Plaintiffs themselves acknowledge the "overly complex registration process," "technology glitches," and "poor communication," Dkt. 121 at 5, that have contributed to what has proven to be a disastrous transition period for so many—including for Mses. Redzovic and Rodríguez. Given the acknowledged weaknesses of the system, it is not possible to ensure the large-scale transition of—at minimum—11,000 Consumers and 170,000 PAs either to PPL or to another care program *within a week's time*. These 11,000 Consumers, as well as the countless other Consumers—by all indications well over 100,000—whose full complement of PAs have not fully transitioned, and the unknown numbers of others whose PAs have transitioned but have faced payment obstacles that will impact their willingness and ability to continue to serve as a PA going forward, will be left out in the cold, without access to the services they were provided before the transition to PPL. The Settlement Agreement thus fails to provide them with—and in fact denies them—meaningful tangible benefits, and is unfair, unreasonable, and inadequate.

2. *The Settlement Agreement Does Not Provide a Significant Portion of the Class the Opportunity for a Fair Notice Hearing.*

The Settlement Agreement also provides no real opportunity for Class Members who opt out to receive the fair notice hearing that the parties appear to concede is necessary as a matter of Due Process and Medicaid law. Instead, under the Settlement Agreement, when a Class Member demands a hearing, the Class Member is bombarded by intense, aggressive attempts to convince them to register with PPL. Apparently, if these strong-arming attempts are unsuccessful, the Class Member can then be forcibly removed from the CDPAP program. But, tellingly, the Settlement Agreement provides no process or opportunity for an actual hearing. The opt-out option is therefore a mirage that, under the Settlement Agreement, does not preserve Class Members' rights to a hearing and an opportunity to be heard.

B. The Settlement Agreement is Not Fair, Reasonable, and Adequate Because It Requires Class Members to Blindly Waive Their Rights.

The Settlement Agreement is also not fair, reasonable, or adequate because it not only forces thousands of CDPAP Consumers to transition or drop out of the program on an unrealistically compressed timeline but would require them to do so—and, relatedly, would require them to decide whether to waive their rights by remaining Class Members or instead opt out of the class—without the full benefit of key information regarding the status of the transition and ongoing issues relating thereto, including the results of ongoing government investigations. This objection is made on behalf of, and applies to, all Class Members.

Specifically, neither Plaintiffs nor DOH are providing Class Members with accurate, complete, and transparent information regarding the status of the transition. Class Members are expected to agree to the settlement—and forever waive their rights *en masse*—in the absence of full and complete information about the status of the transition. While Mses. Redzovic and Rodríguez are in the dark as to the specific information that DOH has disclosed to Plaintiffs under seal, the material information they do not have and must receive before they and other Class Members can reasonably evaluate the fairness, reasonableness, and adequacy of the Settlement

July 30, 2025
Page 7

Agreement includes, but is not limited to, disaggregated data on: (1) the number of CDPAP Consumers who have not yet registered with PPL; (2) the number of CDPAP Consumers who have registered with PPL but have no PAs onboarded with PPL; (3) the number of CDPAP Consumers who have registered with PPL but have only a single PA onboarded with PPL; (4) the number of CDPAP Consumers who have registered with PPL but whose full complement of pre-transition PAs have not onboarded with PPL; (5) the number of Class Members in each of the foregoing categories; and (6) any information provided to DOH or Plaintiffs regarding payment, servicing, and related complaints or issues involving PPL. This informational void is another material flaw in the effort to ram through the Settlement Agreement.

The disastrous transition to PPL, moreover, has resulted in an ongoing federal Department of Justice investigation, as well as a joint investigation by the New York State Senate Standing Committee on Health and the State Senate Standing Committee on Investigations & Government Operation, with a hearing scheduled for August 21, 2025.[5] The content and purpose of the Senate hearing, as set forth in the Joint Public Hearing notice cited in the footnote, is described as follows:

> This hearing will examine the program's transition to operate under a single statewide fiscal intermediary, Public Partnerships LLC (PPL), and the challenges experienced by enrollees, workers, and stakeholders. This hearing will provide an opportunity for lawmakers to hear from stakeholders across New York State, including healthcare experts, consumer advocates, fiscal intermediaries, enrollees, and enrollees' personal care assistants, on the issues they are facing related to this transition. The hearing's goal is ensuring that the voices of those impacted by this transition are heard. Transparency and accountability will aid in identifying solutions and mitigating adverse outcomes for the thousands across New York State who rely on this program.

The pendency of these investigations, the forthcoming hearing(s), and the payment and service issues with which they relate strongly support denial of the proposed Settlement Agreement as Class Members cannot in fairness be forced to permanently waive their rights while these investigations are pending—with a hearing that will provide much-needed "[t]ransparency" scheduled in the upcoming weeks no less—nor can they reasonably be expected to forever give up receiving services through their Prior FI and instead rely on PPL if there continue to be material payment and service issues.

---

[5] *See* Vaughn Golden, *Feds investigate Gov. Kathy Hochul's home care program reforms after chaotic rollout: source*, N.Y. Post (June 2, 2025), available at https://nypost.com/2025/06/02/us-news/feds-investigate-gov-kathy-hochuls-home-care-program-reforms-after-chaotic-rollout-source/; Matthew Fischetti, *NY pols probe troubled $9B taxpayer-funded program for health aides: 'Significant concerns'*, N.Y. Post (June 19, 2025), available at https://nypost.com/2025/06/19/us-news/ny-pols-probe-controversial-9b-taxpayer-funded-program-for-home-health-care-aides-significant-concerns/; Joint Public Hearing: Consumer Directed Personal Assistance Program (CDPAP), https://www.nysenate.gov/calendar/public-hearings/august-21-2025/joint-public-hearing-consumer-directed-personal-assistance.

July 30, 2025
Page 8

Forcing Class Members to waive their rights without the relevant information discussed herein is not fair or reasonable and fails to protect vast numbers of Class Members. Any Settlement Agreement must therefore be rejected unless and until, at minimum, Class Members are: (1) provided with the full slate of transition-related data that DOH has been providing Plaintiffs under seal (which, to be clear, there is no appropriate legal basis to keep from Class Members); (2) the proposed Settlement Agreement is amended to provide all Class Members with the same informational rights as are provided to Plaintiffs on a going-forward basis, as well as the right to raise issues arising therefrom with the Court, *see* Settlement Agreement §6, "Data Sharing"; and the results of the DOJ and State Senate investigations are released to the public.

There is simply no basis for keeping this critical information from Class Members—or, for that matter, from the public—and Class Members cannot in fairness be expected to agree to any class settlement when they are being kept in the dark about the true status of the transition.

## Conclusion

In light of the above, Mses. Redzovic and Rodríguez hereby object to the Settlement Agreement. They respectfully ask that the Court decline to approve the Settlement Agreement and instead extend the preliminary injunction previously entered by the Court that permits Consumers to continue receiving CDPAP services from Prior FIs, until such time, at minimum, as: (1) all Class Members are provided access to the full set of transition data that DOH has provided and will continue to provide to Plaintiffs; (2) all Consumers and PAs who were receiving or providing CDPAP services in March 2025 have successfully registered and onboarded with PPL or affirmatively opted out of the CDPAP program; and (3) it is affirmatively demonstrated that, for a period of 60 days, PPL has suffered no material payment, service, or related issues with respect to the CDPAP Consumers and PAs.

Respectfully submitted,

*/s/ Akiva Shapiro*

Akiva Shapiro, on behalf of objectors Ardijana Redzovic and Patricia Rodríguez