UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LIZA ENGESSER, MARISOL
GETCHIUS, GEETANJALI
SEEPERSAUD by her Next Friend
SAVITRI SEEPERSAUD, and MARIA
JAIME on her own behalf and as Next
Friend to Y.P.S. and C.P., individually
and on behalf of all persons similarly
situated; BROOKLYN CENTER FOR
INDEPENDENCE OF THE
DISABLED, and REGIONAL
CENTER FOR INDEPENDENT
LIVING,

               Plaintiffs,

      -against-

JAMES V. MCDONALD, as
Commissioner Of The New York State
Department Of Health,

           Defendant.

**<u>MEMORANDUM AND ORDER</u>**
Case No. 25-CV-1689

*Appearances:*
*For the Plaintiffs:*
LISA E. CLEARY
CAITLIN ROSS
EMMA GUIDO BRILL
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

ELIZABETH A. JOIS
JULIA GROSSMAN RUSSELL
New York Legal Assistance Group
7 Hanover Square
New York, NY 10004

*For the Defendant:*
RACHEL PAM SUMMER
SAMANTHA LEIGH BUCHALTER
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005

1

**BLOCK, Senior District Judge:**

Plaintiffs Liza Engesser, Marisol Getchius, Geetanjali Seepersaud, and Marie James ("Named Plaintiffs")—all receiving care under New York State's Consumer Directed Personal Assistance Program ("CDPAP")—alongside the Brooklyn Center for Independence of the Disabled ("BCID") and the Regional Center for Independent Living ("RCIL")—organizations that support and advocate on behalf of persons with disabilities, including CDPAP consumers ("Organizational Plaintiffs") (collectively, "Plaintiffs")—brought this class action for injunctive relief against Defendant James V. McDonald, Commissioner of the New York State Department of Health ("Defendant"), pursuant to Federal Rule of Civil Procedure 23(b)(2), alleging violations of their notice and fair hearing rights under the Medicaid Act, 42 U.S.C. § 1396, *et seq.*, and corresponding procedural due process rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. The parties reached a proposed class settlement (the "settlement"), which the Court preliminarily approved on July 7, 2025. ECF No. 125. Now, after the requisite hearing, the parties seek the Court's final approval of that settlement. ECF No. 128.

Settlement of claims brought by a proposed class requires approval from a district court. Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) provides that, before approving a proposed class settlement that would bind class members, a district

2

court must first (i) conduct a hearing, and (ii) find that the settlement is fair,

reasonable and adequate. The second prong requires the court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> [i.] the costs, risks, and delay of trial and appeal;
>> [ii.] the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> [iii.] the terms of any proposed award of attorney's fees, including the timing of payment; and
>> [iv.] any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id*. "In determining whether a settlement is fair, reasonable, and adequate,

the District Court examines the negotiating process leading up to the settlement[,

*i.e.,* procedural fairness,] as well as the settlement's substantive terms[, *i.e.,*

substantive fairness]."[1] *McReynolds v. Richards-Cantave*, 558 F.3d 790, 803–04

(2d Cir. 2009) (citation modified).

"The first two factors [of Rule 23(e)(2)] are procedural in nature and the

latter two guide the substantive review of a proposed settlement." *Moses v. New*

*York Times Co.*, 79 F.4th 235, 242–43 (2d Cir. 2023).[2] To assess substantive

fairness, courts in the Second Circuit turn to the *Grinnell* factors:

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

[2] Following Congress's amendments to Rule 23 in 2018, the Second Circuit held that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Moses*, 79 F.4th at 243.

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974).[3]

The parties' proposed order, ECF No. 138-1, approved by the Court and appended to this decision (the "Order"), encompasses the findings necessary for final approval of the Stipulation of Class Action Settlement ("Settlement Agreement"), ECF No. 137-1, and the Supplemental Stipulation Regarding Attorneys' Fees ("Fee Stipulation"), ECF No. 130-2, as procedurally and substantively fair. The Court writes separately to address objections and attorneys' fees.

