**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY  10166-0193
Tel 212.351.4000
gibsondunn.com

Akiva Shapiro
Direct: +1 212.351.3830
Fax: +1 212.351.6340
ashapiro@gibsondunn.com

August 13, 2025

<u>VIA ECF AND UNITED PARCEL SERVICE</u>

The Honorable Frederic Block
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *Engesser v. McDonald*, Case No. 1:25-cv-01689-FB-LKE – Supplemental Objection

Dear Judge Block:

We represent CDPAP Consumers and Class Members Ardijana Redzovic and Patricia Rodríguez, who have objected to the proposed class settlement in the above-referenced case.[1] This letter serves to supplement the written objections we filed on their behalf on July 30, *see* ECF 136, as well as the objections I made on their behalf at the August 6 Fairness Hearing, at the conclusion of which Your Honor invited the instant supplemental filing.

As this Court recognized at the Fairness Hearing, it is crucial that "nothing will change" and that there be "no gaps in service" during the U.S. and State Attorney Generals' review period, pending potential final approval of the Settlement Agreement.  That is why this Court on August 7 entered an Order "exercis[ing] its discretion under Section XI(b) of the Amended Preliminary Injunction" to "extend its Expiration Date as defined in Section I(h) until the date on which the Court renders its decision on Plaintiffs' Motion for Entry of a Final Approval Order (ECF No. 128)."  However, to meaningfully ensure that the status quo is maintained, that there are no gaps in service, and that Class Members not be irreparably harmed during the pendency of the Attorney Generals' review, and pending any objection they may register, we respectfully request that the Court reconsider that part of its August 7 Order that declined to change any other dates in the Amended Preliminary Injunction.

***Specifically, we respectfully request that the Court exercise its discretion to grant interim relief and extend the Registration Deadline under Section I(j) of the Amended Preliminary Injunction, which expired on August 1, 2025, to the date on which the Court renders its final decision on Plaintiffs' Motion for Entry of a Final Approval Order.***  We also respectfully request that the Court reconsider its provisional approval of the class settlement as set out in its August 12, 2025 Memorandum and Order (ECF 140), and instead withhold any decision until it receives and considers any objections that may be registered by the U.S. and State Attorneys General by October 3, 2025, after which time it should decline to approve the proposed settlement unless and until the conditions set out in our objection letter are satisfied.

---

[1] Unless otherwise noted, all capitalized terms have the meaning ascribed to them in the Amended Preliminary Injunction, ECF 118, and the Settlement Agreement, ECF 122-1. All emphasis is added unless otherwise noted.

August 13, 2025
Page 2

**1. Interim Relief Consistent with DOJ's Letter Is Necessary to Ensure No Gaps in Service While DOJ and the Court Review.**

The only way to ensure that those Class Members who have not yet transitioned to PPL, or whose Personal Assistants have not yet been fully onboarded with PPL, do not lose CDPAP services during the pendency of DOJ's and this Court's reviews of the proposed class settlement is to extend the Amended Preliminary Injunction's Registration Deadline to the date on which the Court renders its final decision on Plaintiffs' Motion for Entry of a Final Approval Order. That is also the only way to ensure that Class Members whose rights will be permanently waived via the proposed settlement can do so on a fully informed basis. There is no question that this Court has the authority to further tweak the Amended Preliminary Injunction in this narrow but important way; it should exercise its discretion and do so.

*First*, Plaintiffs' failure to address the ongoing DOJ and State Senate investigations cannot obscure what is manifestly clear: that the purpose of the 90-day notice is for federal and state authorities to evaluate the appropriateness and fairness of any proposed class settlement. Here, DOJ and the State Senate are currently investigating the very misconduct and events at issue in this case, and the U.S. and State Attorneys General have not had the opportunity to register any objections they may have, despite the statutory notice period not expiring until October 3, 2025.[2] It would defeat the purpose of the CAFA notice requirement to effectively implement the Settlement Agreement while federal authorities are actively "evaluating the proposed settlement," ECF 132, and before they have the opportunity to be heard on any objections.

