UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIZA ENGESSER, MARISOL GETCHIUS, GEETANJALI SEEPERSAUD by her Next Friend SAVITRI SEEPERSAUD, and MARIA JAIME on her own behalf and as Next Friend to Y.P.S. and C.P., individually and on behalf of all persons similarly situated; BROOKLYN CENTER FOR INDEPENDENCE OF THE DISABLED, and REGIONAL CENTER FOR INDEPENDENT LIVING, <br><br> Plaintiffs, <br><br> -against- <br><br> JAMES V. MCDONALD, as Commissioner Of The New York State Department Of Health, <br><br> Defendant. | **MEMORANDUM** <br> Case No. 25-CV-1689 |

*Appearances:*
*For the Plaintiffs:*
LISA E. CLEARY
CAITLIN ROSS
EMMA GUIDO BRILL
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

ELIZABETH A. JOIS
JULIA GROSSMAN RUSSELL
New York Legal Assistance Group
7 Hanover Square
New York, NY 10004

*For the Defendant:*
RACHEL PAM SUMMER SAMANTHA LEIGH BUCHALTER New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005

1

**BLOCK, Senior District Judge:**

The Court provisionally approved Plaintiffs' Motion for Entry of a Final Approval Order of the parties' class action settlement on August 12, 2025 (the "Decision"). ECF No. 140.[1] In its Decision, the Court addressed objections submitted by Alice Cucuta, represented by Edward Wipper, *see* Cucuta Objection, ECF No. 136-2, and Ardijana Redzovic and Patricia Rodriguez, represented by Akiva Shapiro, *see* Redzovic Objection, ECF No. 136-3. At the August 6 fairness hearing, the Court gave these objectors one week—until August 13—to submit written renewed objections. ECF No. 139. Wipper, on behalf of Cucuta, ECF No. 145 ("Wipper"), and Shapiro, on behalf of Redzovic and Rodriguez, ECF No. 144 ("Shapiro"), have done so. The Court now writes separately to explain why these renewed objections do not warrant revisiting the Decision.

First, Shapiro asks the Court to vacate its provisional approval of the Settlement Agreement until October 3 to give the United States and New York State Attorney General ("State Attorney General") time to object or provide new, relevant facts regarding the transition. Wipper renews a similar request, instead asking the Court to hold approval in abeyance until 60 days following the United States' investigation and the New York State Senate ("NY Senate") investigation. "Each investigation concerns DOH's corruption in gifting PPL a monopoly over FI

---

[1] The Court assumes familiarity with the background and references in the approval decision.

2

services[.]" Wipper at 2. The NY Senate hearing, set for August 21, additionally covers "the program's transition to . . . PPL, and the challenges experienced by enrollees, workers, and stakeholders [in transitioning] . . . [with the goal of] mitigating adverse outcomes for the thousands across New York State who rely on this program." *Id.* At 3.

As explained in the Decision, these investigations "would not impact the fairness, reasonableness or adequacy of the settlement." Decision at 18–19. The United States has until October 3 to object or request a hearing, as provided by CAFA. The only scheduled NY Senate hearing is for August 21, giving ample time before October 3 to provide the Court with any uncovered facts relevant to Plaintiffs' claims. The Court has reserved the right to revisit the Decision before then.

Further, the Settlement Agreement provides the central relief sought by Plaintiffs'—vindication of their notice and fair hearing rights. *See* Decision at 19. Much of the subject matter of the investigations is outside the scope of these claims. Plaintiffs never sought to uncover fraud. They never sought to challenge the ultimate transition to PPL. Plaintiffs specifically sought notice for Consumers about their own need to transition, and the potential disruption to CDPAP services that could follow from not doing so. The injunctive relief procured by the Settlement Agreement provides those exact remedies—the Settlement Agreement

3

will directly mitigate the adverse outcomes Plaintiffs' case targeted. Facts potentially uncovered in these investigations cannot change the propriety of such relief.

Second, Shapiro asks the Court to extend the Amended Injunction's August 1 deadline to register with PPL ("Registration Deadline") until the date on which the Settlement Agreement becomes final. Shapiro argues that this extension is necessary to ensure continuity of care pending final approval of the settlement by allowing Consumers to "receive CDPAP services from their Prior FI during the pendency of the DOJ and Attorney Generals' review [of the Settlement Agreement]." Shapiro at 2.

But the lack of such extension does not render the Settlement Agreement unfair, unreasonable, or inadequate. In negotiating the Settlement Agreement at arms-length, Class Counsel might have strategically agreed to maintain the August 1 Registration Deadline to secure other relief central to their claims. The Court must respect Class Counsel's decision, especially given their exceptional representation of the class members, and will not disrupt an otherwise fair, reasonable, and adequate settlement just because objectors allege that more "perfect" relief exists. *See Joel A. v. Giuliani*, 218 F.3d 132, 144 (2d Cir. 2000). Further, the Settlement Agreement provides the notice and other relief sought by Plaintiffs. Plaintiffs' original TRO request for an extension of time to register with

4

PPL inherently arose from that lack of notice—Plaintiffs needed the additional time because they did not receive notice that failure to register would disrupt services. Even so, the Registration Deadline has already been extended four months and Class Counsel have represented that the challenges to registration are now minimal. *See* Decision at 12.

