1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
LIZA ENGESSER,                    : 25CV1689(FB)
                                  :
     -against-                    :
                                  : United States Courthouse
JAMES V. MCDONALD                 : Brooklyn, New York
IN HIS CAPACITY AS THE            :
COMMISSIONER OF THE NEW YORK      :
STATE DEPARTMENT OF HEALTH,       : Monday, March 31, 2025
                                  : 3:00 p.m.
           Defendant.             :
- - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES SENIOR JUDGE

A P P E A R A N C E S:

For the Plaintiff:   PATTERSON BELKNAP WEBB & TYLER LLP
                        1133 Avenue of the Americas
                        New York, NY 10036
                     BY:CAITLIN ROSS, ESQ.
                        LISA E. CLEARY, ESQ.

                     NEW YORK LEGAL ASSISTANCE GROUP
                        100 Pearl Street, 19th Floor
                        New York, NY 10004
                     BY:ELIZABETH A. JOIS, ESQ.

For the Defendant:   NYS OFFICE OF THE ATTORNEY GENERAL
                        28 Liberty Street
                        New York, NY 10005
                     BY:RACHEL SUMMER, ESQ.
                        SAMANTHA LEIGH BUCHALTER, ESQ.

SUSAN LAWLESS, Department of Health

Court Reporter:   **SOPHIE NOLAN**
                    225 Cadman Plaza East/Brooklyn, NY 11201
                    **NolanEDNY@aol.com**
*Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription*

SN        OCR        RPR

Proceedings                                                2

(In open court.)

(The Hon. FREDERIC BLOCK, presiding.)

THE COURTROOM DEPUTY:  Civil cause for oral argument, *Engesser v McDonald*.

I would ask counsel to step up to the bar and state your appearances.

THE COURT:  Speak up a little louder because I left my hearing aids upstairs is.

MS. ROSS:  My name is Caitlin Ross appearing on behalf of Patterson Belknap Webb & Tyler as pro bono counsel along with the New York Legal Assistance Group for the named plaintiffs and proposed class.

MS. SUMMER:  I'm Rachel Summer with the Office of the New York State Attorney General, on behalf of Defendant, James McDonald.

THE COURT:  You both have lovely voices.  You speak nicely and slowly and softly, which I like under normal circumstances, but I give you permission to yell at the judge.

This is obviously an important case.  There's a lot of people that are interested in it and I guess I should ask the Attorney General, that's Ms. Summer?

MS. SUMMER:  Yes, Your Honor.

THE COURT:  It seem from a logical first impression, maybe second impression, that's what wrong with having a TRO here, just stopping the action so the judge can take a good

SN        OCR        RPR

Proceedings                                                        3

look at it and you guys can brief it and we can chat about it because obviously it's an important issue.

It concerns the rights of people arguably to have the opportunity to have access to this, I guess, program which we all like, right?  The question is how should it be administered, I guess, right?  But what's wrong with just stopping the action to give you folks an opportunity to, you know, submit some papers and submit some briefs and come back here and maybe argue about it and see if I can render a reasoned decision without having to race to judgment?

That's my question to you.

MS. SUMMER:  That's a good question.  If I could grab my notes, please.

THE COURT:  Go ahead.

MS. SUMMER:  If I could do the same, Your Honor, that would be great.

THE COURT:  Sure.  I do not mean to make you nervous, but sometimes when you wear the black robe you make people nervous no matter what you say.

All right.  Are you ready?

MS. SUMMER:  Yes, Your Honor.  I don't think it's as simple as just issuing a TRO and giving the Court or the plaintiffs anyone time to review.

So, what's scheduled to happen on April 1st, tomorrow, is for a statewide fiscal intermediary or FI to go

Proceedings                                              4

into effect.

This contract was set up in accordance with the statute getting implemented tomorrow.  The contract is tied up within the statute.  So if stay the statute, it stays this contract with the statewide FI or PPL which stands for Public Partnerships LLC.  So, staying the statute stays that contract.

At this point in time there have been 195,000 consumers or people who receive the CD PAP program who have registered or are currently registering with PPL --

THE COURT:  You're telling me if we stay it, these people would be harmed; is that what you're telling me?

MS. ROSS:  Effectively, yes, because their personal assistants, their PAs, would not be getting paid through this CD PAP program.

THE COURT:  These are people who are ready to get this aid as of tomorrow, I guess, right?  And you're telling me that if we issue a TRO, they're not going to get it and, therefore, they're going to be disadvantaged?

MS. ROSS:  To be clear, the service itself, the CD PAP services that they receive, that is not being affected.  Those consumers, the people who receive the service, will receive it today, they will receive it tomorrow, they will receive it regardless.

The issue is that the personal assistants who assist

SN       OCR       RPR

Proceedings                                      5

the consumers, they get paid through the fiscal intermediary. This statute changes that fiscal intermediary, the person who pas them, from over 600 FIs in the state right now to one state-wide --

THE COURT:  You want to consolidate to that one instead of 600, right?

MS. SUMMER:  It makes it easier, yes.  It saves the State close to $500 million annually.  It makes administration easier --

THE COURT:  It may well be that you'll be able to do that eventually.  The question is does it have to be done this very second.  Maybe there's a more-sensible way of staging it in, but I'm concerned if anyone would be harmed if I do grant this brief TRO.  You're telling me that the answer is yes.

MS. SUMMER:  Correct, yes.

THE COURT:  So, I want to hear from your adversary about that.

What do you say about that?

MS. ROSS:  Your Honor, if I understand the question it's whether people will be harmed if there is a TRO?

THE COURT:  Yeah.

I don't know why you can't just go ahead and give those folks the benefit of, you know, of what they might be entitled to.  Why can't you just voluntarily do it?

MS. SUMMER:  The statute doesn't take away the

Proceedings                                           6

benefit.  The consumers, the people who receive the CD PAP

benefits will continue to receive their benefits.  The issue

is merely payment of the personal assistants and what the

State has done is they've extended the deadline to April 30th.

They basically said, as long as you register with the

statewide FI by April 30th, your personal assistants will get

paid and they will get retroactive payment as of the time that

they register --

THE COURT:  That sounds good, but my sense is that

your adversary is going to say there's not enough time for

this to take root and a lot of people are going to be

disadvantaged because of that.  So, it's not that you're not

going to be able to ultimately get where we all want to get;

that these folks should have the access and the opportunity to

have the benefits.

The question is to how to stage it in so nobody is

harmed in the interim.  Do I have that right?

MS. ROSS:  Yes, Your Honor.  To answer your initial

question, we do not believe anyone will be harmed by pausing

this process and an extension as we've asked for in our TRO

papers.  To the contrary, many people will be harmed absent a

TRO because they are not registered with a new FI and unlike

what my adversary said --

THE COURT:  I am going to interrupt you.  I think

she's saying that those people who have registered will be

SN        OCR        RPR

harmed.

MS. ROSS:  Yes, that people will be harmed.

THE COURT:  That's what I'm concerned about; those who have registered who are looking for these benefits will be harmed.

MS. ROSS:  Correct.

THE COURT:  That troubles me, doesn't it?

MS. ROSS:  Yes.  It's quite troubling.  I would also like to point out that --

THE COURT:  They won't be harmed for long, it may just be a handful of days.

MS. ROSS:  I disagree with that, Your Honor.

THE COURT:  You're getting some help here.

And your name?

MS. JOIS:  Good afternoon, Your Honor.  My name is Elizabeth Jois with the New York Legal Assistance Group.

I wanted to clarify, I think that the State is alleging that people who have already registered in PPL will be harmed.

THE COURT:  Right.  I think that's what they're saying.

MS. JOIS:  And I think there's no clarity to that. What we want to be very clear about is that people who are not registered are most certainly going to be harmed tomorrow. And I note --

Proceedings                                          8

THE COURT:  Most people have not registered because they didn't have time to do that because of the pressure that's placed upon them with the rapidity with which this is happening, but there are some people who had been able to register.  The question is whether or not we will have some people harmed and some people not harmed.  I guess that's something the Judge has to reflect upon.

Is there a way, if I grant the TRO for a brief period of time, that those people who are registered can still get benefits?  You can voluntarily do that, can't you?

MS. SUMMER:  My client is saying no, Your Honor. The benefits are not stopping.  The people will still receive their CD PAP benefits.

MS. JOIS:  Your Honor, we dispute that.  We dispute that vehemently.

THE COURT:  It would surprise me if you all were in agreement on everything.

Go ahead.

MS. SUMMER:  The issue, Your Honor, is the payment of the PAs.  So as I had indicated previously, the contract with the statewide FI PPL is tied into the statute taking effect.  If the statute does not take effect it affects that contract.  That would affect the 100 -- according to my clients --

THE COURT:  About how many people would be adversely

SN       OCR       RPR

Proceedings                                    9

affected?

MS. SUMMER:  195,000 consumers which are the medicaid recipients and about 220,000 personal assistants who assist those consumers.

THE COURT:  Those people would be harmed is what you're telling me?

MS. SUMMER:  Yes, because they would not be able to receive payment.

THE COURT:  And on the other side of the ledger, how many people would be harmed if we do not grant the TRO?

MS. JOIS:  Your Honor, the State has not announced how many people are not fully enrolled and whose aides are not fully enrolled.