## I.    Background

The Medicaid Assistance Program ("Medicaid") is a joint federal-state program established under Title XIX of the Social Security Act to ensure rehabilitation, medical assistance, nursing, and other services for low-income and indigent persons. 42 U.S.C. § 1396-1. New York State's CDPAP is a Medicaid

---

[3] The *Grinnell* factors "remain a useful framework for considering the substantive fairness of a settlement" following the 2018 amendments to Rule 23. *Moses*, 79 F.4th at 243.

program administered by the New York State Department of Health ("DOH") that enables Medicaid beneficiaries to directly recruit, hire, supervise, and train their home care workers, known as Personal Assistants ("PAs"). N.Y. Soc. Serv. Law § 365-f. That way, relatives and friends (with some limited limitations) without a nursing license can provide homecare for compensation to Medicaid beneficiaries enrolled in CDPAP ("Consumers"). *Id.* at § 365-f(3); Corrected Compl. ¶ 65 ("Compl."), ECF No. 32. Consumers co-employ PAs with private Fiscal Intermediary agencies ("FI"), which receive Medicaid funding to manage payroll and other compliance, financial, and administrative tasks. *See* N.Y. Soc. Servs. Law § 365-f(4-a)(ii).

On April 20, 2024, New York amended its Social Services law to provide that, as of April 1, 2025, there shall be only one statewide FI ("CDPAP Amendment"). *See id.* at § 365-f(4-a-1)(a); *also* S. 8307-C, 2024 Sess. Laws of N.Y., 247th Leg. Sess., Ch. 57 (Apr. 20, 2024). After April 1, that single statewide FI would supplant the over 600 FIs that operated in New York before the CDPAP Amendment. *See* ECF No. 6-5 ¶ 11. On September 30, 2024, New York Governor Kathy Hochul announced that Public Partnerships LLC ("PPL") was selected as the single statewide FI. Compl. ¶ 100. PPL would subcontract with community-based providers ("Facilitators") to assist Consumers in transitioning to PPL and to provide other customer services. *See* N.Y. Soc. Servs. Law § 365-f(4-a)(ii-b).

5

The CDPAP Amendment was not without harm. DOH announced in January 2025 that Consumers and PAs had to re-register with PPL by March 28, 2025, to avoid lapses in services or payments to PAs. Compl. ¶¶ 114, 133. That meant over 280,000 Consumers and their 300,000 PAs had just two months to enroll with PPL. *See* ECF No. 6-5 ¶ 10. Consumers faced "an enormous number of barriers transitioning themselves and their PAs. Others hadn't even heard of the transition or didn't know what it meant." Tr. 11:12–14.[4]

Plaintiffs alleged that PPL contributed to delays in re-registration: PPL slowly processed applications submitted through its complex registration process, *see* Compl. ¶¶ 117–26, and those who called PPL "found it extremely difficult to reach PPL representatives," *id.* at ¶ 129. Some callers who elected "to hang up and receive a call back . . . report[ed] that no one ever return[ed] their call." *Id.* at ¶ 130. Others "found that the system automatically end[ed] the call after approximately ten minutes." *Id.* at ¶ 131. That proved especially challenging to the Consumers CDPAP was meant to serve—some elderly, some with intellectual disabilities, and some with educational disadvantages. *See id.* at ¶ 132.

Although, on March 24, 2025, Defendant extended the time to register with PPL until April 30, this extension only applied to Consumers who were already authorized by PPL but had not completed registration. *See* ECF No. 6-15. And this

---

[4] The Court will refer to the transcript from the August 6 fairness hearing as "Tr."

extension only allowed back pay for late PA registrants but did not delay the termination of service set for April 1. *Id.*

Plaintiffs' class action asserted that Defendant's implementation of the CDPAP Amendment violated class members' rights to pre-deprivation notice, a fair hearing process and continuing aid before their CDPAP benefits were suspended, terminated, or reduced, as required by the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and the Due Process Clause of the Fourteenth Amendment. Compl. ¶¶ 180–85. Essentially, Plaintiffs alleged that DOH did not provide adequate notice that Consumers and PAs who did not register with PPL by March 28 would cease receiving CDPAP services on April 1. *Id.* at ¶¶ 136, 139, 140–42. As such, Plaintiffs sought "an injunction to stay enforcement of the law requiring transition to one physical intermediary until consumers were given timely and adequate notice of their need to transition to maintain their CDPAP services as well as an opportunity to be heard." Tr. 11:16–21.