In their August 1 letter to the Court, the Department of Health and Plaintiffs agreed that the settlement cannot be finally approved until October 3, 2025, at the earliest. ECF 135. But they asked that the Court effectively implement the settlement in the interim by immediately provisionally approving it and by refusing to extend the Registration Deadline in the Amended Preliminary Injunction such that Consumers can no longer receive CDPAP services from their Prior FI during the pendency of the DOJ and Attorney Generals' review. Respectfully, the Court should not have acceded to this request to effectively implement the settlement prior to the running of the statutory notice period, and it should reconsider that aspect of its Order.

*Second*, extending the Registration Deadline until the date on which the Court renders its final decision on Plaintiffs' Motion for Entry of a Final Approval Order is the only way to provide Class Members, including Mses. Redzovic and Rodríguez, with continuity of service until DOJ and the State Senate complete their investigations, the Attorney Generals register any resulting

---

[2] As publicly reported, DOJ's investigation of the transition to PPL is significant and ongoing, despite Plaintiffs' claims to not being aware of it. *See* Vaughn Golden, *Feds investigate Gov. Kathy Hochul's home care program reforms after chaotic rollout: source*, N.Y. Post (June 2, 2025), available at https://nypost.com/2025/06/02/us-news/feds-investigate-gov-kathy-hochuls-home-care-program-reforms-after-chaotic-rollout-source/. DOJ's investigation accompanies that of the New York State Senate Standing Committee on Investigations & Government Operation, which has a hearing scheduled for August 21, 2025. Joint Public Hearing: Consumer Directed Personal Assistance Program (CDPAP), https://www.nysenate.gov/calendar/public-hearings/august-21-2025/joint-public-hearing-consumer-directed-personal-assistance.

August 13, 2025
Page 3

objections they may have, and the Court issues its final decision on the proposed class settlement. Absent extension of this deadline, Class Members who have not switched to PPL face immediate discontinuance of their CDPAP services. This runs counter to the Court's stated goal of preventing gaps in service for Class Members during the review period.

Plaintiffs' counsel also suggested at the Fairness Hearing that extension of the Registration Deadline would not preserve the status quo because the August 1 deadline has already passed. This argument is wrong both as a matter of law and as a matter of equity. As a matter of law, it is well-established that the status quo to be preserved by a preliminary injunction is "the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994) (citing Black's Law Dictionary 1410 (6th ed. 1990)). The Department of Justice and the Objectors submitted their letters before August 1, at which time Class Members were permitted to continue receiving services from their Prior FIs. A party knowing there is a pending challenge cannot rush to alter the status quo in an act of self-help to frustrate the requested relief, which is what Plaintiffs attempt to do here. *See N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 n.5 (2d Cir. 2018) ("This special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing."); *Kimm v. Blue Cross & Blue Shield of Greater New York*, 160 Misc. 2d 97, 106 (N.Y. Sup. Ct. 1993) ("A party may not unilaterally transform a situation, and then be heard to argue that a preliminary injunction cannot be issued because it would change the status quo").

As a matter of equity, it is difficult to comprehend why Plaintiffs' counsel—who is tasked with representing the interests of **all** Class Members, and who previously argued that it is critical that no one in this vulnerable population be left behind[3]—would be in any hurry to discontinue the services of any Class Member. Put another way, any small gap in time between the DOJ's and Objectors' letters and the present does not frustrate the Court's equitable powers to ensure that there are no gaps in service. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579-80 (2017) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents."). Consumers, including Mses. Redzovic and Rodríguez, require continuity of care and services while DOJ and this Court review the Settlement Agreement.