It is true that additional registration time could help Consumers. But it is less likely to help Consumers than the notice contemplated by the Settlement Agreement. "There are two categories of unregistered Consumers: those who do not know that they must transition to PPL, and those who know but are choosing not to transition. For the former, extending the deadline is less likely to alert them of their need to register with PPL than the outreach, support and Medicaid Act-compliant notice provided by the Settlement Agreement. The latter have received notice and must transition. Plaintiffs never sought to stop the transition; they only sought to delay it until Consumers received Medicaid Act-compliant notice and access to the fair hearing process and associated continuing aid." *Id.* at 18.

Third, Wipper asks the Court to exercise its discretion to notify class members "that settlement would potentially result in waiver of claims arising out of facts uncovered by the investigation, and likewise allow class members to opt out of such settlement after notice." Wipper at 3. It is clear that Rule 23 "provides no opportunity for [Rule 23](b)(2) class members to opt out, and does not even

5

oblige the District Court to afford them notice of the action." *Wal-Mart v. Dukes*, 564 U.S. 338, 362 (2011); *see also Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 137 (E.D.N.Y. 2020) ("Rule 23(b)(2) does not require district courts to give notice or the opportunity for class members to opt out[.]"). While conceivably Rule 23 may be "sufficiently flexible" to afford the Court the discretion to nevertheless provide such notice, the Court does not do so here. *Id*. The Court is satisfied that the Settlement fairly and adequately provides Class Members the core of the only relief—Medicaid-Act compliant notice and fair hearing rights—that they would be foreclosed from pursuing independently on account of their membership in the class. Specifically, the Settlement Agreement waives class members' claims "concerning the conduct challenged in the Action in violation of the Medicaid Act, 42 U.S.C. § 1396 and its implementing regulations, and the United States Constitution." Settlement Agreement ¶ 11, ECF No. 141. The Settlement Agreement does not foreclose class members from bringing other claims that the investigations could enable.

Fourth, Shapiro asks the Court to withhold provisional approval of the settlement until October 3, because "it would defeat the purpose of the CAFA notice requirement to effectively implement the Settlement Agreement while federal authorities are actively 'evaluating the proposed settlement,' ECF No 132, and before they have the opportunity to be heard on any objections." Shapiro at 2.

6

That is not an objection to the fairness, reasonableness, or adequacy of the settlement, but the Court's handling of the settlement's approval. It is standard practice in the Second Circuit to provisionally approve a settlement pending the 90-day notice period in 28 U.S.C. § 1715(d). *See, e.g.*, *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417, 2024 WL 4351357, at *18 (E.D.N.Y. Sept. 30, 2024) (recommending that "any decision on final approval of the settlement" be held in abeyance until "the 90-day period under Section 1715(d) has expired"); *Deangelis v. Corzine*, 151 F. Supp. 3d 356, 362 (S.D.N.Y. 2015) (entering final judgment following provisional approval to giving 90 days to object per 28 U.S.C. § 1715(d)).

Shapiro's objection "would further delay final approval of the [Settlement Agreement], creating significant risk to" class members who might still be unaware of the required transition to PPL. *Id.* Without provisional approval, the Settlement Agreement's relief falls apart as the parties cannot initiate the steps necessary to provide notice and fair hearing rights in time to ensure the very continuity of care that the objectors are concerned with. And, practically, no investigation can change that the Settlement Agreement provides the relief achievable by the claims waived by the Settlement Agreement. In other words, delaying provisional approval would only harm class members. Class members need "finality and certainty[.]" Decision at 19. The Court understands that these

7

objectors, represented by lawyers who have made appearances on behalf of FIs,[2] have a lot to gain by reviving the ability to remain with prior FIs. *See, e.g.*, Amended Injunction at II(c)(ii), ECF No. 118. But the Court cannot commandeer the transition in contradiction to a settlement that is otherwise fair and reasonable, and these three objectors cannot commandeer relief necessary for countless other class members.

Accordingly, the objections renewed by Cucuta, Redzovic, and Rodriguez do not affect the reasoning of the Decision such that the Court must amend it. The Settlement Agreement remains "approved as fair, reasonable, and adequate. Absent any objection or a request for a hearing by the United States Attorney General or the New York State Attorney General, this memorandum and order approving settlement will become final on October 3, 2025.5 See 28 U.S.C. § 1715(d)." Decision at 23.

**SO ORDERED.**

                                             _/S/ Frederic Block_____
                                             FREDERIC BLOCK
                                             Senior United States District Judge

Brooklyn, New York
August 14, 2025

---

[2] Wipper has entered an appearance on behalf of Caring Professionals, a fiscal intermediary. *See* ECF No. 47. Shapiro has entered an appearance on behalf of Freedom Care, LLC, "the largest fiscal intermediary in New York prior to the transition[.]" ECF No. 69 at 1.