THE COURT:  We just don't know because they haven't had a chance to enroll.

MS. JOIS:  There's tens of thousands is my short answer.

MS. ROSS:  The State has announced that there are 35,000 people who have not started the process at all and those individuals might not have received notice at all that this transition is occurring and those people deserve a chance to enroll themselves and take action in order to receive the care that they need.

THE COURT:  Maybe it's a lay perception, but why is there this rush imposed upon us?  Can't there be a sensible

SN        OCR        RPR

Proceedings                                                10

way to stage this in so we don't have to come before Judge Block to get this temporary relief?

MS. SUMMER:  Just to address something the plaintiff said, the number, according to my client, as of today is down to 20 to 25,000 people who have not taken any action to register and that is in comparison to the $195,000 who have.

THE COURT:  I think you're taking the position that there need not be notice.

MS. SUMMER:  That's exactly what I was getting to. There has been extreme outrage on behalf of both DOH and the new statewide FI.  So, just to be clear, this statute was proposed last year in April of 2024.  My client has taken excessive steps to notify people about its implementation for several months now.

So going back to --

THE COURT:  What harm is there to give people notice?  I mean, how can you really argue that that's a bad thing to do?

MS. SUMMER:  Your Honor, I'm not arguing it's a bad thing to do.  My client has taken steps to give everyone notice.  They've issued weekly press releases.

THE COURT:  I have to determine and decide whether under the law they're entitled to notice?  Is that what I have to do?

MS. SUMMER:  Your Honor, the issue is I think the

SN        OCR        RPR

Proceedings                                    11

way we define notice.  So, my client and the statewide FI have informed people of this change.  What the plaintiffs are arguing is that consumers are entitled to a fair hearing notice.  However, they are not entitled to a fair hearing notice because there's no due process rights at stake here. No one is taking away their services.

THE COURT:  Do I have to make that decision now, is it before me to decide whether or not they are entitled to notice?

MS. SUMMER:  Your Honor, I think that's one of the factors that gets played into whether the Court will grant a TRO, but do I think it's ultimately the deciding factor, I think there are other factors as well that the Court can consider.

THE COURT:  I would like to have the time.  I'm pretty good.  I've been around for a long time and I can do things quickly.  I can come out with a pretty quick decision, I think.  I think I need some breathing space.  What harm would there be if we submit some papers to me?  I appreciate the fact that you all cooperated and came here today on very short notice which I required because I think that everybody is in court and it's good that you're here.

What's wrong if we have a few days?  We can submit --

MS. SUMMER:  Your Honor?

Proceedings                                                        12

THE COURT:  -- some papers.  We can make this decision maybe by Friday this week and I can try to --

MS. SUMMER:  Your Honor?

THE COURT:  -- give you a reasoned decision.

What's wrong with that?

MS. SUMMER:  Your Honor, we would agree to a briefing schedule in terms of the preliminary injunction.  I think the issue is the TRO because the statute takes effect tomorrow.

THE COURT:  That is exactly the problem I have, you know?

MS. SUMMER:  I do understand the Court's difficulty and what I would say though is that DOH has extended the deadline to register with the statewide FI until the end of April.  So, as long as consumers and their personal assistants register within April, they will still receive all of their benefits, their personal assistants would still get retroactive payments, the services are continuing --

MS. JOIS:  Your Honor, the services are not continuing.

THE COURT:  We have to resolve that because I'm getting different vibes here, right.

And, so, it seems to me the common sense thing to do is this.  I don't think there's a horrible harm if we have a pause for a few days here and I don't think that those people

SN        OCR        RPR

Proceedings                                    13

who are registered would have to be adversely affected.  I think you have it in your power to sort of make sure that doesn't happen.  It's up to you, but they're not going to be harmed for very long because I'm going to get the decision out one way or another.

MS. ROSS:  Your Honor, we would like to point out that tomorrow people's benefits will terminate.

THE COURT:  I think that's my sense of it.

MS. ROSS:  Yes.

THE COURT:  Now, we have another voice here to be heard.

Let me have your name for the record.

MS. LAWLESS:  Good afternoon, Your Honor.  My name is Susan Lawless, L-A-W-L-E-S-S, and I am program counsel at DOH for the CD PAP program.  My GC in the back flagged for me to come up here and clarify some points if that's okay with your Your Honor.

THE COURT:  All right.

MS. LAWLESS:  So Part HH is stayed, the problem is that the legal authority to pay PPL stems from the amendments to Part HH.  Part HH created the concept of a statewide FI and directed the department to procure a contract to enter in with one vendor.

So, if the law is stayed it will not be legal for DOH to pay PPLs tomorrow.  So the $195,000 people who have

Proceedings                                             14

already transitioned, their services will be in chaos.

THE COURT:  But you can understand that on the other side of the ledger we have arguably thousands of people who will not be getting benefits whatsoever, who might otherwise qualify if they had the breathing space and the time to register.

One moment.

(Pause in proceedings.)

THE COURT:  I look at you and I feel so proud to have lived as long as I have.  When I went to law school we had four women in the class out of 130 and we've had a lot of problems in the world obviously, but we have some good things that have happened and when I see all of you in court today, this is one of the areas where we have made significant advances in equality which was just so overdue.  It's great to preside here.

Most of my colleagues are women, by the way.  The majority of the active judges in this court are women, including the current Chief Judge, the prior Chief Judge, the prior Chief Judge and if you don't think I'm becoming extinct, I have news for you, but happily so.

So, I think I understand the tensions, but you wanted to finish talking.

MS. LAWLESS:  Can I tell you about the grace period, Your Honor?

THE COURT:  Yes.

MS. LAWLESS:  Because there are about 20 to 25,000 people who have not transitioned to PPL, the State gave a grace period and said as long people transition in April, their aides can get paid in April as soon as PPL has received the paperwork to pay the aides.  And the paperwork is, like, the aides bank account information, their W-2.

So, if tomorrow someone realizes, oh, this is for real and I really did have to transition to PPL, what they would have to do is call PPL or call their managed care plan or call DOH and we'll get them signed with PPL and their aides will get paid just as soon as the paperwork is processed. That's what the grace period does because we don't want people to lose their Medicaid services.

THE COURT:  Yes, but I think that those people arguably they'd be adversely affected if we have a brief pause, they'll still have the opportunity to receive the benefits maybe a little bit later than they would otherwise.

MS. LAWLESS:  Your Honor, if there's a pause, DOH will not practically have the ability to pay anyone tomorrow. We won't be able to pay PPLs and we won't be able to pay the on FIs.

THE COURT:  What do you say about that?

MS. ROSS:  Your Honor, the State can amend its contract with PPL to allow them to pay PPL as well as the

Proceedings                                              16

existing fiscal intermediaries and --

THE COURT:  I don't think the State has such flexibility and powers here, but here is what I think is the fair thing to do.  It's Monday, I think, today and why don't we set this down for oral argument on Friday.  We can do this quickly.  I have a pretty good running head start into the legal issues.  You may want to supplement it.  You may want to submit me some memoranda by Wednesday and we can see whether we can render an expeditious decision one way or the other, but I need a little bit of time.  I think I'm pretty good, but I'm not that good yet.  So I think we ought to do it that way.

It's Monday.  You already have a lot of the legal work done already obviously.  Send in your papers by Wednesday.  If you can do it by noontime.  Let get back here on Friday.  We'll have an oral argument and I'll probably have a draft of what I might be thinking about issuing in terms of a decision subject to possible change after I listen to oral argument and we can get this done this week, one way or the other.  I think that's the of right thing to do.

MS. LAWLESS:  Are you going to issue a TRO in the meantime?

THE COURT:  I am going to issue a TRO today.

MS. LAWLESS:  How should DOH interpret the TRO in terms of what we're stayed from doing, Your Honor?

THE COURT:  Let me think about that a little.

SN        OCR        RPR

What do you propose?  What exactly should the TRO say?

MS. ROSS:  The TRO should say that the statute is enjoined and that currently existing FIs can remain open and paying for care services for people who have not yet transitioned to PPL.

MS. SUMMER:  Your Honor, if I can just --

THE COURT:  What would you suggest?  I'm going to issue it, but I want to get the best wording.

MS. LAWLESS:  Your Honor, there's no way to pay anyone.  There's no way to pay the old FIs because those contracts have been cancelled and all the authorizations have been switched to PPL.  It would take the State a month from today to pay the old FIs.

MS. JOIS:  Your Honor, if I could suggest, maybe we can speak in a conference room for a few minutes and see --

THE COURT:  It's 25 after 3.  I'm pretty much, 99.9 point percent certain I'm going to issue the TRO.  Especially with that round of applause, how could I not do it anymore, right?

We have very good lawyers here.  Take a little time to go to the conference room and work collaboratively knowing that I'm going to issue a TRO and see if you can come to a collective recommendation of what you think the best language would be for me to consider.

SN        OCR        RPR

Proceedings                                     18

I think you have some time and you can do that now. Mr. Nutley, my wonderful clerk, will find a proper place for you to sit down.

Maybe the jury room might be a good place, Mike.

THE COURTROOM DEPUTY:  Sure.

THE COURT:  Have you ever been to the jury room before?  Probably not.  Take them to the back.  If you need some coffee, let us know.  I almost committed a faux pas by saying roll up your sleeves, but I think you can collaboratively come up with some language that I can consider and I'll come back at 4:30.