Defendant responded that they provided ample notice to Consumers by, e.g., sending direct letters to Consumers and airing TV and radio public services announcements. Declaration of Amir Bassiri ("Bassiri Decl.") ¶¶ 76, 83, 88, ECF No. 44. Plaintiffs retorted that these communications did not constitute adequate notice, and, even if they did, they were not sent to every Consumers and PA. ECF No. 42 at 14–16.

On March 27, 2025, Plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI") enjoining Defendant from implementing the CDPAP Amendment until class members received adequate notice and access to the fair hearing process. ECF No. 4. On March 31, the Court held a hearing and issued a TRO to ensure that all Consumers continued to receive services pending the transition to PPL. To that effect, the Court enjoined Defendant from implementing those sections of the CDPAP Amendment that made PPL the only FI:

> Importantly, this Order [did] not prevent the Statewide Fiscal Intermediary ("PPL") from operating, processing applications, servicing and paying CDPAP [consumers] who have already registered with PPL. Rather, this Order restrain[ed] Defendant from disallowing other Fiscal Intermediaries from servicing those CDPAP [consumers] who have not yet registered with PPL[.]

ECF No. 37 at 2. The Court also allowed the parties to submit supplemental briefing on Plaintiff's PI motion and scheduled a hearing for April 4. At the hearing, counsel for Plaintiffs and Defendant informed the Court that they were preparing joint proposed language for a stipulated PI. *See* Minute Entry, Apr. 4, 2025. The parties jointly submitted the proposed stipulated injunction on April 9. ECF No. 59. Also on April 9, the United States Department of Justice's Consumer Protection Branch ("United States") filed a Statement of Interest, expressing concern that DOH violated the Medicaid Act by, *inter alia*, requiring Consumers "themselves to bear the logistical burden of transitioning from their prior Fiscal

8

Intermediary to PPL" and not providing sufficient notice of the transition. ECF No. 61 at 3.

The Court approved the proposed stipulated injunction on April 10 (the "Original Injunction"), to expire on June 6 "or any later date set by the Court." Original Injunction at 3, ECF No. 62. Aiming to preserve care for Consumers and payment for PAs, the Original Injunction allowed Consumers and PAs to remain with their prior FIs until PPL fully onboarded them, *id.* at 4, required PAs be paid for hours worked between April 1 and when they successfully registered with PPL, up to the Original Injunction's expiration date, *see id.*, instituted an expedited onboarding mechanism, *id.* at 7, required DOH to direct outreach to Consumers who had not yet registered with PPL, *id.* at 6, and required DOH to exchange data with Plaintiffs regarding the transition, *id.* at 9. In doing so, the Original Injunction gave Consumers and PAs more time to transition to PPL while minimizing disruptions to Consumer care and PA payment.

On May 15, Plaintiffs sought to modify and extend the Original Injunction, asserting that it did not adequately "provide continuity of services" and that Consumers "need[ed] additional time to transition to PPL." ECF No. 77. Defendant opposed modification and extension, asserting that Plaintiffs could not show "PPL's current inability to register Consumers or onboard PAs." *See* ECF No. 81 at 1. The Court held a pre-motion conference on May 20 where it found that

9

PPL could not adequately register Consumers or onboard PAs by June 6, extended the Original Injunction until June 20, and ordered the parties to brief Plaintiffs' motion to modify and extend the Original Injunction. *See* Minute Entry, ECF No. 86 (May 20, 2025).

Following briefing, the Court scheduled an oral argument for June 19 regarding Plaintiffs' motion. There, counsel for both parties informed the Court that they were negotiating an amended stipulated injunction and a joint proposed class settlement. Minute Entry, ECF No. 114 (June 19, 2025). Accordingly, the Court extended the Original Injunction until July 1 and held Plaintiffs' motion in abeyance. *Id.* The parties filed their amended stipulated injunction on June 26, which the Court approved on June 27 ("Amended Injunction"). Amended Injunction, ECF No. 118. The Amended Injunction required Consumers and PAs to register with PPL by August 1 and prevented prior FIs from servicing them after that deadline. *See id.* at 5. It also required DOH to conduct further outreach to Consumers, including informing them of Facilitators. *Id.* at 8. The Amended PI had an expiration date of August 15. *Id.* at 4.