    **2. Plaintiffs' Counsel's Arguments at the Hearing Fail to Establish That the Settlement Agreement Is Fair, Reasonable, or Adequate.**

The Settlement Agreement is unfair, inadequate, and unreasonable in key respects, and should be rejected as such. The Court's provisional approval of the proposed Settlement Agreement—which by its terms does not become final unless the U.S. and State Attorneys

---

[3] *See, e.g.*, ECF 11 (asserting, in response to DOH's contention that an extension of the PI was unnecessary because only a "tiny fraction" of Consumers had not yet transitioned, that "Defendant ignores that this 'tiny fraction' represents [an undisclosed number of] Consumers who are still without services" and that "these Consumers are just as entitled to services and their accompanying procedural protections as their CDPAP Counterparts" and that this is exactly why the extended PI was "needed.").

August 13, 2025
Page 4

General decline to register objections by October 3, 2025, or objections are registered and the Court considers and rejects them—is at this point advisory only and should be reconsidered. At minimum, given the significant changes on the ground that may occur between now and October, and the fact that final approval will not occur until then at the earliest, the Court should vacate its provisional approval, provide Plaintiffs and the State with the opportunity to provide updated transition information by October 3, 2025, and reserve decision until then.

*First*, Plaintiffs' recent, extraordinarily narrow reframing of their own case, in which they suggest that the only relief sought in this litigation was notice of the transition to the Class Members, fails to acknowledge that approval of the Settlement Agreement would completely eliminate a core component of the relief sought: adequate time for ***all*** CDPAP Consumers to transition.[4]  Despite Plaintiffs' recent attempts to frame their case narrowly, they previously sought relief on behalf of everyone who has not yet fully transitioned ***or*** whose PAs have not yet fully onboarded with PPL; the Complaint seeks to ensure ***continuity of care*** for Consumers; and the Settlement Agreement fails to provide a tangible benefit to a significant portion of this Class.  Specifically, the Class includes the tens of thousands of Consumers who have not yet registered with PPL or whose PAs have not fully onboarded and, therefore, will have their "continuity of care" disrupted if the Settlement Agreement is implemented now.

*Second*, systemic issues continue to plague the transition to PPL and threaten to leave thousands of Consumers without services and care should the Settlement Agreement be approved.  Ms. Redzovic's transition process to PPL, which was described by her father as a "disaster," is illustrative on this point.  Since their family transitioned to PPL, Ismet Redzovic, Ms. Redzovic's father, has not received about half of the payments he is owed by PPL.  Ms. Redzovic's story is unfortunately not unique and, without pay, PAs may be forced to leave their Consumers in search of alternative employment.  Plaintiffs now argue that since the Class is made up of Consumers, not PAs, any broader issues with PAs not being paid or facing payment issues, or the admitted broader failure of PAs to fully transition (to the tune of between 70,000 and 170,000, depending on which figures one uses), is irrelevant.  But, as Plaintiffs themselves pointed out, "lack of PA payment is the proper indicator of harm," because "a Consumer whose PA is not paid does not have Medicaid services."  ECF 111 at 2.

---

[4] *See, e.g.,* Complaint (ECF 1) ¶ 20 ("Plaintiffs bring this lawsuit on behalf of themselves and all CDPAP participants to seek an extension of the deadline and other relief, which will ***give participants adequate time to work with PPL to complete the transition*** without putting their health or lives at risk."); *id*. at ¶ 4 (DOH is "responsible for ensuring that CDPAP participants transition from their prior Fiscal Intermediaries to PPL ***without a loss or suspension of services***"); *id*. at ¶ 88 (under applicable state law, the "transfer from one Fiscal Intermediary to another '***shall not diminish any of an individual's rights relating to continuity of care***[.]'"); *id*. at ¶ 169 (defining the Class as all individuals who receive CDPAP services "***who have not completed enrollment***, or whose Personal Assistants have not completed registration."); *see also* Letter to Judge Block from Lisa E. Cleary re: Pre-Motion Conference (ECF 77) (explaining that the "intended purpose" of the original PI was "to provide continuity of services" and to "protect tens of thousands of New Yorkers from continued loss of care, while facilitating the transition to PPL"—and that an extension of the PI was necessary to ensure that "Consumers who still are not receiving services ***need additional time to transition*** to PPL").

August 13, 2025
Page 5

As such, the ongoing systemic payment issues is reason alone to deny the Settlement Agreement.