Will that be enough time.

MS. LAWLESS:  Thank you, Your Honor.

THE COURT:  Mike, take them into the jury room.

MS. ROSS:  Thank you, Your Honor.

(Pause in proceedings.)

THE COURT:  All right.  I have something you submitted to me, but it's not as specific as what I have done. I will pass this on to you.  Here is what I have contemplated. Let's look at it.  If you have any suggestions, I will listen to them, but I gave considerable thought to this and I think this will do the job.

Tell me how you have managed to proceed with your conferences with each other.  I do not have anything more specific than what you gave me here.  I don't have the guts of

Proceedings                                            19

what we're talking about.  I was hoping I would get a joint document.

MS. ROSS:  Unfortunately, we have not come to an agreement.

THE COURT:  What seems to be the holdup?

MS. ROSS:  Well, we have not heard anything from DOH guaranteeing that services will be continued starting tomorrow and that the employment relationship between --

THE COURT:  Look, you gave it a try.  That's why we have judges.  Look, when we get together on Friday -- you're going to come back on Friday.  That's going to be our preliminary injunction hearing.

Are there any facts that have to be sorted out here? I'm not sure if there's any factual disputes.  If so, we'll resolve them on Friday.  That's what we have to do.

MS. ROSS:  We want to clarify the record about two issues that the State represented, and you can decide whether that would be addressed on Friday, but first of all, we wanted to say that services are indeed being stopped tomorrow.

Medicaid services through CD PAP are useless.  If the personal assistants cannot be paid, they will not come to work.  So because that tens of thousands of personal assistants are not yet enrolled, they cannot get paid starting tomorrow and so the services will stop.

THE COURT:  Maybe I was talking about something

SN        OCR        RPR

Proceedings                                                    20

else.  Are there any issues of fact that have to be sorted out?  We're having a preliminary injunction hearing on Friday. You can submit a memorandum of law by Wednesday if you want. It may not be a bad idea.  It's up to you.  If you don't do it, I will just have to do it myself.

But if you want to have an opportunity to tell the Judge what you think, you have to do that by Wednesday at 12 o'clock.  Why you didn't do this sooner, I'm not so clear as to why you waited until the eleventh minute.

MS. ROSS:  Your Honor, we've been moving as quickly as we could.  The State announced this plan in January.  In February we initiated discussions with DOH.  The Commissioner actually asked the Governor to delay the deadline and she did not and we've been meeting with DOH throughout March.

We were under the impression that they were working something out and their own website said that they were on track to meet the deadline.  So we acted as soon as we could when it became apparent that our clients were not going to receive care.

MS. SUMMER:  Your Honor, I just want to say that this is not something that was thrown at plaintiffs.  This law has been discussed for a year now.  They've had discussions with my client.

THE COURT:  We're here though.  I'm curious as to why it had to be put under this type of pressure.

SN        OCR        RPR

MS. SUMMER:  I understand, Your Honor.  I do want to address the TRO.  Part of the reason that we were taking so long was that DOH had to, you know, get some approvals and come up with a proposal.  I want to inform the Court of what my client's proposal is.  So --

THE COURT:  I am curious about that.  Look, on Friday -- I'm also curious as to why the people who have been registered under the old system can't automatically be deemed to have satisfied the new law instead of having to reregister. I don't see the logic of that.  It seems like a technical thing that's being imposed upon people.  It seems a burden which why do they have to go through that burden, I don't know.

MS. SUMMER:  Your Honor, it's consumer-directed. So, the consumer needs to take action, but that is something that our proposed TRO would address.  The DOH is -- their proposal is that the courts order DOH to direct the managed care organization and local districts of Social Services to pay PPL, which is the statewide FI for all participants who have identified themselves and that DOH is further ordered to direct PPL to pay all the personal assistants on a weekly basis regardless of their registration status.

THE COURT:  You want me to order that the people who are currently registered should be paid.

MS. SUMMER:  It's not registered, but who have

Proceedings                                              22

identified themselves.  It's whose registration is still pending.

THE COURT:  I think that you can pay them if you choose to pay them.  Nothing prevents you from doing that.

MS. SUMMER:  My client cannot do that.  DOH does not pay the PAs.  What happens is that the PAs are paid through this fiscal intermediary and what is set up through the amendments is a statewide fiscal intermediary.

THE COURT:  So, you know, look:  I'm going to show you what I've drafted here and we're going to have to move on and I think that this probably will cover us until we get together again on Friday.  Okay?

Ben, do you want to give these folks what we've drafted here?

We'll read this together.  The substantive part: Order that pending further order of the Court, defendant James V. McDonald, as Commissioner of the New York State Department of Health, shall, upon services ordered in the manner described below -- I think shall instead of saying upon service of this order, shall upon filing of this order.  We're doing this all collaboratively.  We don't have to say in the manner described below.  Be immediately and temporarily restrained from -- and it will be filed obviously this afternoon -- from implementing those sections of Part HH.

And, I thought to stay specifically the sections

SN        OCR        RPR

Proceedings                                                    23

we're talking about might be the appropriate thing.  And then I provide after that, importantly this order does not prevent the statewide fiscal intermediary, or PPL, from operating, processing applications, servicing and paying CD PAP participants who have already registered with PPL.

I don't know how you can do better than that. Rather, this order restrains the defendant from disallowing other fiscal intermediaries from servicing those CB PAP participants who are not yet registered in the PPL.

I think it gets the message across.  Let me know if there's anything else.  I guess the summons and complaint should be served as soon as you can, I guess, within four days, I put down here.

The last part is you're going to come back here on April 4th.

Mike, we need a time.

THE COURTROOM DEPUTY:  11 o'clock.

THE COURT:  Is everybody available 11 o'clock?  I'm sure you can.

Why the appropriate preliminary injunction -- I put the word "appropriate" so it gives you a lot of flexibility to tell me what you think the shape and the form and the duration of the preliminary injunction ought to be.  Pursuant to 65 -- it should not be issued enjoining the defendant from further order of the Court.

SN        OCR        RPR

Proceedings                                          24

You may submit a memorandum to the Court by noon, April 2nd.  You don't have to submit it, but I think you want to submit it.  Now, I think that covers the territory.  If there's anything critical you want to talk about because we're going to be saving all of your arguments for Friday and I'm really anxious to know how long the preliminary injunction should stay in place.

I think you suggested until September.  That seems a little bit long to me, but I don't know really what the practicalities of this all are, but I'm thinking shorter than that and I guess the other thing, as I said before, is that I just really am puzzled as to why the people who are already registered with these 600 whatever intermediaries can't be deemed automatically to have satisfied the new law.  I don't understand.  It seems like it's more a technicality than something of substance, unless I'm missing something.

You can talk more about that on Friday if you want, but I'm trying to give you off the top of my head what pops into my brain.  Okay.  Anything else?  I know that you're not happy with this, but I think this is fair.

MS. SUMMER:  Your Honor, if I could have a quick moment just to check with my client?

THE COURT:  Yes.  It puts the burden on you to do what you think is appropriate.

MS. SUMMER:  I understand.

Proceedings                                          25

THE COURT:  I take it you have no objection to what I've done?

MS. ROSS:  Your Honor, thank you.  It's perfect.  We have two minor comments.

THE COURT:  If you have two minor things, it's not perfect.

MS. ROSS:  One is simply that we've already effected service.  The State agrees to effect service by e-mail.

THE COURT:  The summons and complaint you mean?

MS. ROSS:  Yes.

THE COURT:  To me that's just a minor thing.

MS. ROSS:  That's why I said minor.

And if it's easier for the State, we could -- you could potentially add language to this saying that the State could contract with FI s to implement this order if that would be needed.

THE COURT:  I do not think it's necessary.  I mean, they have the discretion to do what they think is appropriate to protect people.  I think we can leave it open ended.  I'm getting some further thoughts right now from distinguished counsel.

MS. SUMMER:  I'm just waiting a moment for my client to be able to look it over.

Your Honor, nothing further from my client.

THE COURT:  It's a delight to have you in court.

Proceedings                                          26

These are collaborative efforts.  We're trying to help people out as best as we can.

MS. SUMMER:  Nothing further.

THE COURT:  You have a lot of discretion here.  I'm not going to tell the Government what to do, but you want to protect these people and it's up to you, I guess, to do it.

So, I'm going to cross out the -- it's 11 o'clock. I'm going to cross out further date, because we're fixing it. I don't think I have to change anything else.  Just stay -- and I'm going to say upon filing of this order.  Let me make those little changes.

Mike, we can file this order today?

THE COURTROOM DEPUTY:  Yes.

THE COURT:  Forthwith.  So those will be the changes.  Let me get you a complete, finished copy.  This is why we have law clerks.

MS. SUMMER:  Your Honor, I have one request.  If it's possible instead of noon on April 2nd, can we move it to 5 p.m.?

THE COURT:  When?

MS. SUMMER:  If it's possible to move the memoranda of law to be moved to 5 p.m.?

THE COURT:  I am willing to do that.  So, do that before 5 p.m.

MS. SUMMER:  Thank you.

SN        OCR        RPR

Proceedings                                                    27

THE COURT:  Do you want to add to the order when the judge is supposed to read it?