On July 5, Plaintiffs filed an unopposed motion for certification of the settlement class and preliminary approval of the class action settlement. ECF No. 120. This settlement resulted from discussions that spanned eight weeks and involved "dozens of settlement proposals, stipulations, drafts of settlement

10

language, and related questions and answers." Declaration of Lisa Cleary ¶ 6 ("Cleary Decl."), ECF No. 122. These discussions did not derail the parties' weekly meetings regarding "the PPL transition and . . . the issues with registration or PA payment faced by individual Consumers." *Id.* at ¶ 9.

On July 7, the Court issued an order preliminarily approving the settlement, certifying the settlement class, appointing New York Legal Assistance Group ("NYLAG") and Patterson Belknap Webb & Tyler LLP ("Patterson Belknap") as class counsel (collectively, "Class Counsel"), appointing Named Plaintiffs as class representatives, and approving the dissemination of notice to class members. ECF No. 125. The Court also scheduled a fairness hearing for final approval of the class settlement for August 6. *See* Scheduling Order, July 7, 2025.

Plaintiffs submitted their unopposed motion for entry of a final approval order on July 25, 2025. ECF Nos. 128–31. On July 30, the United States filed a letter asking the Court to delay final approval of the settlement until 90 days following notice to the United States Attorney General, as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d). ECF No. 132. Defendant served § 1715 notice on the United States Attorney General and the New York State Attorney General on August 1, 2025. Declaration of Service ¶¶ 2–3, ECF No. 134.

Following the August 1 deadline in the Amended Injunction to register with PPL, Class Counsel informed the Court that "92% of Prior FI Consumers have either switched to personal care services (81%) or enrolled with PPL (11%)." Declaration of Elizabeth Jois ("Jois Decl.") ¶ 4, ECF No. 136-1. Class Counsel, based on conversations with Organizational Plaintiffs and Consumers through its transition hotline, "believe[d] there [were] no longer widespread barriers to registration with PPL, and that i[t] ha[d] become significantly easier to reach PPL representatives." Jois Decl. ¶ 6, ECF No. 131. As of July 24, "approximately 230,000 Consumers had fully registered with PPL" and "approximately 230,000 PAs, or nearly every PA who has completed onboarding, has been paid by PPL for time entered since April 1, 2025." Declaration of Amanda Lothrop ("Lothrop Decl.") ¶¶ 26–27, ECF No. 127. For reference, at the time they filed this class action, Plaintiffs "estimated that around 60,000 consumers hadn't even started the transition with tens of thousands more stuck in limbo trying to get themselves or their PAs transitioned or get their PAs paid." Tr. 12:06–09.

The Court held the fairness hearing on August 6. Minute Entry, ECF No. 139 (Aug. 6, 2025). On August 7, the Court extended the Amended Injunction "until the date on which the Court renders its decision on Plaintiffs' Motion for Entry of a Final Approval Order (ECF No. 128)." Electronic Order, ECF (Aug. 7, 2025).

12

## II.    Settlement Agreement

In preliminarily approving the settlement, the Court certified "a class consisting of: All Consumers who were in receipt of CDPAP services in March 2025 and (1) who received services from a Prior FI after April 1, 2025, or (2) who (a) were authorized for CDPAP services in the month of June 2025 and (b) did not receive any CDPAP services in the month of June 2025 and (c) did not switch to a different long-term care service." ECF No. 125. The size of the class is "in the range of 15,000." Pls.' Resp. to Objections at 6, ECF No. 136 (citing Lothrop Decl. ¶¶ 13, 18, ECF No. 127).