*Third*, and most troublingly, in another abrupt about-face, Plaintiffs now seem to blame Consumers who have not yet transitioned to PPL, ignoring that they previously called DOH's identical position "shocking." ECF 111 at 4. As Plaintiffs themselves explained, Consumers currently "underusing their [CDPAP] authorizations"—*i.e.* those at highest risk of losing services under the Settlement Agreement—"may not know about the transition; may be struggling with registration or PA onboarding; may have lost a PA; or may be about to lose them due to nonpayment." ECF 111 at 4. Nevertheless, Plaintiffs now make much of the fact that in their view, a large majority of Consumers have either left the program or transitioned to PPL, even though **thousands** remain who have still not yet registered with PPL. *See* ECF 129 at 7.[5] Focusing on the fact that a substantial majority of Consumers have been driven out of the CDPAP program is misleading and fails to address the fact that it would be unfair, unreasonable, and inequitable to force through a settlement that immediately cuts the remaining Consumers out of the CDPAP program.[6]

Of course, the situation on the ground may change between now and October 3, 2025—the earliest date for potential final approval of the Settlement Agreement. The agreement should not be approved or implemented before that time.[7]

## Conclusion

In light of the above, we reiterate and supplement our objection to the Settlement Agreement on behalf of Mses. Redzovic and Rodríguez. We respectfully request that the Court reconsider its provisional approval of the Settlement Agreement, withhold any decision until it receives and considers any objections that may be registered by the U.S. and State Attorneys General by October 3, 2025, and decline to approve any class settlement until such time, at minimum, as: (1) all Class Members are provided access to the full set of transition data that DOH has provided and will continue to provide to Plaintiffs; (2) all Consumers and PAs who were receiving or providing CDPAP services in March 2025 have successfully registered and

---

[5] Although Plaintiffs' counsel asserted at the Fairness Hearing that the figure they recently provided of 11,000 Consumers who remain in the CDPAP program and have not fully registered with PPL is no longer accurate, they gave a convoluted answer to the Court's request for an update and did not provide a concrete updated figure.

[6] Per Plaintiffs' response to our objections (ECF 136), an overwhelming majority of these Consumers—**81%**—transitioned to personal care services, with only 11% transitioning to PPL.

[7] Plaintiffs also suggest that the representation of Mses. Redzovic and Rodríguez constitutes a conflict of interest because the undersigned has "represented [Prior FIs] in multiple different actions in state and federal courts in New York." ECF 136. It is unfortunate that Plaintiffs have resorted to baseless ad hominem attacks instead of continuing to defend the interests of all Class Members. It is specifically because the interests of these objectors were no longer being adequately defended by Plaintiffs that Mses. Redzovic and Rodríguez needed separate counsel. And the interests of Mses. Redzovic and Rodríguez and Prior FIs are strongly aligned, as Mses. Redzovic and Rodríguez object to the Settlement Agreement precisely because they wish to continue receiving services from their Prior FI.

August 13, 2025
Page 6

onboarded with PPL or affirmatively opted out of the CDPAP program; and (3) it is affirmatively demonstrated that, for a period of 60 days, PPL has suffered no material payment, service, or related issues with respect to the CDPAP Consumers and PAs.

In the interim, in order to ensure that there are no material changes on the ground and no gaps in service for Consumers while the U.S. and State Attorneys General review the proposed settlement, we respectfully request that the Court extend the Registration Deadline under Section I(j) of the Amended Preliminary Injunction to the date on which the Court renders its decision on Plaintiffs' Motion for Entry of a Final Approval Order. This narrow but important interim relief will permit Consumers who have not yet registered with PPL, or whose PAs have not yet fully onboarded with PPL, to continue receiving CDPAP services from Prior FIs until such time as the Court receives and considers any objections from the relevant Attorneys General arising from DOJ's (as well as the State Senate's) ongoing investigations.

Respectfully submitted,

*/s/* Akiva Shapiro

Akiva Shapiro, on behalf of objectors Ardijana Redzovic and Patricia Rodríguez

6