MS. SUMMER:  No, I'll leave it to the Court's discretion.

THE COURT:  You know, you're making me work at night.

MS. SUMMER:  I appreciate it, Your Honor.  Thank you.

THE COURT:  Make those changes and we'll wait here.

Now, you folks in the audience it's good to have you in court and while we're waiting to finish with the technicalities that we're dealing with, the Court is open to everybody.

It's a public facility and actually under the law we're not allowed to exclude anybody from coming to the Court other than for emergency safety purposes.  It's a very limited exception.  You are all welcome here and I'm glad you were able to find your way to the federal courthouse in Brooklyn. If anybody would like to say anything?

THE COURTROOM DEPUTY:  There are some parties listening by phone because they were not able to make it?

THE COURT:  Who do we have on the telephone?

I've been ignoring you, I'm sorry.  How many people do we have on the telephone?  All right, folks from all over the world.

SN        OCR        RPR

Proceedings                                    28

I've signed the order now and it will be filed at this time.  Good to see you all in Court.  Looking forward to seeing you all again.


(Matter adjourned.)

- ooOoo -



## All Word Index

1

### $

**$195,000** [2] - 10:6, 13:25
**$500** [1] - 5:8

### 1

**100** [2] - 1:15, 8:23
**10004** [1] - 1:16
**10005** [1] - 1:18
**10036** [1] - 1:13
**11** [3] - 23:17, 23:18, 26:7
**11201** [1] - 1:23
**1133** [1] - 1:12
**12** [1] - 20:7
**130** [1] - 14:11
**195,000** [2] - 4:8, 9:2
**19th** [1] - 1:15
**1st** [1] - 3:24

### 2

**20** [2] - 10:5, 15:2
**2024** [1] - 10:12
**2025** [1] - 1:6
**220,000** [1] - 9:3
**225** [1] - 1:23
**25** [1] - 17:17
**25,000** [2] - 10:5, 15:2
**25CV1689(FB** [1] - 1:3
**28** [1] - 1:18
**2nd** [2] - 24:2, 26:18

### 3

**3** [1] - 17:17
**30th** [2] - 6:4, 6:6
**31** [1] - 1:6
**35,000** [1] - 9:19
**3:00** [1] - 1:7

### 4

**4:30** [1] - 18:11
**4th** [1] - 23:15

### 5

**5** [3] - 26:19, 26:22, 26:24

### 6

**600** [3] - 5:3, 5:6, 24:13

**65** [1] - 23:23

### 9

**99.9** [1] - 17:17

### A

**ability** [1] - 15:20
**able** [9] - 5:10, 6:13, 8:4, 9:7, 15:21, 25:23, 27:18, 27:21
**absent** [1] - 6:21
**access** [2] - 3:4, 6:14
**accordance** [1] - 4:2
**according** [2] - 8:23, 10:4
**account** [1] - 15:7
**acted** [1] - 20:17
**action** [5] - 2:25, 3:7, 9:22, 10:5, 21:15
**active** [1] - 14:18
**add** [2] - 25:14, 27:1
**address** [3] - 10:3, 21:2, 21:16
**addressed** [1] - 19:18
**adjourned** [1] - 28:5
**administered** [1] - 3:6
**administration** [1] - 5:8
**advances** [1] - 14:15
**adversary** [3] - 5:16, 6:10, 6:23
**adversely** [3] - 8:25, 13:1, 15:16
**affect** [1] - 8:23
**affected** [4] - 4:21, 9:1, 13:1, 15:16
**affects** [1] - 8:22
**afternoon** [3] - 7:15, 13:13, 22:24
**agree** [1] - 12:6
**agreement** [2] - 8:17, 19:4
**agrees** [1] - 25:8
**ahead** [3] - 3:14, 5:22, 8:18
**aid** [1] - 4:17
**Aided** [1] - 1:24
**aides** [5] - 9:12, 15:5, 15:6, 15:7, 15:11
**aids** [1] - 2:8
**alleging** [1] - 7:18
**allow** [1] - 15:25
**allowed** [1] - 27:15
**almost** [1] - 18:8
**amend** [1] - 15:24
**amendments** [2] - 13:20, 22:8
**Americas** [1] - 1:12
**announced** [3] - 9:11, 9:18, 20:11
**annually** [1] - 5:8
**answer** [3] - 5:14, 6:18, 9:17
**anxious** [1] - 24:6
**apparent** [1] - 20:18
**appearances** [1] - 2:6
**appearing** [1] - 2:9
**applause** [1] - 17:19
**applications** [1] - 23:4
**appreciate** [2] - 11:19, 27:7

**appropriate** [5] - 23:1, 23:20, 23:21, 24:24, 25:18
**approvals** [1] - 21:3
**April** [11] - 3:24, 6:4, 6:6, 10:12, 12:15, 12:16, 15:4, 15:5, 23:15, 24:2, 26:18
**areas** [1] - 14:14
**arguably** [3] - 3:3, 14:3, 15:16
**argue** [2] - 3:9, 10:17
**arguing** [2] - 10:19, 11:3
**ARGUMENT** [1] - 1:9
**argument** [4] - 2:4, 16:5, 16:15, 16:18
**arguments** [1] - 24:5
**AS** [1] - 1:5
**assist** [2] - 4:25, 9:4
**Assistance** [2] - 2:11, 7:16
**ASSISTANCE** [1] - 1:15
**assistants** [10] - 4:14, 4:25, 6:3, 6:6, 9:3, 12:15, 12:17, 19:21, 19:23, 21:21
**ATTORNEY** [1] - 1:17
**Attorney** [2] - 2:14, 2:21
**audience** [1] - 27:10
**authority** [1] - 13:20
**authorizations** [1] - 17:12
**automatically** [2] - 21:8, 24:14
**available** [1] - 23:18
**Avenue** [1] - 1:12

### B

**bad** [3] - 10:17, 10:19, 20:4
**bank** [1] - 15:7
**bar** [1] - 2:5
**basis** [1] - 21:22
**became** [1] - 20:18
**becoming** [1] - 14:20
**BEFORE** [1] - 1:9
**behalf** [3] - 2:10, 2:14, 10:10
**BELKNAP** [1] - 1:12
**Belknap** [1] - 2:10
**below** [2] - 22:19, 22:22
**ben** [1] - 22:13
**benefit** [2] - 5:23, 6:1
**benefits** [11] - 6:2, 6:15, 7:4, 8:10, 8:12, 8:13, 12:17, 13:7, 14:4, 15:18
**best** [3] - 17:9, 17:24, 26:2
**better** [1] - 23:6
**between** [1] - 19:8
**bit** [3] - 15:18, 16:10, 24:9
**black** [1] - 3:18
**BLOCK** [2] - 1:9, 2:2
**Block** [1] - 10:2
**bono** [1] - 2:10
**brain** [1] - 24:19
**breathing** [2] - 11:18, 14:5
**brief** [4] - 3:1, 5:14, 8:8, 15:16
**briefing** [1] - 12:7
**briefs** [1] - 3:8
**Brooklyn** [2] - 1:5, 27:18

SN        OCR        RPR

All Word Index  2

**BUCHALTER** [1] - 1:19
**burden** [3] - 21:11, 21:12, 24:23
**BY** [2] - 1:13, 1:19
**BY:ELIZABETH** [1] - 1:16

# C

**Cadman** [1] - 1:23
**Caitlin** [1] - 2:9
**CAITLIN** [1] - 1:13
**cancelled** [1] - 17:12
**cannot** [3] - 19:21, 19:23, 22:5
**CAPACITY** [1] - 1:5
**care** [5] - 9:23, 15:10, 17:5, 20:19, 21:18
**case** [1] - 2:19
**CAUSE** [1] - 1:9
**CB** [1] - 23:8
**CD** [8] - 4:9, 4:15, 4:20, 6:1, 8:13, 13:15, 19:20, 23:4
**certain** [1] - 17:18
**certainly** [1] - 7:24
**chance** [2] - 9:15, 9:21
**change** [3] - 11:2, 16:17, 26:9
**changes** [4] - 5:2, 26:11, 26:15, 27:9
**chaos** [1] - 14:1
**chat** [1] - 3:1
**check** [1] - 24:22
**Chief** [3] - 14:19, 14:20
**choose** [1] - 22:4
**circumstances** [1] - 2:18
**CIVIL** [1] - 1:9
**civil** [1] - 2:3
**clarify** [3] - 7:17, 13:16, 19:16
**clarity** [1] - 7:22
**class** [2] - 2:12, 14:11
**clear** [4] - 4:20, 7:23, 10:11, 20:8
**CLEARY** [1] - 1:14
**clerk** [1] - 18:2
**clerks** [1] - 26:16
**client** [10] - 8:11, 10:4, 10:12, 10:20, 11:1, 20:23, 22:5, 24:22, 25:22, 25:24
**client's** [1] - 21:5
**clients** [2] - 8:24, 20:18
**close** [1] - 5:8
**coffee** [1] - 18:8
**collaborative** [1] - 26:1
**collaboratively** [3] - 17:22, 18:10, 22:21
**colleagues** [1] - 14:17
**collective** [1] - 17:24
**coming** [1] - 27:15
**comments** [1] - 25:4
**Commissioner** [2] - 20:12, 22:17
**COMMISSIONER** [1] - 1:6
**committed** [1] - 18:8
**common** [1] - 12:23
**comparison** [1] - 10:6