The Settlement Agreement secures numerous commitments from DOH that benefit the class. Importantly, the Settlement Agreement substantially provides the central injunctive relief Plaintiffs contemplated by enshrining the August 1 deadline for Consumers to transition to PPL and by requiring DOH to provide Medicaid Act-compliant written notice before discontinuing CDPAP services for Consumers who failed to timely register with PPL. *Id.* at ¶¶ 5(d)(iii), (iv)(1), 5(e)(ii), (iii). That notice will inform Consumers of their fair hearing rights with the right to continuing aid. *Id.*

The Settlement Agreement also provides extensive outreach to Consumers. Consumers who did not use CDPAP services in June 2025 will receive written notice informing them of how to register with PPL or another long-term care

13

service. *Id.* at ¶¶ 5(c)(i), 5(d)(i), 5(e)(i). Consumers who have already registered with PPL will receive a letter reminding them of how to contact PPL or DOH for assistance and informing them that Facilitators are available to provide day-to-day support in utilizing CDPAP services. *Id.* at ¶ 5(b)(i).

The Settlement Agreement contains other miscellaneous provisions that ensure continuity of care and access to support. It establishes an expedited process for onboarding Consumers and PAs not yet registered with PPL, including a DOH transition team and hotline, home visits to Consumers by Facilitators and Managed Care Organizations, and community in-person office visits for Consumers. *Id.* at ¶ 5(a)(vii). Facilitators will receive access to PPL's customer service representative system and training on how to use it. *Id.* at ¶¶ 5(f)(i), (ii). The Settlement Agreement also requires DOH to issue guidance on continuing aid and service authorization renewals. *Id.* at ¶ 5(h). And it requires DOH to regularly update Plaintiffs' counsel with aggregate data regarding the transition for six months following approval of the Settlement Agreement. *Id.* at ¶ 6.

### III. Objections

The Court has received four written objections to the Settlement. Two such letters, from Mike Volkman, *see* Volkman Objection, ECF No. 131-1, and Heather Burroughs, *see* Burroughs Objection, ECF No. 131-2, came from individuals who Class Counsel contends are not class members, Jois Decl. ¶ 9, ECF No. 131, and

14

are thus without standing to object, *see Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merkc-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007). Nevertheless, the Court will consider their objections. The Court also received written objections from two attorneys representing individual class members. Edward Wipper represented Alice Cucuta, *see* Cucuta Objection, ECF No. 136-2, and Akiva Shapiro represented Ardijana Redzovic and Patricia Rodriguez, *see* Redzovic Objection, ECF No. 136-3. These attorneys also articulated their objections at the fairness hearing.

The objections, *in toto*, span about seven topics: (1) issues with PPL, (2) the sufficiency of the Settlement Agreement's outreach and oversight provisions, (3) the August 1 deadline to register with PPL, (4) the allegedly ongoing DOJ investigation and New York State legislative hearings regarding the transition, (5) adequacy of notice to class members, (6) the lack of data-sharing with class members, and (7) whether the settlement adequately vindicates class members' fair hearing rights. The Court addresses each in turn.

First, Volkman and Burroughs raise concerns with PPL itself. Volkman objects to its ownership and the bidding procedure through which New York State selected it to be the single intermediary. These concerns, whatever their validity, are outside the scope of this litigation, which "never sought to contest DOH's right to appoint a Fiscal Intermediary or the propriety of choosing PPL as a Fiscal

Intermediary," but only the much narrower issue of the notice and opportunity for a fair hearing consumers were to receive in advance of that change. Tr. 12:24–13:09. Burroughs raises similar concerns with PPL and, *inter alia*, the "disruption of services and wage access" caused by the transition that is likewise outside this litigation's scope. ECF No. 131-2 at 2. Such concerns are better addressed by litigation directly contesting PPL's payment issues. *See Calderon v. Public Partnerships, LLC*, 25-CV-320 (Apr. 25, 2025).

Redzovic similarly asks the Court to withhold approval of the settlement until DOH demonstrates that PPL no longer suffers from service or payment issues. However, the settlement need not obtain the best possible litigation outcome, but only "a meaningful benefit to the class when considered against the obstacles to proving plaintiffs' claims." *Caballero by Tong v. Senior Health Partners, Inc.*, No. 16-CV-326, 2018 WL 4210136, at *12 (E.D.N.Y. Sept. 4, 2018). Ultimately, the Settlement Agreement "is [a] much, much better [solution] than a lengthy litigation that could have taken several months or years to go to judgment which would have only further delayed access to care for the vulnerable consumers that [Class Counsel have] been trying to protect." Tr. 14:22–15:01. The Court cannot commandeer the transition until PPL perfects its payment system, and this litigation never contemplated the Court doing so.