**complaint** [2] - 23:11, 25:9
**complete** [1] - 26:15
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concept** [1] - 13:21
**concerned** [2] - 5:13, 7:3
**concerns** [1] - 3:3
**conference** [2] - 17:16, 17:22
**conferences** [1] - 18:24
**consider** [3] - 11:14, 17:25, 18:10
**considerable** [1] - 18:21
**consolidate** [1] - 5:5
**consumer** [2] - 21:14, 21:15
**consumer-directed** [1] - 21:14
**consumers** [8] - 4:9, 4:22, 5:1, 6:1, 9:2, 9:4, 11:3, 12:15
**contemplated** [1] - 18:19
**continue** [1] - 6:2
**continued** [1] - 19:7
**continuing** [2] - 12:18, 12:20
**contract** [9] - 4:2, 4:3, 4:5, 4:7, 8:20, 8:23, 13:22, 15:25, 25:15
**contracts** [1] - 17:12
**contrary** [1] - 6:21
**cooperated** [1] - 11:20
**copy** [1] - 26:15
**correct** [2] - 5:15, 7:6
**counsel** [4] - 2:5, 2:10, 13:14, 25:21
**COURT** [75] - 1:1, 2:7, 2:16, 2:23, 3:14, 3:17, 4:11, 4:16, 5:5, 5:10, 5:16, 5:21, 6:9, 6:24, 7:3, 7:7, 7:10, 7:13, 7:20, 8:1, 8:16, 8:25, 9:5, 9:9, 9:14, 9:24, 10:7, 10:16, 10:22, 11:7, 11:15, 12:1, 12:4, 12:10, 12:21, 13:8, 13:10, 13:18, 14:2, 14:9, 15:1, 15:15, 15:23, 16:2, 16:22, 16:25, 17:8, 17:17, 18:6, 18:14, 18:17, 19:5, 19:9, 19:25, 20:24, 21:6, 21:23, 22:3, 22:9, 23:18, 24:23, 25:1, 25:5, 25:9, 25:11, 25:17, 25:25, 26:4, 26:14, 26:20, 26:23, 27:1, 27:5, 27:9, 27:22
**Court** [11] - 1:22, 3:22, 11:11, 11:13, 21:4, 22:16, 23:25, 24:1, 27:12, 27:15, 28:2
**court** [6] - 2:1, 11:22, 14:13, 14:18, 25:25, 27:11
**Court's** [2] - 12:12, 27:3
**Courthouse** [1] - 1:4
**courthouse** [1] - 27:18
**COURTROOM** [5] - 2:3, 18:5, 23:17, 26:13, 27:20
**courts** [1] - 21:17
**cover** [1] - 22:11
**covers** [1] - 24:3
**created** [1] - 13:21
**critical** [1] - 24:4
**cross** [2] - 26:7, 26:8
**curious** [3] - 20:24, 21:6, 21:7
**current** [1] - 14:19

# D

**date** [1] - 26:8
**days** [4] - 7:11, 11:23, 12:25, 23:13
**deadline** [4] - 6:4, 12:14, 20:13, 20:17
**dealing** [1] - 27:12
**decide** [3] - 10:22, 11:8, 19:17
**deciding** [1] - 11:12
**decision** [8] - 3:10, 11:7, 11:17, 12:2, 12:4, 13:4, 16:9, 16:17
**deemed** [2] - 21:8, 24:14
**Defendant** [2] - 1:17, 2:14
**defendant** [4] - 1:7, 22:16, 23:7, 23:24
**define** [1] - 11:1
**delay** [1] - 20:13
**delight** [1] - 25:25
**department** [1] - 13:22
**DEPARTMENT** [1] - 1:6
**Department** [2] - 1:21, 22:17
**DEPUTY** [5] - 2:3, 18:5, 23:17, 26:13, 27:20
**described** [2] - 22:19, 22:22
**deserve** [1] - 9:21
**determine** [1] - 10:22
**different** [1] - 12:22
**difficulty** [1] - 12:12
**direct** [2] - 21:17, 21:21
**directed** [2] - 13:22, 21:14
**disadvantaged** [2] - 4:19, 6:12
**disagree** [1] - 7:12
**disallowing** [1] - 23:7
**discretion** [3] - 25:18, 26:4, 27:4
**discussed** [1] - 20:22
**discussions** [2] - 20:12, 20:22
**dispute** [2] - 8:14
**disputes** [1] - 19:14
**distinguished** [1] - 25:20
**DISTRICT** [2] - 1:1, 1:1
**districts** [1] - 21:18
**document** [1] - 19:2
**DOH** [15] - 10:10, 12:13, 13:15, 13:25, 15:11, 15:19, 16:23, 19:6, 20:12, 20:14, 21:3, 21:16, 21:17, 21:20, 22:5
**done** [6] - 5:11, 6:4, 16:13, 16:18, 18:18, 25:2
**down** [4] - 10:4, 16:5, 18:3, 23:13
**draft** [1] - 16:16
**drafted** [2] - 22:10, 22:14
**due** [1] - 11:5
**duration** [1] - 23:22

# E

**e-mail** [1] - 25:8
**easier** [3] - 5:7, 5:9, 25:13
**East/Brooklyn** [1] - 1:23
**EASTERN** [1] - 1:1

SN          OCR          RPR

All Word Index

3

effect [5] - 4:1, 8:22, 12:8, 25:8
effected [1] - 25:7
effectively [1] - 4:13
efforts [1] - 26:1
eleventh [1] - 20:9
Elizabeth [1] - 7:16
emergency [1] - 27:16
employment [1] - 19:8
end [1] - 12:14
ended [1] - 25:19
Engesser [1] - 2:4
ENGESSER [1] - 1:3
enjoined [1] - 17:4
enjoining [1] - 23:24
enroll [2] - 9:15, 9:22
enrolled [3] - 9:12, 9:13, 19:23
enter [1] - 13:22
entitled [5] - 5:24, 10:23, 11:3, 11:4, 11:8
equality [1] - 14:15
especially [1] - 17:18
ESQ [5] - 1:13, 1:14, 1:16, 1:19, 1:19
eventually [1] - 5:11
exactly [3] - 10:9, 12:10, 17:1
exception [1] - 27:17
excessive [1] - 10:13
exclude [1] - 27:15
existing [2] - 16:1, 17:4
expeditious [1] - 16:9
extended [2] - 6:4, 12:13
extension [1] - 6:20
extinct [1] - 14:20
extreme [1] - 10:10

## F

facility [1] - 27:14
fact [2] - 11:20, 20:1
factor [1] - 11:12
factors [2] - 11:11, 11:13
facts [1] - 19:13
factual [1] - 19:14
fair [4] - 11:3, 11:4, 16:4, 24:20
faux [1] - 18:8
February [1] - 20:12
federal [1] - 27:18
few [3] - 11:23, 12:25, 17:16
FI [11] - 3:25, 4:5, 6:6, 6:22, 8:21, 10:11, 11:1, 12:14, 13:21, 21:19, 25:15
file [1] - 26:12
filed [2] - 22:23, 28:1
filing [2] - 22:20, 26:10
finish [2] - 14:23, 27:11
finished [1] - 26:15
first [2] - 2:23, 19:18
FIs [5] - 5:3, 15:22, 17:4, 17:11, 17:14
fiscal [8] - 3:25, 5:1, 5:2, 16:1, 22:7,

22:8, 23:3, 23:8
fixing [1] - 26:8
flagged [1] - 13:15
flexibility [2] - 16:3, 23:21
Floor [1] - 1:15
folks [6] - 3:7, 5:23, 6:14, 22:13, 27:10, 27:24
FOR [1] - 1:9
form [1] - 23:22
forthwith [1] - 26:14
forward [1] - 28:2
four [2] - 14:11, 23:12
FREDERIC [2] - 1:9, 2:2
Friday [12] - 12:2, 16:5, 16:15, 19:10, 19:11, 19:15, 19:18, 20:2, 21:7, 22:12, 24:5, 24:17
fully [2] - 9:12, 9:13

## G

GC [1] - 13:15
GENERAL [1] - 1:17
General [2] - 2:14, 2:21
glad [1] - 27:17
Government [1] - 26:5
Governor [1] - 20:13
grab [1] - 3:13
grace [3] - 14:24, 15:4, 15:13
grant [4] - 5:13, 8:8, 9:10, 11:11
great [2] - 3:16, 14:15
Group [2] - 2:11, 7:16
GROUP [1] - 1:15
guaranteeing [1] - 19:7
guess [9] - 2:20, 3:4, 3:6, 4:17, 8:6, 23:11, 23:12, 24:11, 26:6
guts [1] - 18:25
guys [1] - 3:1

## H

handful [1] - 7:11
happily [1] - 14:21
happy [1] - 24:20
harm [3] - 10:16, 11:18, 12:24
harmed [17] - 4:12, 5:13, 5:20, 6:17, 6:19, 6:21, 7:1, 7:2, 7:5, 7:10, 7:19, 7:24, 8:6, 9:5, 9:10, 13:4
head [2] - 16:6, 24:18
Health [2] - 1:21, 22:18
HEALTH [1] - 1:6
hear [1] - 5:16
heard [2] - 13:11, 19:6
hearing [5] - 2:8, 11:3, 11:4, 19:12, 20:2
help [2] - 7:13, 26:1
HH [4] - 13:19, 13:21, 22:24
HIS [1] - 1:5
holdup [1] - 19:5