16

Second, Burroughs, Cucuta, and Redzovic object to the sufficiency of the Settlement Agreement's outreach and oversight provisions, arguing in part that the settlement does not benefit all class members. But that different standards could have been negotiated for outreach and oversight does not mean the proposed Settlement is unfair or unreasonable. The Settlement Agreement clearly benefits Consumers and PAs not yet registered with PPL while also providing support for already-transitioned Consumers and PAs by, for example, expanding the customer service role played by Facilitators. The possibility of obtaining more or different relief must be weighed against the risk and delay inherent in future litigation. *See In re Med. X-Ray Film Antitrust Litig.*, No. 93-CV-5904, 1998 WL 661515, at *12 (E.D.N.Y. Aug. 7, 1998) ("In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation."). The possibility of the objectors' ideal relief here is minimal, overshadowed by the risks associated with protracted litigation. *See* Tr. 14:22–15:01. The Settlement Agreement "does not have to be perfect, just reasonable, adequate and fair." *Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000).

Third, Burroughs and Redzovic contend that the August 1 deadline for Consumers to transition to PPL set in the Amended Injunction was unrealistic. It is of note that the Amended Injunction extended that deadline four months past its original date of April 1. However, that a longer extension of the registration

17

deadline may have been possible to secure does not render the proposed settlement unfair or unreasonable. There are two categories of unregistered Consumers: those who do not know that they must transition to PPL, and those who know but are choosing not to transition. For the former, extending the deadline is less likely to alert them of their need to register with PPL than the outreach, support and Medicaid Act-compliant notice provided by the Settlement Agreement. The latter have received notice and must transition. Plaintiffs never sought to stop the transition; they only sought to delay it until Consumers received Medicaid Act-compliant notice and access to the fair hearing process and associated continuing aid. The benefits obtained for class members here are clearly substantial, outweighing the risks of continued litigation. Class Counsel have secured significantly greater time and support for Consumers to transition to PPL.

Fourth, Cucuta and Redzovic object that the settlement should not be finalized prior to the conclusion of a United States investigation, *see* ECF No. 61, and New York State legislative hearings about the transition, or at least until the 90-day period proscribed in 28 U.S.C. § 1715(d) expires, because the United States "may very well come in with an objection and may very well have new facts that they have uncovered [] that may very well change the dynamics" of the settlement. Tr. 24:01–10. But this concern is also outside the scope of this litigation. To the extent any investigation or hearing might yield new facts, they would not impact

18

the fairness, reasonableness, or adequacy of the settlement. Plaintiffs brought claims to vindicate their notice and fair hearing rights, which the settlement provides for. *See* Settlement Agreement ¶¶ 5(d)(iii)–(iv)(1), 5(e)(ii). No new information could change that. Cucuta also argues that there is no harm in delaying the settlement to allow these processes to unfold, but this is not so. While there may be value in such a delay, there is also value in providing earlier finality and certainty to class members. And the Court may revisit its final approval if the United States requests a hearing or otherwise objects.

Fifth, Cucuta objects to the adequacy of the notice and information provided to class members. However, Plaintiffs brought a Rule 23(b)(2) class, Compl. ¶ 169, and have correctly observed that "Rule [23] provides no opportunity for (b)(1) or (b)(2) class members to opt out and does not even oblige the District Court to afford them notice of the action[,]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

Sixth, Redzovic and Cucuta seek to extend the Settlement Agreement's data sharing provisions, which require Defendant to update Class Counsel on the transition's status, to all class members. The Court sees no reason to distribute such sensitive data to class members when it has already furnished relevant information to their Class Counsel, who have adequately represented the class's interests and

19

retain oversight authority under the Settlement Agreement. It is also unclear how this data would help class members evaluate the settlement.