Hon [1] - 2:2
Honor [39] - 2:22, 3:15, 3:21, 5:19, 6:18, 7:12, 7:15, 8:11, 8:14, 8:19, 9:11, 10:19, 10:25, 11:10, 11:25, 12:3, 12:6, 12:19, 13:6, 13:13, 13:17, 14:25, 15:19, 15:24, 16:24, 17:7, 17:10, 17:15, 18:13, 18:15, 20:10, 20:20, 21:1, 21:14, 24:21, 25:3, 25:24, 26:17, 27:7
HONORABLE [1] - 1:9
hoping [1] - 19:1
horrible [1] - 12:24

## I

idea [1] - 20:4
identified [2] - 21:20, 22:1
ignoring [1] - 27:23
immediately [1] - 22:22
implement [1] - 25:15
implementation [1] - 10:13
implemented [1] - 4:3
implementing [1] - 22:24
important [2] - 2:19, 3:2
importantly [1] - 23:2
imposed [2] - 9:25, 21:11
impression [3] - 2:23, 2:24, 20:15
IN [1] - 1:5
including [1] - 14:19
indeed [1] - 19:19
indicated [1] - 8:20
individuals [1] - 9:20
inform [1] - 21:4
information [1] - 15:7
informed [1] - 11:2
initial [1] - 6:18
initiated [1] - 20:12
injunction [6] - 12:7, 19:12, 20:2, 23:20, 23:23, 24:6
instead [4] - 5:6, 21:9, 22:19, 26:18
interested [1] - 2:20
interim [1] - 6:17
intermediaries [3] - 16:1, 23:8, 24:13
intermediary [6] - 3:25, 5:1, 5:2, 22:7, 22:8, 23:3
interpret [1] - 16:23
interrupt [1] - 6:24
issue [12] - 3:2, 4:18, 4:25, 6:2, 8:19, 10:25, 12:8, 16:20, 16:22, 17:9, 17:18, 17:23
issued [2] - 10:21, 23:24
issues [3] - 16:7, 19:17, 20:1
issuing [2] - 3:22, 16:16
itself [1] - 4:20

## J

James [2] - 2:15, 22:16



## All Word Index

4

**JAMES** [1] - 1:5
**January** [1] - 20:11
**job** [1] - 18:22
**joint** [1] - 19:1
**Jois** [1] - 7:16
**JOIS** [8] - 1:16, 7:15, 7:22, 8:14, 9:11, 9:16, 12:19, 17:15
**Judge** [6] - 8:7, 10:1, 14:19, 14:20, 20:7
**JUDGE** [1] - 1:10
**judge** [3] - 2:18, 2:25, 27:2
**judges** [2] - 14:18, 19:10
**judgment** [1] - 3:10
**jury** [3] - 18:4, 18:6, 18:14

## K

**knowing** [1] - 17:22

## L

**language** [3] - 17:24, 18:10, 25:14
**last** [2] - 10:12, 23:14
**law** [10] - 10:23, 13:24, 14:10, 20:3, 20:21, 21:9, 24:14, 26:16, 26:22, 27:14
**Lawless** [1] - 13:14
**LAWLESS** [11] - 1:21, 13:13, 13:14, 13:19, 14:24, 15:2, 15:19, 16:20, 16:23, 17:10, 18:13
**lawyers** [1] - 17:21
**lay** [1] - 9:24
**leave** [2] - 25:19, 27:3
**ledger** [2] - 9:9, 14:3
**left** [1] - 2:7
**legal** [4] - 13:20, 13:24, 16:7, 16:12
**LEGAL** [1] - 1:15
**Legal** [2] - 2:11, 7:16
**LEIGH** [1] - 1:19
**Liberty** [1] - 1:18
**limited** [1] - 27:16
**IISA** [1] - 1:14
**listen** [2] - 16:17, 18:20
**listening** [1] - 27:21
**lived** [1] - 14:10
**LIZA** [1] - 1:3
**LLC** [1] - 4:6
**LLP** [1] - 1:12
**local** [1] - 21:18
**logic** [1] - 21:10
**logical** [1] - 2:23
**look** [8] - 3:1, 14:9, 18:20, 19:9, 19:10, 21:6, 22:9, 25:23
**looking** [2] - 7:4, 28:2
**lose** [1] - 15:14
**louder** [1] - 2:7
**lovely** [1] - 2:16

## M

**mail** [1] - 25:8
**majority** [1] - 14:18
**managed** [3] - 15:10, 18:23, 21:17
**manner** [2] - 22:18, 22:22
**March** [2] - 1:6, 20:14
**matter** [1] - 3:19
**Matter** [1] - 28:5
**McDonald** [3] - 2:4, 2:15, 22:17
**MCDONALD** [1] - 1:5
**mean** [4] - 3:17, 10:17, 25:9, 25:17
**meantime** [1] - 16:21
**mechanical** [1] - 1:24
**medicaid** [1] - 9:3
**Medicaid** [2] - 15:14, 19:20
**meet** [1] - 20:17
**meeting** [1] - 20:14
**memoranda** [2] - 16:8, 26:21
**memorandum** [2] - 20:3, 24:1
**merely** [1] - 6:3
**message** [1] - 23:10
**might** [6] - 5:23, 9:20, 14:4, 16:16, 18:4, 23:1
**Mike** [4] - 18:4, 18:14, 23:16, 26:12
**million** [1] - 5:8
**minor** [4] - 25:4, 25:5, 25:11, 25:12
**minute** [1] - 20:9
**minutes** [1] - 17:16
**missing** [1] - 24:16
**moment** [3] - 14:7, 24:22, 25:22
**Monday** [3] - 1:6, 16:4, 16:12
**month** [1] - 17:13
**months** [1] - 10:14
**more-sensible** [1] - 5:12
**most** [3] - 7:24, 8:1, 14:17
**move** [3] - 22:10, 26:18, 26:21
**moved** [1] - 26:22
**moving** [1] - 20:10
**MS** [75] - 2:9, 2:13, 2:22, 3:12, 3:15, 3:21, 4:13, 4:20, 5:7, 5:15, 5:19, 5:25, 6:18, 7:2, 7:6, 7:8, 7:12, 7:15, 7:22, 8:11, 8:14, 8:19, 9:2, 9:7, 9:11, 9:16, 9:18, 10:3, 10:9, 10:19, 10:25, 11:10, 11:25, 12:3, 12:6, 12:12, 12:19, 13:6, 13:9, 13:13, 13:19, 14:24, 15:2, 15:19, 15:24, 16:20, 16:23, 17:3, 17:7, 17:10, 17:15, 18:13, 18:15, 19:3, 19:6, 19:16, 20:10, 20:20, 21:1, 21:14, 21:25, 22:5, 24:21, 24:25, 25:3, 25:7, 25:10, 25:12, 25:22, 26:3, 26:17, 26:21, 26:25, 27:3, 27:7

## N

**name** [5] - 2:9, 7:14, 7:15, 13:12, 13:13
**named** [1] - 2:11
**necessary** [1] - 25:17

**need** [6] - 9:23, 10:8, 11:18, 16:10, 18:7, 23:16
**needed** [1] - 25:16
**needs** [1] - 21:15
**nervous** [2] - 3:18, 3:19
**new** [4] - 6:22, 10:11, 21:9, 24:14
**NEW** [3] - 1:1, 1:6, 1:15
**New** [8] - 1:5, 1:13, 1:16, 1:18, 2:11, 2:14, 7:16, 22:17
**news** [1] - 14:21
**nicely** [1] - 2:17
**night** [1] - 27:6
**nobody** [1] - 6:16
**NOLAN** [1] - 1:22
**NolanEDNY@aol.com** [1] - 1:23
**noon** [2] - 24:1, 26:18
**noontime** [1] - 16:14
**normal** [1] - 2:17
**note** [1] - 7:25
**notes** [1] - 3:13
**nothing** [3] - 22:4, 25:24, 26:3
**notice** [10] - 9:20, 10:8, 10:17, 10:21, 10:23, 11:1, 11:4, 11:5, 11:9, 11:21
**notify** [1] - 10:13
**number** [1] - 10:4
**nutley** [1] - 18:2
**NY** [4] - 1:13, 1:16, 1:18, 1:23
**NYS** [1] - 1:17

## O

**o'clock** [4] - 20:8, 23:17, 23:18, 26:7
**objection** [1] - 25:1
**obviously** [5] - 2:19, 3:2, 14:12, 16:13, 22:23
**occurring** [1] - 9:21
**OF** [5] - 1:1, 1:6, 1:6, 1:9, 1:17
**Office** [1] - 2:13
**OFFICE** [1] - 1:17
**old** [3] - 17:11, 17:14, 21:8
**one** [12] - 5:3, 5:5, 11:6, 11:10, 13:5, 13:23, 14:7, 14:14, 16:9, 16:18, 25:7, 26:17
**ooOoo** [1] - 28:6
**open** [4] - 2:1, 17:4, 25:19, 27:12
**operating** [1] - 23:3
**opportunity** [5] - 3:4, 3:7, 6:14, 15:17, 20:6
**ORAL** [1] - 1:9
**oral** [4] - 2:3, 16:5, 16:15, 16:17
**order** [14] - 9:22, 21:17, 21:23, 22:16, 22:20, 23:2, 23:7, 23:25, 25:15, 26:10, 26:12, 27:1, 28:1
**Order** [1] - 22:16
**ordered** [2] - 21:20, 22:18
**organization** [1] - 21:18
**otherwise** [2] - 14:4, 15:18
**ought** [2] - 16:11, 23:23