Seventh, Redzovic objects that the Settlement fails to secure the litigation's goal of obtaining fair hearings. But that is mistaken, as the settlement provides for fair hearings. *See, e.g.*, Settlement Agreement ¶ 5(d)(iv)(2) ("For such Consumers who timely request a fair hearing after receiving the Disenrollment Notice . . . hearings will be scheduled on a priority basis and the disenrollment process will cease."). The Settlement Agreement does not have to precisely outline the process for such hearings when it is enshrined in New York law, 18 N.Y.C.R.R. pt. 358 *et seq.*, as required by the Medicaid Act, 42 C.F.R. § 431.205. Redzovic also objects to the additional outreach to Consumers who request a fair hearing, calling it aggressive and fearing that it undermines the right by pressuring Consumers to transition to PPL. But such communications provide additional opportunities to address questions and issues before the hearing, expediting the process and potentially obviating the need for the hearing.

Having considered these objections, the Court is assured that the Settlement Agreement is procedurally and substantially fair, reasonable, and adequate. Further, the Court only received four objections from a class "in the range of 15,000." Pls.' Resp. to Objections at 6, ECF No. 136 (citing Lothrop Decl. ¶¶ 13, 18, ECF No. 127). "The small number of . . . objections relative to the size of the

20

class in this case supports approval of the settlement." *Sykes v. Harris*, No. 09 CIV. 8486, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (collecting cases).

## IV.    Attorneys' fees

"[W]hen reviewing the substantive fairness of a proposed settlement, 'the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem." *Kurts v. Kimberly-Clark Corp.*, 142 F.4th 112, 118 (2d Cir. 2025) (quoting *Moses*, 79 F.4th at 244). Doing so requires "[district] courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Id.* at 118–19 (citing Fed. R. Civ. P. 23(e)). This directive necessarily obliges district courts to engage in a proportionality analysis, comparing the fees to a hypothetical benchmark. "[T]he most appropriate benchmark to use in any specific settlement is the kind of fact-bound question that is best left to the district court's discretion." *Id.* at 119.

According to the Fee Stipulation, "DOH, on behalf of Defendant," will pay $1,052,644 to Class Counsel to cover costs and fees. Fee Stipulation ¶ 1. Specifically, NYLAG will receive $475,200 and Patterson Belknap will receive $580,144. *Id.* at ¶ 1(a). "Patterson Belknap anticipates a charitable donation of its fees to NYLAG after deduction of all expenses the firm incurred in prosecuting the

21

case." Cleary Decl. ¶ 6, ECF No. 130. Costs comprise $2,644 of Paterson Belknap's $580,144 award, with the remaining $577,500 allocated for attorneys' fees. *Id.* at ¶ 7.

Class relief here is nonmonetary, requiring, *inter alia*, DOH to provide Medicaid Act-compliant notice informing Consumers of their fair hearing rights. Settlement Agreement ¶¶ 5(d)(iii)–(iv)(1), 5(e)(ii). This relief vindicates the core of Plaintiffs' claims, which alleged a deprivation of such notice and fair hearing rights. Hence, the Court has little concern that the proposed attorneys' fees unfairly and disproportionately reduce relief to class members because that relief is nonmonetary and encompasses the relief Plaintiffs otherwise sought. The Fee Stipulation is thus fair and reasonable and is approved.

The Court commends Class Counsel and Defendant for their hard work in the spirit of cooperation. Over the past several months, the Court has "had the privilege of dealing with the professional people at the highest level of our profession who are trying to do some good for the public." Tr. 21:25–22:02. Patterson Belknap's commitment to its pro bono practice and NYLAG's service to marginalized New Yorkers has impressed the Court and undoubtedly inspired our legal community.

## V.   Conclusion

For these reasons and those described in the Court's Order, Plaintiffs' Motion for Entry of a Final Approval Order is GRANTED. The Settlement Agreement and Fee Stipulation are approved as fair, reasonable, and adequate. Absent any objection or a request for a hearing by the United States Attorney General or the New York State Attorney General, this memorandum and order approving settlement will become final on October 3, 2025.[5] *See* 28 U.S.C. § 1715(d).[6]

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　\_\_/S/ Frederic Block_____
　　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
August 12, 2025

---

[5] The Order recognizes this abeyance requirement and only "provisionally approves the Settlement Agreement, subject to the 90-day notice period set forth in 28 U.S.C. § 1715(d)." Order ¶ 8.

[6] The Court gave objectors one week after the hearing, until August 13, to submit additional written comments. Tr. 51:15–16. If the Court receives such comments and they affect its reasoning, it will amend this decision if necessary.