All Word Index
5

**outrage** [1] - 10:10
**overdue** [1] - 14:15
**own** [1] - 20:16

# P

**p.m** [4] - 1:7, 26:19, 26:22, 26:24
**paid** [9] - 4:14, 5:1, 6:7, 15:5, 15:12, 19:21, 19:23, 21:24, 22:6
**PAP** [9] - 4:9, 4:15, 4:21, 6:1, 8:13, 13:15, 19:20, 23:4, 23:8
**papers** [5] - 3:8, 6:21, 11:19, 12:1, 16:13
**paperwork** [3] - 15:6, 15:12
**Part** [4] - 13:19, 13:21, 22:24
**part** [3] - 21:2, 22:15, 23:14
**participants** [3] - 21:19, 23:5, 23:9
**parties** [1] - 27:20
**Partnerships** [1] - 4:6
**PAs** [4] - 4:14, 8:20, 22:6
**pas** [2] - 5:3, 18:8
**pass** [1] - 18:19
**Patterson** [1] - 2:10
**PATTERSON** [1] - 1:12
**pause** [5] - 12:25, 14:8, 15:17, 15:19, 18:16
**pausing** [1] - 6:19
**pay** [15] - 13:20, 13:25, 15:6, 15:20, 15:21, 15:25, 17:10, 17:11, 17:14, 21:19, 21:21, 22:3, 22:4, 22:6
**paying** [2] - 17:5, 23:4
**payment** [4] - 6:3, 6:7, 8:19, 9:8
**payments** [1] - 12:18
**Pearl** [1] - 1:15
**pending** [2] - 22:2, 22:16
**people** [47] - 2:20, 3:3, 3:19, 4:9, 4:12, 4:16, 4:22, 5:20, 6:1, 6:11, 6:21, 6:25, 7:2, 7:18, 7:23, 8:1, 8:4, 8:6, 8:9, 8:12, 8:25, 9:5, 9:10, 9:12, 9:19, 9:21, 10:5, 10:13, 10:16, 11:2, 12:25, 13:25, 14:3, 15:3, 15:4, 15:13, 15:15, 17:5, 21:7, 21:11, 21:23, 24:12, 25:19, 26:1, 26:6, 27:23
**people's** [1] - 13:7
**percent** [1] - 17:18
**perception** [1] - 9:24
**perfect** [2] - 25:3, 25:6
**period** [4] - 8:9, 14:24, 15:4, 15:13
**permission** [1] - 2:18
**person** [1] - 5:2
**personal** [10] - 4:13, 4:25, 6:3, 6:6, 9:3, 12:15, 12:17, 19:21, 19:22, 21:21
**phone** [1] - 27:21
**place** [3] - 18:2, 18:4, 24:7
**placed** [1] - 8:3
**plaintiff** [1] - 10:3
**Plaintiff** [1] - 1:12
**plaintiffs** [4] - 2:12, 3:23, 11:2, 20:21
**plan** [2] - 15:10, 20:11

**played** [1] - 11:11
**Plaza** [1] - 1:23
**point** [4] - 4:8, 7:9, 13:6, 17:18
**points** [1] - 13:16
**pops** [1] - 24:18
**position** [1] - 10:7
**possible** [3] - 16:17, 26:18, 26:21
**potentially** [1] - 25:14
**power** [1] - 13:2
**powers** [1] - 16:3
**PPL** [19] - 4:5, 4:10, 7:18, 8:21, 13:20, 15:3, 15:5, 15:9, 15:10, 15:11, 15:25, 17:6, 17:13, 21:19, 21:21, 23:3, 23:5, 23:9
**PPLs** [2] - 13:25, 15:21
**practicalities** [1] - 24:10
**practically** [1] - 15:20
**preliminary** [6] - 12:7, 19:12, 20:2, 23:20, 23:23, 24:6
**preside** [1] - 14:16
**presiding** [1] - 2:2
**press** [1] - 10:21
**pressure** [2] - 8:2, 20:25
**pretty** [5] - 11:16, 11:17, 16:6, 16:10, 17:17
**prevent** [1] - 23:2
**prevents** [1] - 22:4
**previously** [1] - 8:20
**pro** [1] - 2:10
**problem** [2] - 12:10, 13:19
**problems** [1] - 14:12
**proceed** [1] - 18:23
**Proceedings** [1] - 1:24
**proceedings** [2] - 14:8, 18:16
**process** [3] - 6:20, 9:19, 11:5
**processed** [1] - 15:12
**processing** [1] - 23:4
**procure** [1] - 13:22
**produced** [1] - 1:24
**program** [5] - 3:4, 4:9, 4:15, 13:14, 13:15
**proper** [1] - 18:2
**proposal** [3] - 21:4, 21:5, 21:17
**propose** [1] - 17:1
**proposed** [3] - 2:12, 10:12, 21:16
**protect** [2] - 25:19, 26:6
**proud** [1] - 14:9
**provide** [1] - 23:2
**Public** [1] - 4:5
**public** [1] - 27:14
**purposes** [1] - 27:16
**pursuant** [1] - 23:23
**put** [3] - 20:25, 23:13, 23:20
**puts** [1] - 24:23
**puzzled** [1] - 24:12

# Q

**qualify** [1] - 14:5
**quick** [2] - 11:17, 24:21
**quickly** [3] - 11:17, 16:6, 20:10
**quite** [1] - 7:8

# R

**race** [1] - 3:10
**RACHEL** [1] - 1:19
**Rachel** [1] - 2:13
**rapidity** [1] - 8:3
**rather** [1] - 23:7
**read** [2] - 22:15, 27:2
**ready** [2] - 3:20, 4:16
**real** [1] - 15:9
**realizes** [1] - 15:8
**really** [5] - 10:17, 15:9, 24:6, 24:9, 24:12
**reason** [1] - 21:2
**reasoned** [2] - 3:10, 12:4
**receive** [14] - 4:9, 4:21, 4:22, 4:23, 4:24, 6:1, 6:2, 8:12, 9:8, 9:22, 12:16, 15:17, 20:19
**received** [2] - 9:20, 15:5
**recipients** [1] - 9:3
**recommendation** [1] - 17:24
**record** [2] - 13:12, 19:16
**recorded** [1] - 1:24
**reflect** [1] - 8:7
**regardless** [2] - 4:24, 21:22
**register** [7] - 6:5, 6:8, 8:5, 10:6, 12:14, 12:16, 14:6
**registered** [15] - 4:10, 6:22, 6:25, 7:4, 7:18, 7:24, 8:1, 8:9, 13:1, 21:8, 21:24, 21:25, 23:5, 23:9, 24:13
**registering** [1] - 4:10
**registration** [2] - 21:22, 22:1
**relationship** [1] - 19:8
**releases** [1] - 10:21
**relief** [1] - 10:2
**remain** [1] - 17:4
**render** [2] - 3:9, 16:9
**Reporter** [1] - 1:22
**represented** [1] - 19:17
**request** [1] - 26:17
**required** [1] - 11:21
**reregister** [1] - 21:9
**resolve** [2] - 12:21, 19:15
**restrained** [1] - 22:23
**restrains** [1] - 23:7
**retroactive** [2] - 6:7, 12:18
**review** [1] - 3:23
**rights** [2] - 3:3, 11:5
**robe** [1] - 3:18
**roll** [1] - 18:9

All Word Index                                                                6

**room** [5] - 17:16, 17:22, 18:4, 18:6, 18:14
**root** [1] - 6:11
**ROSS** [24] - 1:13, 2:9, 4:13, 4:20, 5:19, 6:18, 7:2, 7:6, 7:8, 7:12, 9:18, 13:6, 13:9, 15:24, 17:3, 18:15, 19:3, 19:6, 19:16, 20:10, 25:3, 25:7, 25:10, 25:12
**Ross** [1] - 2:9
**round** [1] - 17:19
**running** [1] - 16:6
**rush** [1] - 9:25

## S

**safety** [1] - 27:16
**SAMANTHA** [1] - 1:19
**satisfied** [2] - 21:9, 24:14
**saves** [1] - 5:7
**saving** [1] - 24:5
**schedule** [1] - 12:7
**scheduled** [1] - 3:24
**school** [1] - 14:10
**second** [2] - 2:24, 5:12
**sections** [2] - 22:24, 22:25
**see** [7] - 3:9, 14:13, 16:8, 17:16, 17:23, 21:10, 28:2
**seeing** [1] - 28:3
**seem** [1] - 2:23
**send** [1] - 16:13
**SENIOR** [1] - 1:10
**sense** [3] - 6:9, 12:23, 13:8
**sensible** [2] - 5:12, 9:25
**September** [1] - 24:8
**served** [1] - 23:12
**service** [5] - 4:20, 4:22, 22:20, 25:8
**Services** [1] - 21:18
**services** [12] - 4:21, 11:6, 12:18, 12:19, 14:1, 15:14, 17:5, 19:7, 19:19, 19:20, 19:24, 22:18
**servicing** [2] - 23:4, 23:8
**set** [3] - 4:2, 16:5, 22:7
**several** [1] - 10:14
**shall** [3] - 22:18, 22:19, 22:20
**shape** [1] - 23:22
**short** [2] - 9:16, 11:21
**shorter** [1] - 24:10
**show** [1] - 22:9
**side** [2] - 9:9, 14:3
**signed** [2] - 15:11, 28:1
**significant** [1] - 14:14
**simple** [1] - 3:22
**simply** [1] - 25:7
**sit** [1] - 18:3
**sleeves** [1] - 18:9
**slowly** [1] - 2:17
**Social** [1] - 21:18
**softly** [1] - 2:17
**someone** [1] - 15:8

**sometimes** [1] - 3:18
**soon** [4] - 15:5, 15:12, 20:17, 23:12
**sooner** [1] - 20:8
**SOPHIE** [1] - 1:22
**sorry** [1] - 27:23
**sort** [1] - 13:2
**sorted** [2] - 19:13, 20:1
**sounds** [1] - 6:9
**space** [2] - 11:18, 14:5
**specific** [2] - 18:18, 18:25
**specifically** [1] - 22:25
**stage** [2] - 6:16, 10:1
**staging** [1] - 5:12
**stake** [1] - 11:5
**stands** [1] - 4:5
**start** [1] - 16:6
**started** [1] - 9:19
**starting** [2] - 19:7, 19:23
**State** [16] - 2:14, 5:8, 6:4, 7:17, 9:11, 9:18, 15:3, 15:24, 16:2, 17:13, 19:17, 20:11, 22:17, 25:8, 25:13, 25:14
**STATE** [1] - 1:6
**state** [3] - 2:5, 5:3, 5:4
**state-wide** [1] - 5:4
**STATES** [2] - 1:1, 1:10
**States** [1] - 1:4
**statewide** [11] - 3:25, 4:5, 6:6, 8:21, 10:11, 11:1, 12:14, 13:21, 21:19, 22:8, 23:3
**status** [1] - 21:22
**statute** [11] - 4:3, 4:4, 4:6, 5:2, 5:25, 8:21, 8:22, 10:11, 12:8, 17:3
**stay** [5] - 4:4, 4:11, 22:25, 24:7, 26:9
**stayed** [3] - 13:19, 13:24, 16:24
**staying** [1] - 4:6
**stays** [2] - 4:4, 4:6
**stems** [1] - 13:20
**stenography** [1] - 1:24
**step** [1] - 2:5
**steps** [2] - 10:13, 10:20
**still** [6] - 8:9, 8:12, 12:16, 12:17, 15:17, 22:1
**stop** [1] - 19:24
**stopped** [1] - 19:19
**stopping** [3] - 2:25, 3:7, 8:12
**Street** [2] - 1:15, 1:18
**subject** [1] - 16:17
**submit** [9] - 3:8, 11:19, 11:24, 16:8, 20:3, 24:1, 24:2, 24:3
**submitted** [1] - 18:18
**substance** [1] - 24:16
**substantive** [1] - 22:15
**suggest** [2] - 17:8, 17:15
**suggested** [1] - 24:8
**suggestions** [1] - 18:20
**Summer** [1] - 2:13
**SUMMER** [37] - 1:19, 2:13, 2:22, 3:12, 3:15, 3:21, 5:7, 5:15, 5:25, 8:11, 8:19, 9:2, 9:7, 10:3, 10:9, 10:19, 10:25,

11:10, 11:25, 12:3, 12:6, 12:12, 17:7, 20:20, 21:1, 21:14, 21:25, 22:5, 24:21, 24:25, 25:22, 26:3, 26:17, 26:21, 26:25, 27:3, 27:7
**summer** [1] - 2:21
**summons** [2] - 23:11, 25:9
**supplement** [1] - 16:7
**supposed** [1] - 27:2
**surprise** [1] - 8:16
**Susan** [1] - 13:14
**SUSAN** [1] - 1:21
**switched** [1] - 17:13
**system** [1] - 21:8

## T

**technical** [1] - 21:10
**technicalities** [1] - 27:12
**technicality** [1] - 24:15
**telephone** [2] - 27:22, 27:24
**temporarily** [1] - 22:22
**temporary** [1] - 10:2
**tens** [2] - 9:16, 19:22
**tensions** [1] - 14:22
**terminate** [1] - 13:7
**terms** [3] - 12:7, 16:16, 16:24
**territory** [1] - 24:3
**THE** [83] - 1:5, 1:6, 1:9, 1:17, 2:3, 2:7, 2:16, 2:23, 3:14, 3:17, 4:11, 4:16, 5:5, 5:10, 5:16, 5:21, 6:9, 6:24, 7:3, 7:7, 7:10, 7:13, 7:20, 8:1, 8:16, 8:25, 9:5, 9:9, 9:14, 9:24, 10:7, 10:16, 10:22, 11:7, 11:15, 12:1, 12:4, 12:10, 12:21, 13:8, 13:10, 13:18, 14:2, 14:9, 15:1, 15:15, 15:23, 16:2, 16:22, 16:25, 17:8, 17:17, 18:5, 18:6, 18:14, 18:17, 19:5, 19:9, 19:25, 20:24, 21:6, 21:23, 22:3, 22:9, 23:17, 23:18, 24:23, 25:1, 25:5, 25:9, 25:11, 25:17, 25:25, 26:4, 26:13, 26:14, 26:20, 26:23, 27:1, 27:5, 27:9, 27:20, 27:22
**themselves** [3] - 9:22, 21:20, 22:1
**therefore** [1] - 4:19
**they've** [3] - 6:4, 10:21, 20:22
**thinking** [2] - 16:16, 24:10
**thoughts** [1] - 25:20
**thousands** [3] - 9:16, 14:3, 19:22
**throughout** [1] - 20:14
**thrown** [1] - 20:21
**tied** [2] - 4:3, 8:21
**today** [8] - 4:23, 10:4, 11:20, 14:13, 16:4, 16:22, 17:14, 26:12
**together** [3] - 19:10, 22:12, 22:15
**tomorrow** [13] - 3:25, 4:3, 4:17, 4:23, 7:24, 12:9, 13:7, 13:25, 15:8, 15:20, 19:7, 19:19, 19:24
**top** [1] - 24:18
**track** [1] - 20:17
**transcript** [1] - 1:24

SN        OCR        RPR

All Word Index

7

**TRANSCRIPT** [1] - 1:9
**Transcription** [1] - 1:24
**transition** [3] - 9:21, 15:4, 15:9
**transitioned** [3] - 14:1, 15:3, 17:6
**TRO** [20] - 2:24, 3:22, 4:18, 5:14, 5:20, 6:20, 6:22, 8:8, 9:10, 11:12, 12:8, 16:20, 16:22, 16:23, 17:1, 17:3, 17:18, 17:23, 21:2, 21:16
**troubles** [1] - 7:7
**troubling** [1] - 7:8
**try** [2] - 12:2, 19:9
**trying** [2] - 24:18, 26:1
**two** [3] - 19:16, 25:4, 25:5
**TYLER** [1] - 1:12
**Tyler** [1] - 2:10
**type** [1] - 20:25

## U

**ultimately** [2] - 6:13, 11:12
**under** [6] - 2:17, 10:23, 20:15, 20:25, 21:8, 27:14
**unfortunately** [1] - 19:3
**UNITED** [2] - 1:1, 1:10
**United** [1] - 1:4
**unless** [1] - 24:16
**unlike** [1] - 6:22
**up** [12] - 2:5, 2:7, 4:2, 4:3, 13:3, 13:16, 18:9, 18:10, 20:4, 21:4, 22:7, 26:6
**upstairs** [1] - 2:8
**useless** [1] - 19:20

## V

**vehemently** [1] - 8:15
**vendor** [1] - 13:23
**vibes** [1] - 12:22
**voice** [1] - 13:10
**voices** [1] - 2:16
**voluntarily** [2] - 5:24, 8:10

## W

**W-2** [1] - 15:7
**wait** [1] - 27:9
**waited** [1] - 20:9
**waiting** [2] - 25:22, 27:11
**wear** [1] - 3:18
**Webb** [1] - 2:10
**WEBB** [1] - 1:12
**website** [1] - 20:16
**Wednesday** [4] - 16:8, 16:14, 20:3, 20:7
**week** [2] - 12:2, 16:18
**weekly** [2] - 10:21, 21:21
**welcome** [1] - 27:17
**whatsoever** [1] - 14:4

**wide** [1] - 5:4
**willing** [1] - 26:23
**women** [3] - 14:11, 14:17, 14:18
**wonderful** [1] - 18:2
**word** [1] - 23:21
**wording** [1] - 17:9
**world** [2] - 14:12, 27:25

## Y

**year** [2] - 10:12, 20:22
**yell** [1] - 2:18
**YORK** [3] - 1:1, 1:6, 1:15
**York** [8] - 1:5, 1:13, 1:16, 1:18, 2:11, 2:14, 7:16, 22:17